VOL. I, PGS. 1-21

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                              SUPERIOR COURT

SUCR 00-10994


Before: Spurlock, J.



* * * * * * * * * * * * * * * * * * * * * * * * * * * *

COMMONWEALTH OF MASSACHUSETTS *

        VS.                        *

OWEN MC CANTS                      *

* * * * * * * * * * * * * * * * * * * * * * * * * * * *



————————————————————————————————

Monday, December 3, 2001

Boston, Massachusetts



- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PATRICIA S. FLAHERTY

P. O. Box 406, Marblehead, MA 01945-1133

(617) 788-6189                    FAX (781) 631-9100

```
1      APPEARANCES:

2

3          DAVID DEAKIN, ESQ.

4          OFFICE OF THE DISTRICT ATTORNEY

5          1 Bulfinch Place

6          Boston, MA  02114

7          Counsel for the Commonwealth

8

9          MARK W. SHEA, ESQ.

10         875 Massachusetts Avenue

11         Cambridge, MA  02139

12         Counsel for the Defendant

13

14

15

16

17

18

19

20

21

22

23

24
```

```
 1                    PROCEEDINGS
 2              THE CLERK:  Calling the case of
 3    Commonwealth versus Owen McCants on five
 4    offenses of kidnapping, habitual
 5    criminal, rape of a child, habitual
 6    criminal, assault to rape, habitual
 7    criminal, drugging a person for sex,
 8    habitual criminal, assault and battery by
 9    means of a dangerous weapon.  He's
10    represented by Attorney Mark Shea.  The
11    Commonwealth is represented by David
12    Deakin.  The matter is before this Court
13    on defendant's motion to suppress
14    identification.  The Commonwealth objects
15    to this hearing and the matter before
16    this Court this morning to determine if
17    the defendant has a right to this
18    hearing.
19              THE COURT:  Go ahead.
20              MR. SHEA:  Who would you like to
21    hear from first, Your Honor?
22              THE COURT:  I didn't hear this
23    before?
24              MR. SHEA:  You've heard the five,
```

4

1    I believe, motions to suppress.  There

2    wasn't a motion to suppress

3    identification.

4              THE COURT:  Why not?

5              MR. SHEA:  Because in further

6    research I've found the Commonwealth v.

7    Jones case which allows a motion to

8    suppress identification absent stayed

9    action, and frankly I hadn't known that

10   one could suppress an identification

11   absent stayed action prior to finding

12   that case.

13             THE COURT:  So, how much more is

14   necessary for this motion to suppress?

15             MR. DEAKIN:  Well, Your Honor,

16   the Commonwealth's view, and I should

17   make clear, the Commonwealth doesn't

18   object to this hearing, but the defendant

19   is requesting an evidentiary hearing and

20   the Commonwealth ----

21             THE COURT:  Well, I pretty much

22   know everything about what took place

23   surrounding the identification because it

24   came up throughout all the hearings I had

1    before.

2         MR. DEAKIN:  I think that's

3    right, Your Honor, and to the extent that

4    the defendant raises in his memorandum of

5    law other relatively minor factual

6    issues, I think Your Honor could accept

7    the defendant's contentions, even though

8    many of them are in my view mistaken, but

9    the Court could accept those contentions

10   and nonetheless deny the defendant an

11   evidentiary hearing on this matter and

12   also deny the motion, so from the

13   Commonwealth's perspective nothing more

14   is needed and in fact nothing more is

15   warranted.

16        THE COURT:  Defendant?

17        MR. SHEA:  Judge, frankly I think

18   that's incorrect and your statements are

19   not correct as to what the Court needs to

20   do on the suppression of identification.

21        THE COURT:  Excuse me, I didn't

22   make any statements, I asked questions.

23        MR. SHEA:  Well, let me be clear.

24   We need to hear from the alleged victim

1   in order to resolve the motion on the

2   suppression of identification.  What is

3   at stake is she was not a witness at the

4   motions to suppress.  The motions to

5   suppress really involved the police

6   witnesses.  I did provide Polly Taylor

7   and Ruby Williams.  It was very much

8   about whether it was a consent search,

9   whether the police entered the room after

10  it had been sealed off, whether it in

11  fact had been sealed off and about the

12  items taken from the room.

13      The motion to suppress identification

14  that's before you today involves the

15  identification by the alleged victim

16  taking place viewing the television set

17  the following morning and seeing my

18  client on TV surrounded by the police.

19  That is a critical -- obviously the

20  identification of the percipient witness,

21  really the only clear witness that places

22  my client with her, is critical to the

23  case.  It is highly suggestive, it is a

24  violation of my client's due process

1   rights, a violation of the Massachusetts

2   and US Constitution, and a couple of

3   cases back me up on this.

4        Commonwealth v. Jones is a

5   Massachusetts case, 423 Mass. 99.   In

6   that case, there are two occasions where

7   the percipient witness in that matter

8   view the defendant and it is not found to

9   be stayed action.   One occasion she is

10  summonsed to the Court by the co-

11  defendant's lawyer and sees the defendant

12  Jones handcuffed to a Vietnamese

13  individual in the Court.   The Vietnamese

14  individual is a co-defendant, and that is

15  one of the identifications that is

16  challenged and is found by the

17  Massachusetts Supreme Court to be highly

18  suggestive even though her being present

19  to make that ID was as a result of being

20  subpoenaed by the co-defendant's

21  attorney.

22       There was one other identification in

23  that case which was as a result of her

24  being subpoenaed by the state for another

1    hearing, but that took place when I

2    believe the defendant was in the hallway

3    and she was brought by him.  It was a

4    situation in the court where that was the

5    only way people were transported into the

6    courtroom.  So there was no showing that

7    the District Attorney knew that they

8    would have an encounter in the hallway,

9    that she would be making an

10   identification like that in the hallway

11   or at that hearing.

12        Nonetheless, the Court finding that

13   the District Attorney was not responsible

14   for the identification found that that

15   identification, due to its highly

16   suggestive nature, needed to be

17   suppressed.  Further, there's a ----

18        THE COURT:  Excuse me, my

19   decision here isn't whether or not it

20   deserves or should be suppressed, it's to

21   determine whether or not there should be

22   a hearing on this motion.

23        MR. SHEA:  Right, I'm just

24   pointing out that obviously there should

1    be a hearing given these cases.  The

2    other case I would point you to is a

3    First Circuit case, US v. Bouthot, B-O-U-

4    T-H-O-T, 878 ----

5           THE COURT:  It's cited in the

6    Commonwealth's opposition.

7           MR. SHEA:  It's also cited in my

8    memo.  Again, stating that there doesn't

9    have to be clearly stayed action.  There

10   is one misstatement, too, in the

11   Commonwealth's memo about my position.  I

12   am not saying that there is no police

13   contrivance in the identification here.

14   I'm saying even if I were to concede for

15   the purposes of the hearing that I can't

16   show police contrivance, I get a hearing.

17   Now, if at the hearing I can show that

18   the police have a policy of notifying the

19   local TV stations and that leads to my

20   client's being brought forward, that

21   would be yet another issue at the

22   hearing, but I'm not claiming to have

23   that ability today, but I just want to be

24   clear that I am not conceding that I will

1    have no evidence at a hearing.

2         It seems clear to me, Judge -- the

3    other thing the Commonwealth cites the

4    Walker case, I believe it is, and that

5    case is so far different from ours it's a

6    little bit disingenuous.  In the Walker

7    .case, the fellow has no mask, no face

8    covering, anything, walks into a Dunkin'

9    Donuts, orders a coffee, shows a gun, she

10   doesn't have enough cash in the drawer,

11   he takes her around back to the safe.

12   During this whole time his face is

13   uncovered.  That is different than --

14   completely different than the facts in

15   this case, the allegation here being that

16   the perpetrator's face was covered.

17         Further, in the Walker case, the

18   individual leaves the store.  He's not

19   apprehended.  She's working at another

20   Dunkin' Donuts.  He walks into that

21   Dunkin' Donuts.  One of her co-workers

22   says to her, "Hey, come on out here, this

23   guy fits the description."  She goes out

24   there, looks at the guy, takes her time,

1    looks at him and says, "That is the guy."

2    Now, dating back to the previous

3    robbery, she had given a rock-solid

4    identification with a great amount of

5    detail.  The police then, based on her

6    identification at the second Dunkin'

7    Donuts location, go apprehend the fellow,

8    bring him back and she says yes, that's

9    the fellow.

10    Now, the Court said the gentleman,

11    pro se gentleman, did not have a right to

12    a hearing on identification in that case

13    and part of the reasoning was the

14    strength of the identification because

15    obviously the only reason the police go

16    and pick him up is because she's ID-ed

17    him on her own without any

18    suggestiveness.  For the Commonwealth to

19    say that that is in any way similar to

20    this case, particularly on the second

21    point of that, would be on the strength

22    of the identification, because the

23    Commonwealth's identification in this

24    case is not strong and seems to be ever

1    evolving.

2        Having received a letter from Mr.

3    Deakin dated November 21st stating now

4    that during a meeting with the victim,

5    "During the meeting which I attended, the

6    complaining witness reported that she

7    could not remember her mother asking her

8    in the immediate aftermath of the crime

9    whether, quote, 'Sonny' closed quote, the

10   name by which the complaining witness

11   knows the defendant, was her assailant.

12   She likewise did not recall whether she

13   answered in the affirmative."

14       Judge, this is the identification

15   they allege is the first identification

16   of my client by the complaining witness

17   and now I have a letter saying she

18   doesn't recall whether she ever made that

19   identification.  So, they're in a far

20   different position from Walker.  They

21   don't have a -- and the other thing is

22   there's no detailed description in terms

23   of identification in this case.  So, if

24   this original ID falls by the wayside and

1    there are no descriptive details of the

2    assailant, what identification is left?

3         It is the one on the following

4    morning of my client on TV surrounded by

5    police, highly prejudicial and it is the

6    very identification I wish to call into

7    question at a hearing, and we certainly

8    deserve a hearing on that point.

9              THE COURT:  I'm going to take it

10   under advisement, you'll hear from the

11   Court.

12             THE CLERK:  The defendant also

13   has a motion to reconsider the Court's

14   ruling on the denial of the defendant's

15   motion to suppress warrantless seizure of

16   evidence.

17             THE COURT:  I'll take it under

18   advisement.

19             THE CLERK:  And the defendant has

20   filed a motion to suppress identification

21   made by Benjamin Haughley, H-A-U-G-H-L-E-

22   Y.

23             MR. SHEA:  If I may on that one,

24   Your Honor, I just got this motion today.

14

1    I'm reviewing it.  I'd say there is a

2    very real possibility we may concede that

3    motion and not have to have it litigated,

4    so I'd ask to defer that motion.

5              THE COURT:  All right.  What is

6    this a request for a deposition of Polly

7    Taylor?

8              MR. SHEA:  Your Honor heard

9    testimony from Polly Taylor, who's an

10   elderly woman --

11             THE COURT:  Right.

12             MR. SHEA:  -- in the motion to

13   suppress.  In meeting with her in

14   preparation potentially for this hearing

15   and for trial, I've learned that she's

16   going back into a rehabilitation

17   hospital, I believe on the 12th of this

18   month.  She's going to be evaluated for

19   whether she needs to stay there or

20   whether she can live at home and have

21   outpatient rehab.

22             THE COURT:  How old a woman is

23   she?

24             MR. SHEA:  She's 83 years old.

1    She has a heart problem and they're

2    trying to assess whether she needs to be

3    inpatient or not.  What I'm asking is I

4    don't believe defense counsel objects to

5    the deposition, is that we get together

6    and agree on the date and ask the Court

7    to allow -- order that deposition be

8    taken.

9              THE COURT:  You all do that.

10             MR. DEAKIN:  That's allowed then,

11   Judge?

12             THE COURT:  It is, when you agree

13   on a date as to when somebody's going to

14   take this.

15             THE CLERK:  Do you need a future

16   date on this?

17             MR. SHEA:  I think, Your Honor,

18   there's a scheduling issue and I don't

19   know whether the case is remaining in

20   this session for trial or not, but we

21   don't currently have a trial date and I

22   was hoping that we could set one today.

23             THE CLERK:  When are you going to

24   do that other case?

1      MR. DEAKIN:  Well, I know that

2   the -- I think that the clerk's referring

3   to the Geoghan case -- that's on in

4   Middlesex County for trial on January

5   14th, and we won't try it until after

6   that.  My suggestion to the Court if it's

7   convenient for the Court, perhaps would

8   be to schedule this case for January 14th

9   as well.  I've spoken to defense counsel.

10  I believe she's available then.

11      THE CLERK:  For trial?

12      MR. DEAKIN:  Yes, available for

13  trial.

14      (Scheduling discussion.)

15      MR. SHEA:  I do have a trial at

16  District Court on the 14th.  I think

17  obviously I can move it for this.

18      MR. DEAKIN:  I think that's a

19  non-custody case as well, the District

20  Court case, so I think that should be no

21  problem.

22      MR. SHEA:  The only thing I would

23  point out is that I would like to have

24  obviously the suppression hearing

1    beforehand.

2              THE COURT:  We will.  If we have

3    it, it's probably going to be during the

4    Christmas week.

5              MR. SHEA:  Between Christmas and

6    New Year's?

7              THE COURT:  Well, maybe before

8    that.  We're not having jurors brought in

9    after the 17th of December.

10             THE CLERK:  We could do it

11   December 18th.

12             MR. SHEA:  The problem I have is

13   I'm out of town until the 19th of

14   January.  I'd be back in court on the

15   19th.  I'm scheduled for an all-day

16   suppression hearing in Lowell on the 19th

17   and Federal Court on two cases on the

18   20th.  The 21st I have two cases and one

19   for a suppression over in Cambridge on

20   the 21st.

21             THE CLERK:  How about January

22   2nd?

23             THE COURT:  Wait, wait.  He said

24   the 21st, that's Friday.

1      THE CLERK:  Right, but he has two

2  motions to suppress in other counties.

3      THE COURT:  That's what he said,

4  on the 21st.

5      THE CLERK:  Right.

6      THE COURT:  But then there's the

7  week of the 24th.

8      MR. SHEA:  I'm here on the 27th

9  for a lobby conference.

10      MR. DEAKIN:  Whatever date the

11  Court chooses is acceptable to the

12  Commonwealth.

13      THE COURT:  If I allow the motion

14  for a hearing, it will be on the 27th.

15      THE CLERK:  Is that the

16  understanding of both parties?

17      MR. SHEA:  Yes.

18      MR. DEAKIN:  It is.  Your Honor,

19  I don't have any reason to think that the

20  victim and her mother will be unavailable

21  on that date.  I would just ask that I

22  check with them once we have the Court's

23  decision.

24      THE COURT:  Why don't you check

1      with them today.

2              MR. DEAKIN:  Yes, I will, Your

3      Honor.

4              THE CLERK:  And then January 14th

5      for trial.

6              MR. SHEA:  I'd prefer to go

7      further out, but I can.

8              THE CLERK:  January 22nd.  Do you

9      think you're going to be tied up January

10     22nd?

11             MR. DEAKIN:  I could be here

12     January 22nd.  I'm obviously balancing

13     Judge Hinkle's concerns on the Geoghan

14     case.  That's why I was hoping for the

15     14th, because the other Geoghan trial is

16     starting then, so I know we can't try

17     Geoghan then.  I'm a little concerned

18     about jamming those two cases together,

19     they both require a fair amount of

20     preparation.  If the Court could set the

21     14th up, that would be my choice.

22             MR. SHEA:  I can do the 22nd.  I

23     mean, I have -- the thing is, coming back

24     from the holidays, the 7th I have a trial

20

```
1              here.
2                        THE COURT:   January 14th for
3         trial.
4                        THE CLERK:   January 14th for
5         trial.
6
7         (Whereupon the hearing was concluded.)
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```

21

1

2

3                         C E R T I F I C A T E

4              I, Patricia S. Flaherty, a Notary

5       Public in and for the Commonwealth of

6       Massachusetts, do hereby certify that the

7       foregoing record, Pages 1 to 20,

8       inclusive, is a true and accurate

9       transcript of my System Tapes to the

10       best of my knowledge, skill and ability.

11

12              In Witness Whereof, I have hereunto

13       set my hand and seal this eighteenth day

14       of October, 2002.

15

16

17

18

19       _Patricia S. Flaherty_____

20              PATRICIA S. FLAHERTY, Notary Public

21                 Official Court Reporter

22

23

24       My Commission expires July 17, 2003