COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                    SUPERIOR COURT
                                                NO. SUCR2000-10994


COMMONWEALTH OF MASSACHUSETTS

v.

OWEN McCANTS

---

Thursday, April 18, 2002
Before: Spurlock, J.
Boston, Massachusetts
Day 1 - Trial

---



MARYANN MCDONALD
Official Court Reporter
617.788.6180

APPEARANCES:


David Deakin
Assistant District Attorney
Suffolk County District Attorney's Office
One Bulfinch Place
Boston, MA 02114
617.619.4000
          Counsel for the Commonwealth


Mark Shea
Attorney at Law
875 Massachusetts Avenue
W. Cambridge, MA 02139
627.864.3943
          Counsel for the Defendant

INDEX

| WITNESS | DIRECT | CROSS | REDIRECT | RECROSS |
|---------|--------|-------|----------|---------|

-None-

EXHIBITS

| NUMBER | PAGE |
|--------|------|

-None-

4

PROCEEDINGS

1

2

3          (Venire enters 10:47 a.m.)

4

5          THE COURT OFFICER: This court is open.

6     Those of you who can be seated, please be seated.

7     Those who can't, please remain standing.

8          THE CLERK: Before the Court is *Commonwealth*

9     *v. Owen McCants*.  Mr. McCants is charged on Docket

10    No. 2000-10994 with the offense of child kidnapping,

11    offense of rape of child by force, offense of assault

12    to rape of child, and an offense of drugging a person

13    for sexual intercourse, offense for assault and

14    battery by means of a dangerous weapon.

15          He is represented by Attorney Mark Shea.

16    And the Commonwealth, in this matter, is represented

17    by David Deakin.

18          Mr. Deakin.

19          MR. DEAKIN: Your Honor, Mr. Clerk, may it

20    please the Court, the people of the Commonwealth move

21    for trial.

22          THE CLERK: Mr. Shea, are you ready for

23    trial?

24          MR. SHEA: Yes.  I'm ready for trial.

1      THE CLERK: Owen McCants, would you please

2  stand.

3      Owen McCants, you are now set at the bar on

4  trial on Docket No. 2000-10994, Offense 001,

5  kidnapping; 002, rape of a child by force; 003,

6  assault to rape a child; 004, drugging a person for

7  sexual intercourse; and 005, assault and battery by

8  means of a dangerous weapon.

9      These good men and women whom I shall call

10  will pass between you and the Commonwealth.  You have

11  a right to challenge 16 of these jurors.  If you do

12  so, sir, you must do so before they are sworn.

13      You may be seated.

14      Will all the jurors that are seated please

15  stand, and all jurors raise their right hand.

16      Jurors, do you solemnly swear to make true

17  answers to the questions the Court is about to ask

18  you concerning this matter, so help you God?

19      Please respond, "I do."

20          (Venire sworn.)

21      THE CLERK: All right, jurors.  You may be

22  seated, whoever can be seated.

23      THE COURT: All right.  Good morning, ladies

24  and gentlemen.  My name is Charles Spurlock.  I'm a

6

1    judge of the Massachusetts Superior Court.  And there

2    are certain questions I must ask to assist in

3    determining your eligibility to sit as jurors in this

4    case.

5         If your answer to any one or more of my

6    questions is "yes," please raise your hand so that

7    the court officer can take down your juror number.

8    If you have answered yes to one or more of my

9    questions, I will see you first here at the side bar.

10        Now, your juror number is that little

11   yellow card that they gave you in the jury pool this

12   morning.

13        Now, as most of you know, the lawyers will

14   assist me in selecting a jury. Some of you may not be

15   called for this case, or will be excused during the

16   impanelment procedure.  If you are excused or asked

17   to step down, please report back to the jury pool to

18   be available to serve on another case.

19        Now, the defendant's name in this case is

20   Owen McCants.

21        Mr. McCants, will you please stand and face

22   the jurors.

23        Just Mr. McCants.

24        THE COURT OFFICER: Those who are sitting,

7

1    if you can't see Mr. McCants, stand up so you can see

2    him.

3              Mr. Shea, you want to sit down.  I asked

4    Mr. McCants to stand up.

5              Is there any prospective juror who is

6    related to Mr. McCants, by blood or by marriage, or

7    does any prospective juror know Mr. McCants?

8              No response.

9              All right.  You may be seated.

10             Mr. McCants is represented by Attorney

11   Shea.

12             Would you introduce yourself to the jurors?

13             MR. SHEA: Certainly. My name is Mark Shea.

14             THE COURT: Is there any prospective juror

15   who is related to Mr. Shea, by blood or by marriage,

16   or does any prospective juror know Mr. Shea?

17             All right.

18             The prosecutor in this case is Mr. Deakin.

19             Mr. Deakin, would you introduce yourself to

20   the jurors?

21             MR. DEAKIN: Good morning, ladies and

22   gentlemen.  My name is David Deakin.  I'm an

23   assistant district attorney here in Boston.

24             THE COURT: Is there any prospective juror

8

1    who is related to Mr. Deakin, by blood or by

2    marriage, or does any prospective juror know Mr.

3    Deakin?

4           No response.

5           Now, the following persons may testify.

6    And I emphasize "may" testify in this case.  But I

7    · have to read you all these names because it's a

8    possibility.

9           Brandon Sowers of Brighton, Massachusetts,

10   S-o-w-e-r-s; Benjamin Haughey, H-a-u-g-h-e-y, of

11   Brighton, Massachusetts; Paul Cedrone, C-e-d-r-o-n-e,

12   of Brighton, Massachusetts; Shalana Wright of

13   Brighton, Massachusetts; Lee Moreno of Brighton,

14   Massachusetts; Marvin Ampey, A-m-p-e-y, of Brighton,

15   Massachusetts; Gael Rosen of Children's Hospital; Dr.

16   Elizabeth Schainker, S-c-h-a-i-n-k-e-r, of Children's

17   Hospital; Dr. Baruch Krauss, B-a-r-u-c-h K-r-a-u-s-s,

18   of Children's Hospital; Alice Newton, Dr. Alice

19   Newton of Children's Hospital; Polly Taylor of

20   Brighton, Massachusetts; Rasheena ████████ of

21   Dorchester, Massachusetts; ██████████████ of

22   Dorchester, Massachusetts; Shirley Briathwaite of

23   Dorchester, Massachusetts; Denise Wilson of

24   Dorchester, Massachusetts; Portia Holman of Brighton;

1      Diane Palmas, P-a-l-m-a-s, of Brighton; Susan Dye, D-
2      y-e, of the Suffolk County District Attorney's
3      Office; Ruth Scully-Hall of the Suffolk County
4      District Attorney's Office; Luana, L-u-a-n-a, Hoskins
5      of the FBI, Latent Fingerprint Department,
6      Washington, D.C.; Stephen Meagher of the Federal
7      Bureau of Investigation, Washington, D.C.; Michael
8      Gorn, G-o-r-n, of the Boston Police Department;
9      Christine Stevens of the Boston Police Department;
10     Julie K. Lynch of the Boston Police Department;
11     Joseph Varlaro, V-a-r-l-a-r-o, of Boston Police
12     Department; Victoria Coburn of Walpole,
13     Massachusetts; Albert Elian, E-l-i-a-n, of the
14     Massachusetts State Police; George Barry of the
15     Massachusetts State Police; Alphonso Southerland,
16     S-o-u-t-h-e-r-l-a-n-d, of Brighton, Massachusetts;
17     Michael Flemmi of Braintree, Massachusetts; Sergeant
18     Detective John McDonough of Boston Police Department;
19     Lieutenant Gary French of the Boston Police
20     Department; Sergeant Detective Lorraine Henshaw of
21     the Boston Police Department; Detective Jay Joyce of
22     the Boston Police Department; Detective Thomas Lembo
23     of the Boston Police Department; Detective Barbara
24     Salley of the Boston Police Department; Sergeant

1    Harry Byrne of the Boston Police Department. That's

2    spelled B-y-r-n-e.

3         Sergeant Robert Merner of the Boston Police

4    Department; Officer William Kelley of the Boston

5    Police Department; Arthur Whitkins, Officer Arthur

6    Whitkins of the Boston Police Department; Officer

7    William Kendricken, K-e-n-d-r-i-c-k-e-n, of the

8    Boston Police Department; Officer Edward Fitzgerald

9    of the Boston Police Department; Officer Tahisha

10   Skeen of the Boston Police Department.  That's

11   spelled S-k-e-e-n.

12        Officer Jesse Stots, S-t-o-t-s, of the

13   Boston Police Department; Officer Carl Shorter of the

14   Boston Police Department; Officer Andrew J. Fay of

15   the Boston Police Department; Officer Stanley Woo of

16   the Boston Police Department; Detective Margaret

17   Murphy of the Boston Police Department; Officer

18   Rosemary McLaughlin of the Boston Police Department;

19   Officer Antonio Rotger, R-o-t-g-e-r, of the Boston

20   Police Department; Officer Paul Downey of the Boston

21   Police Department; Officer Joseph Murray of the

22   Boston Police Department; Officer Dan MacDonald of

23   the Boston Police Department; Deputy Joseph Reid, R-

24   e-i-d, of the Suffolk County Sheriff's Office; Deputy

1    William Grout of the Suffolk County Sheriff's Office;

2    Simon Cole; Dr. Donald Riley; Ruby Williams; and

3    Tanya Williams.

4            Is there any prospective juror who is

5    related by blood or by marriage to any of these

6    possible witnesses, or are any of them known to any

7    prospective juror?

8            THE COURT OFFICER: If you do, just hold

9    your yellow card and I'll take your panel number.

10           Panel 9, Seat 1; Panel 7, Seat 12; Panel 3,

11   Seat 2; Panel 2, Seat 9, Panel 6, Seat 3; Panel 10,

12   Seat 9; Panel 10, Seat 4.

13           THE COURT: All right.  The indictments in

14   this case charge that on or about July 13th of 2000,

15   Mr. McCants kidnapped ▮▮▮▮▮▮▮, that he

16   kidnapped ▮▮▮▮▮▮, and on or about July 13th of

17   2000 Owen McCants had sexual intercourse with ▮▮▮

18   ▮▮▮▮, a child under 16, and compelled said child

19   to submit by force and against her will.

20           And another indictment charges that on or

21   about July 13th, Owen McCants did assault one ▮▮▮

22   ▮▮▮, a child under the age of 16 years, with

23   intent to commit rape.

24           And another one charges that on or about

1    July 13th of 2000, Owen McCants applied,

2    administered, or caused to be taken by ████████

3    a drug, in order to overpower ████████ to have

4    sexual intercourse.

5         And another one charges that on or about

6    July 13th Owen McCants did commit an assault and

7    battery upon ████████ by means of a certain

8    dangerous weapon, that is, a knife.

9         Do any of you have any interest in the

10   outcome of this case?

11        No response.

12        Have any of you formed an opinion about

13   this case?

14        THE COURT OFFICER: Panel 3, Seat 10; Panel

15   3, Seat 2; Panel 2, Seat 9; Panel 4, Seat 14; Panel

16   4, Seat 10; Panel 5, Seat 14; Panel 3, Seat 11; Panel

17   2, Seat 1; Panel 1, Seat 1; Panel 1, Seat 12; Panel

18   2, Seat 2; Panel 7, Seat 12; Panel 10, Seat 5; Panel

19   6, Seat 7; Panel 6, Seat 1; Panel 6, Seat 9; Panel

20   10, Seat 8; Panel 4, Seat 3; Panel 4, Seat 13; Panel

21   8, Seat 11; Panel 8, Seat 14; Panel 8, Seat 5.

22        THE COURT: Have any of you expressed an

23   opinion about this case, or has anyone expressed an

24   opinion to you relative to this case?

13

1          No response.

2          I want to mention certain principles of law

3     to you in a general way.  Principles I will explain

4     more fully at the close of the trial.

5          In a criminal case the prosecutor, that is

6     Mr. Deakin, has the burden of proof.  The law places

7     no burden whatsoever on a defendant to prove anything

8     at trial.  A defendant need not present witnesses or

9     produce evidence, or to testify.  The burden of proof

10    lies entirely with the prosecution throughout the

11    trial.

12         Is there any prospective juror who is not

13    aware of this general rule of law, or who cannot

14    accept and be guided by this rule of law?

15         No response.

16         In a criminal case, any person accused of a

17    crime is presumed innocent, and this presumption

18    alone is sufficient to acquit him, unless and until

19    proven guilty.

20         Is there any prospective juror who is not

21    aware of this general rule of law, or who cannot

22    accept and be guided by this rule of law?

23         No response.

24         In a criminal case, the prosecution must

1    prove each and every element of the crime or crimes

2    charged beyond a reasonable doubt.  This is the

3    highest standard of proof, the highest known in our

4    legal -- this is a high standard of proof, the

5    highest known in our legal system.

6             Is there any prospective juror who is not

7    aware of, or who cannot accept and be guided by this

8    general rule of law?

9             No response.

10            Does any prospective juror have difficulty

11   hearing?

12            No response.

13            Does any prospective juror have difficulty

14   understanding the English language?

15            THE COURT OFFICER: Panel 9, Seat 5; Panel

16   8, Seat 7; Panel 10, Seat 16 --

17            THE COURT: Seat what?

18            THE COURT OFFICER: Seat 16.

19            Panel 8, Seat 12.

20            THE COURT: Does any prospective juror have

21   a physical disability that might affect their ability

22   to concentrate or sit comfortably during the trial?

23            THE COURT OFFICER: Panel 6, Seat 8; Panel

24   6, Seat 7; Panel 10, Seat 5; Panel 10, Seat 8; Panel

1    1, Seat 11; Panel 3, Seat 3; Panel 4, Seat 7; Panel

2    10, Seat 14; Panel 3, Seat 12.

3            THE COURT: Now, is any prospective juror

4    currently employed by or have you previously been

5    employed by the Boston Police Department, the Suffolk

6    County Sheriff's Department, or the Suffolk County

7    District Attorney's Office, or have any members of

8    your immediate family been so employed?  Or the FBI?

9            THE COURT OFFICER: Panel 3, Seat 2; Panel

10   7, Seat 12; Panel 9, Seat 1; Panel 7, Seat 5; Panel

11   2, Seat 5; Panel 10, Seat 9; Panel 8, Seat 11.

12           THE COURT: Now, a number of the witnesses

13   are expected -- who are expected to testify are

14   police officers.  In assessing the credibility of

15   these witnesses, would any prospective juror be

16   inclined to consider the testimony of a police

17   officer more or less trustworthy based solely on the

18   fact that he or she is a police officer?

19           THE COURT OFFICER: Hold your card up,

20   ma'am.

21           Panel 1, Seat 12; Panel 3, Seat 2; Panel 2,

22   Seat 14; Panel 2, Seat 9; Panel 3, Seat 10; Panel 5,

23   Seat 12; Panel 6, Seat 9.

24           THE COURT: This trial is expected to last

1    about seven to nine days.  Now, we're not going to

2    start the testimony today.  And, in fact, we probably

3    won't start the testimony until Tuesday of next week.

4    So your service as jurors on this trial will be

5    required from Tuesday of next week through about May

6    3rd, which will be the following week, Friday of the

7    following week.

8            Is there any prospective juror who is faced

9    with an insurmountable scheduling conflict that will

10    make it impossible to serve for the duration of this

11    trial?

12            Now, hang on a second.  By "insurmountable

13    scheduling" -- let's understand something.  Everyone

14    in this country wants justice.  But no one wants to

15    do jury duty.  And that's a requirement of

16    citizenship.

17            By "insurmountable scheduling conflict," I

18    do not mean appointments that can be changed, or

19    business or holiday travel that can be postponed.  I

20    mean something on the order of nonelective surgery, a

21    son or daughter's wedding, or your own wedding, a

22    seriously ill child, or a dream vacation to Hawaii in

23    which you've invested over half your life savings and

24    it's all nonrefundable.

17

1        With that caveat in mind, does any

2    prospective juror have a scheduling conflict that

3    would make service as a juror on this case

4    impossible?  If you believe that you have a conflict,

5    raise your hand; I will hear you.  It does not mean

6    that you will be excused for that, but I will hear

7    you.

8        THE COURT OFFICER: Panel 6, Seat 10; Panel

9    7, Seat 6; Panel 4, Seat 7; Panel 3, Seat 3; Panel 2,

10    Seat 16; Panel 2, Seat 8; Panel 3, Seat 11; Panel 4,

11    Seat 16; Panel 2, Seat 14; Panel 2, Seat 9; Panel 4,

12    Seat 10; Panel 7, Seat 12; Panel 4, Seat 5; Panel 3,

13    Seat 12; Panel 3, Seat 10; Panel 3, Seat 9; Panel 3,

14    Seat 13; Panel 5, Seat 1; Panel 4, Seat 2; Panel 10,

15    Seat 15; Panel 6, Seat 5; Panel 10, Seat 1; Panel 6,

16    Seat 9; Panel 6, Seat 13; Panel 6, Seat 1; Panel 10,

17    Seat 16; Panel 10, Seat 8; Panel 10, Seat 2; Panel 5,

18    Seat 12, Panel 10, Seat 14; Panel 10, Seat 4; Panel

19    10, Seat 3; Panel 3, Seat 16; Panel 9, Seat 2; Panel

20    9, Seat 3; Panel 2, Seat 2; Panel 1, Seat 3; Panel 2,

21    Seat 1; Panel 1, Seat 12; Panel 1, Seat 1.

22        THE COURT: All right.  May I see counsel at

23    side bar.

24

1    SIDE-BAR CONFERENCE:

2              THE COURT: Does your client -- we're going

3         to have to do the individual questions at this time.

4         Does your client want to be present at side bar?

5              MR. SHEA: I'd prefer to have it done in the

6         room.  And so he won't be present at side bar.

7              THE COURT: Well, I mean, I can't fit

8         everybody in the room.  So....

9              MR. SHEA: In discussion with him, I think

10        people would be more forthcoming in the room.  And so

11        that's what we'd choose.

12             THE COURT: So he's waiving his presence

13        during that process?

14             MR. SHEA: Because we think we'll get

15        clearer answers in the room, yes.

16             THE COURT: All right.  Fine.

17             (End of side-bar conference.)

18

19             THE COURT: All right.  Ladies and

20        gentlemen, I'm going to have to have the stenographer

21        set up in the next room.  I have some other questions

22        that I need to ask each of you.  But I have to do it

23        individually.  And, so, we're going to take a short

24        break while she moves her equipment, and then we'll

19

1     get started again.

2                (Recess)

3          THE CLERK: Joseph Gray.

4          THE JUROR: Yes.

5          THE CLERK: He raised his hand to two

6     questions.

7          THE COURT: One, you said you already had an

8     opinion about this case.

9          THE JUROR: Yeah.

10         THE COURT: What's that opinion, since you

11    don't know anything about it?

12         THE JUROR: Well, I mean, I have an opinion

13    about child abuse.

14         THE COURT: What's that opinion?

15         THE JUROR: That it's just wrong.  I mean, I

16    had a friend when I was in elementary school who was

17    abused as a child.  So....

18         THE COURT: So, you've already decided the

19    case?

20         THE JUROR: Well, not the case, but I'm

21    already -- I wouldn't be inclined to take the side of

22    someone who has been accused of child abuse.

23         THE COURT: You're excused.

24         THE COURT OFFICER: This way, sir.  Step

1      this way.

2                     1-2.  Have a seat right there, please.

3                     THE COURT: This is John Matias.

4                     THE CLERK: He did not raise his hand.

5                     THE COURT: All right.  So you didn't answer

6      yes to any of the questions I asked?

7                     THE JUROR: No.

8                     THE COURT: All right.  I needed to ask you

9      this in private, separate from the rest of the group.

10     Have you ever been the -- have you or anyone in your

11     family ever been the victim of sexual abuse?

12                    THE JUROR: No.

13                    THE COURT: Have you or anyone in your

14     family, or close personal friend, ever been accused

15     of a sexual assault or abuse?

16                    THE JUROR: No.

17                    THE COURT: Is there anything about this

18     case that would affect your ability to be fair and

19     impartial and decide this case solely on the evidence

20     presented in court?

21                    THE JUROR: No, I don't think so.

22                    THE COURT: All right.  You want to step

23     outside for a second.

24                    Excuse me.  Can I see your questionnaire?

1            So you received training or education in

2    criminal justice?  You took a college course?  Just

3    one?

4            THE JUROR: Yeah.  Actually, I took a course

5    at the public defender's office, and a course at the

6    district attorney's office.

7            THE COURT: In this state?

8            THE JUROR: No, no.  In Rochester, New York.

9            THE COURT: All right.  Would that affect

10   your ability to be fair and impartial and decide this

11   case based solely on the evidence presented here in

12   court?

13           THE JUROR: No.

14           THE COURT: And you're a volunteer coach?

15           THE JUROR: Yes.

16           THE COURT: With children seven to nine

17   years old.  You have no knowledge of -- could you be

18   fair and impartial?  Yes.

19           Okay.  You want to step outside for a

20   second.

21           THE COURT: Commonwealth?

22           MR. DEAKIN: Commonwealth's content.

23           THE COURT: Defendant?

24           MR. SHEA: I believe because of the course

22

1    with the DA's office and that he coaches children

2    seven to nine --

3            THE COURT: Pardon me?

4            MR. SHEA: Given that he's had a course with

5    the DA's office and that he coaches children seven to

6    nine, I don't think he can be fair and impartial.

7            THE COURT: He says he can.

8            MR. SHEA: I understand he says that.

9            THE COURT: I don't know what you're saying.

10   I mean, you're repeating yourself.  Either he's

11   acceptable or you're using a challenge.

12           MR. SHEA: I'll use a challenge.

13           THE COURT: Excused.

14           THE CLERK: Carmen Arinella.

15           THE JUROR: Arinella, yes.

16           THE COURT: Did you answer yes to any of the

17   questions I asked?

18           THE CLERK: Length of the case.

19           THE COURT: Length of the case.  What's the

20   problem with the length of the case?

21           THE JUROR: I've got a serious work problem,

22   your Honor.  I am, like, a one-man show in my place.

23   We only have three people.  My two bosses, one lives

24   in Hartford and one lives in New Hampshire.  I open

1    the joint, close it at night.  So, unless there's an

2    emergency --

3                    THE COURT: What kind of business is it?

4                    THE JUROR: We're a fastening company out of

5    Charlestown, and if there's an emergency or

6    something, one will come down to relieve me, but in

7    the seven to nine days, it would be very, very tough.

8    One of my bosses in Connecticut has a very sick

9    father-in-law, and the other one's got a mentally

10   retarded daughter in New Hampshire.

11                   So I'm really the only one they can rely on

12   as of this time.

13                   THE COURT: Well, I can't excuse you because

14   of employment.

15                   THE JUROR: Yeah.  Well, I went because of

16   them.  Because, you know, they just can't run it or

17   open it, the business, you know, it's just very

18   tight.

19                   THE COURT: I understand.  But I can't

20   excuse you because of employment, sir.

21                   THE JUROR: Yeah.  Okay.  I tried.

22                   THE COURT: Did you answer any other

23   questions I asked?

24                   THE JUROR: Excuse me?

1          THE COURT: Did you answer any other

2     questions yes?

3          THE JUROR: Like...?

4          THE COURT: Did you answer yes to any other

5     questions that I asked?

6          THE JUROR: No.

7          THE COURT: Okay.  Could I see your form,

8     please?

9          THE JUROR: Sure.  It is quite a serious

10    problem they have, but I told them what I had, and,

11    you know, it's pretty hard on both of them right now.

12         THE COURT: I understand that.

13         THE JUROR: So I've been really taking care

14    of their business, and running the show for them.

15    From 4 p.m. (sic) in the morning.  It's not easy.

16    So, that's -- it is pretty tough, you know.  I've

17    been trying the best I can for them.  So....

18         But I was hoping something would -- if it

19    was, like, one day or something, I'd have no problem

20    with one or two days.  But where it's the seven to

21    nine, I would feel very tough on -- I would really

22    appreciate the excuse, if I can, but, you know, I'm

23    not the judge, you know.

24         THE COURT: I can't excuse you because of

25

1      that.  You want to step outside for a second?

2                    THE JUROR: Sure.

3                    THE COURT OFFICER: Do you want me to bring

4      him back in?

5                    THE COURT: There were a couple of questions

6      I needed to ask you.

7                    THE JUROR: Sure.

8                    THE COURT: One is have you or anyone in

9      your family or close personal friends ever been the

10     victim of sexual abuse?

11                   THE JUROR: No, sir.

12                   THE COURT: Have you or anyone in your

13     family or close personal friends ever been accused of

14     sexual abuse?

15                   THE JUROR: One.  A friend of ours, Marie

16     Deveaux --

17                   THE COURT: You don't have to tell us a

18     name.

19                   THE JUROR: I'm sorry.

20                   THE COURT: Would that affect your ability

21     to be fair and impartial in deciding this case based

22     solely on the evidence presented here in court?

23                   THE JUROR: It could be very possible.  I

24     would -- on my thing I would tell you yes.  I didn't

1          put down my education because I wasn't positive on

2          that.  I put that -- I think it was no.  But I wasn't

3          positive on that question.

4                    THE COURT: All right.  You're excused.

5                    THE COURT OFFICER: Step this way, sir.

6                    1-4.

7                    THE CLERK: Ruthie Holloman.  This juror did

8          not raise her hand.

9                    THE COURT: All right.  I need to ask you a

10         couple of questions.

11                   Have you or anyone in your family or close

12         personal friends been the victim of a sexual assault?

13                   THE JUROR: No.

14                   THE COURT: Have you or anyone in your

15         family or close personal friends ever been accused of

16         a sexual assault?

17                   THE JUROR: No.

18                   THE COURT: All right.  Do you have your

19         form?

20                   THE JUROR: Yes.

21                   THE COURT: May I have it, please.

22                   Is there anything else about this case that

23         would make it difficult for you to be fair and

24         impartial and decide this case based solely on the

27

1      evidence presented here in court?

2            THE JUROR: No.

3            THE COURT: You say you have contact with

4      children seven to nine years.  Are they your children

5      or someone else's?

6            THE JUROR: Mine.

7            THE COURT: Do you want to step outside for

8      a second.

9            THE JUROR: Okay.

10           THE COURT OFFICER: Stand right there.

11           THE COURT: Commonwealth.

12           MR. DEAKIN: Commonwealth's content.

13           THE COURT: Defendant.

14           MR. SHEA: I believe I'm content.  There's

15     one thing with the system that has just struck me,

16     which is I have a hard time communicating with my

17     client; how he feels people are looking at him.  If

18     this is where --

19           THE COURT: That's why I asked you.  We

20     could have done it out there where we had more room,

21     and he could be present at side bar.

22           MR. SHEA: I understand.  It's -- in terms

23     of whether to use a peremptory or not, I'd like to be

24     able to --

1        THE COURT: Then we'll go back outside.

2        MR. SHEA: Is there any way to go through

3    the questionnaires in this atmosphere and still have

4    the ability to confer with my client?

5        THE COURT: Physically, we can't do it.

6    It's one or the other.  We're either in this room, or

7    we're out at side bar so he can be there over in the

8    corner.

9        MR. SHEA: Can I have a moment to go out to

10   him and ask him if he feels comfortable with that

11   person?

12       THE COURT: Fine.

13       MR. SHEA: Thank you.

14       THE COURT: A moment, though.

15       MR. SHEA: I'll be quick.

16       (Counsel and defendant confer.)

17       MR. SHEA: We're content.

18       THE COURT: All right.  Put her in the jury

19   room.

20       THE CLERK: Ma'am.  Roberta Shaw.

21       THE JUROR: Yes.

22       THE CLERK: This lady did not raise her hand

23   to any question.

24       THE COURT: All right.  I need to ask you

1    these questions in private.

2              THE JUROR: Yes.

3              THE COURT: Have you or anyone in your

4    family or close personal friend ever been accused of

5    a sexual assault?

6              THE JUROR: No.

7              THE COURT: Have you or any family member or

8    close personal friend ever been the victim of a

9    sexual assault?

10             THE JUROR: When I was young.

11             THE COURT: When you were young?

12             THE JUROR: Yes.

13             THE COURT: Would that affect your ability

14   to be fair and impartial, and decide this case based

15   solely on the evidence presented in court?

16             THE JUROR: I don't know if I could do it.

17   You know, just thinking about it.

18             THE COURT: All right.  You're excused.  May

19   I have your form.

20             THE JUROR: Yes.

21             THE COURT OFFICER: Step this way.

22             THE CLERK: Christopher Moon.  He did not

23   raise his hand to anything.

24             THE COURT: All right.  Have you or any

1    family member or close personal friend ever been

2    accused of a sexual assault?

3            THE JUROR: No.

4            THE COURT: Have you or any family member or

5    close personal friend ever been the victim of a

6    sexual assault?

7            THE JUROR: No.

8            THE COURT: May I see your form, the form

9    you filled out.

10            Is there anything about this case that

11    would prevent you from being fair and impartial and

12    deciding this case --

13            THE JUROR: No.

14            THE COURT:  -- based solely on the evidence

15    presented here?

16            THE JUROR: No.

17            THE COURT: You took a course in criminal

18    justice.

19            THE JUROR: Uh-huh.

20            THE COURT: A course, or two courses, or...?

21            THE JUROR: One course.

22            THE COURT: And when was that?

23            THE JUROR: About a year-and-a-half ago.

24            THE COURT: So you have cousins and

31

1    neighbors that are between seven and nine years old?

2              THE JUROR: I do.

3              THE COURT: And you don't have any knowledge

4    about media coverage of this case?  You don't know

5    what case it is?

6              THE JUROR: No, I don't.

7              THE COURT: All right.  You want to step

8    outside for a second.

9              MR. SHEA: One moment, Judge.

10             THE COURT: Sure.

11             MR. SHEA: I'll be quick.

12             THE COURT: Commonwealth.

13             MR. DEAKIN: Commonwealth is content, your

14   Honor.

15             MR. SHEA: Content.

16             THE COURT OFFICER: Step this way, sir.

17             THE COURT: Seat No. 2.

18             THE COURT OFFICER: 1-11.

19             THE CLERK: Heidi Wishnew.

20             THE JUROR: Yes.

21             THE CLERK: Raised her hand to physical

22   problem.

23             THE COURT: Have a seat.

24             THE JUROR: You want me to sit.

32

1           THE COURT: All right.  Would you have a

2    problem sitting comfortably?

3           THE JUROR: Yes.  I'm a diabetic.  So I have

4    -- first of all, I have neuropathy in my feet and

5    ·hands, which means that I have no feeling in them.

6    And they tingle all the time.

7           THE COURT: All right.  You're excused.

8           THE COURT OFFICER: This way, please.

9           THE CLERK: Heidi Wishnew.

10          THE JUROR: What?

11          THE CLERK: I was just saying your name.

12          THE JUROR: No.  It's Carol Mytych.

13          THE CLERK: Where's 1-12.

14          THE JUROR: I'm 1-12.

15          THE CLERK: Okay.  I'm sorry.  They have it

16    spelled wrong on the thing.

17          This lady raised her hand to believing a

18    police officer, length of the case, and then forming

19    an opinion.

20          THE JUROR: Also, I'm not sure if I know

21    you.

22          THE COURT: I'm sorry?

23          THE JUROR: I'm not really sure if I know

24    him or not.

33

1          Did you ever live in Revere?

2          MR. DEAKIN: No.

3          THE COURT: All right.  You answered yes to

4     the question regarding police witnesses.  Would you

5     believe or disbelieve a police officer solely because

6     they are a police officer?

7          THE JUROR: Yes.

8          THE COURT: Okay.  You're excused.

9          THE JUROR: Thank you.

10          THE COURT OFFICER: Have a seat right there,

11     please.

12          THE COURT: May I see your form.

13          THE JUROR: Sure.

14          THE COURT: Did you answer yes to any of my

15     questions?

16          THE JUROR: Pardon me?

17          THE COURT: Did you answer yes to any of the

18     questions I asked?

19          THE JUROR: Just one of them.  I was -- when

20     I was eight years old I was sexually abused by one of

21     my -- the old landlord.  But -- the landlord at the

22     time, going back so many years ago, but it just -- I

23     must have blocked it out or something because it

24     resurfaced about 20 years ago.  But it was never

1    enough to, you know, bother me or anything.  I mean,

2    I even laughed about it with my sister one night in

3    the kitchen.  It was just a man that did this to me.

4    It was more like a feeling type of a thing.  The man

5    was, like, in his eighties.  So maybe he was senile.

6    I don't know.

7              But it didn't bother me until I got older.

8    But I said, he had a heck of a nerve doing that to

9    me.  I was just a little kid.

10             THE COURT: Right.

11             THE JUROR: But I do have an open mind, your

12   Honor.

13             THE COURT: All right.  Can I ask this

14   question?

15             Would that affect your ability to be fair

16   and impartial and decide this case based solely on

17   the evidence presented here in court?

18             THE JUROR: Can I ask how old the plaintiff

19   -- how old the child is?

20             MR. DEAKIN:  At the time of the crime,

21   eleven.  Thirteen now.

22             THE COURT: Eleven.

23             THE JUROR: Eleven.  Was she female?

24             THE COURT: Yes.  Would that affect your

1        ability to be fair and impartial?

2               THE JUROR: No.  I don't think so.  Because

3        a child is a child, no matter what, you know what I

4        mean.  I'm sorry.  I don't know how to explain.  I'm

5        a little nervous today.

6               The thing I wanted to ask, was this in the

7        papers a couple of years ago?

8               THE COURT: Yes.

9               THE JUROR: Did this happen on Fidelis Way?

10              THE COURT: Yes.

11              THE JUROR: All right.  See, I read that.

12              THE COURT: All right.  You're excused.

13              THE JUROR: And I have an excellent memory,

14       so I think I better just say -- say good-bye to me.

15       I'll be back in three years.  Thank you.

16              THE COURT: Thanks.

17              THE COURT OFFICER: 14-1.  I mean 1-14.

18              THE CLERK: Howard Cooperider.

19              THE COURT: What happened to 1-13?

20              THE COURT OFFICER: That was her.

21              THE COURT: I'm sorry.

22              THE CLERK: This gentleman did not raise his

23       hand.

24              THE COURT: Do you want to have a seat, sir.

1        Do you have that form?

2        I need to ask you a couple of questions.

3   Have you or any family member or close personal

4   friend ever been accused of a sexual assault?

5            THE JUROR: No.

6            THE COURT: Have you or any family member or

7   close personal friend ever been the victim of a

8   sexual assault?

9            THE JUROR: No.

10           THE COURT: Is there anything else about

11  this case that would make it -- or is there anything

12  about this case that would make it difficult for you

13  to be fair and impartial and decide this case solely

14  -- based solely on the evidence presented in court?

15           THE JUROR: There's two questions in here on

16  this specific topic.  While a good friend of mine and

17  my wife's child was molested and raped five years

18  ago, it affected us as well.  I nevertheless put

19  below there that I feel I could handle this case on

20  its own merits.

21           So the person who was sexually molested was

22  the child or --

23           THE JUROR: Was a minor and was a child of a

24  friend of ours.

1          THE COURT: All right.  So, given that,

2     would that affect your ability to be fair and

3     impartial and decide this case based solely on the

4     evidence presented in court?

5          THE JUROR: I think it would not.  I mean,

6     it had an impact, but I think it would not.

7          THE COURT: Okay.  You want to step outside.

8          THE COURT OFFICER: Step this way, sir,

9     please.

10          MR. DEAKIN: One moment, if I may, your

11     Honor.

12          The Commonwealth is content.

13          THE COURT: Defendant.

14          MR. SHEA: We will use a -- I'd ask to have

15     him struck for cause, given the family connection

16     to --

17          THE COURT: I'm not going to strike him for

18     cause.  He answered the questions very

19     straightforward.

20          MR. SHEA: Given that, I'll use a

21     peremptory.

22          THE COURT: All right.

23          THE COURT OFFICER: 1-15.

24          THE CLERK: Robert Four.

1          THE JUROR: Yes.

2          THE CLERK: This gentleman did not raise his

3     hand.

4          THE COURT: Do you have your form?  May I

5     see it, please.

6          I just have to ask you a couple of

7     questions.

8          Have you or any family member or close

9     personal friend ever been accused of a sexual

10    assault?

11         THE JUROR: Accused of, or...?

12         THE COURT: Accused of.

13         THE JUROR: No.  Well, he's deceased.  I

14    guess the answer is yes.

15         THE COURT: All right.  Was it a close

16    family -- was it a family member of personal friend?

17         THE JUROR: Family member.

18         THE COURT: And they were accused of a

19    sexual assault.

20         THE JUROR: Yes.

21         THE COURT: What type of sexual assault?

22         THE JUROR: Intercourse.

23         THE COURT: With a child?

24         THE JUROR: Yes.

1          THE COURT: And how close a family member

2     was this?

3          THE JUROR: My sister.

4          THE COURT: Would that affect your ability

5     to be fair and impartial and decide this case based

6     solely on the evidence presented in court?

7          THE JUROR: If this man -- no, it wouldn't.

8     If he's innocent, he's innocent.

9          THE COURT: Have you or any close family

10    member -- any family member or close personal friend

11    ever been the victim of a sexual assault?

12          THE JUROR: Yes.

13          THE COURT: Friend?  Family member?

14          THE JUROR: Family member, yeah.

15          THE COURT: How close?

16          THE JUROR: It was my sister and my father.

17          THE COURT: All right.  Would that affect

18    your ability to be fair and impartial and decide this

19    case based solely on the evidence presented here in

20    court?

21          THE JUROR: No.

22          THE COURT: All right.  Is there anything

23    else, or is there anything about this case that would

24    affect your ability to be fair and impartial and

40

1      decide this case based solely on the evidence

2      presented here in court?

3                  THE JUROR: No.

4                  THE COURT: All right.  You want to step

5      outside for a second.

6                  MR. SHEA: I'm concerned, for one, is it the

7      same sister who was accused?

8                  THE COURT: No, it wasn't the sister.  It

9      was the father that was accused.  The father's dead

10     and the sister's --

11                 MR. SHEA: No.  The father --

12                 MR. DEAKIN: I think he misunderstood.  I

13     think he misunderstood the question.

14                 THE COURT: Do you want me to call him out,

15     find out who it was?  I'm certain -- bring him back.

16                 MR. SHEA: The other thing is, why is the

17     sister deceased?  Did she kill herself?

18                 MR. DEAKIN: I think the father's deceased.

19                 THE COURT OFFICER: Take a seat, please.

20                 THE COURT: Can you tell me, was it your

21     father who was accused of a sexual assault?

22                 THE JUROR: Yes.  By my sister.

23                 THE COURT: By your sister.  And your father

24     is deceased?

1      THE JUROR: That is correct.

2      THE COURT: Okay.  You want to step out for

3  a second.

4      Commonwealth?

5      MR. DEAKIN: Commonwealth's content.

6      THE COURT: Defendant.

7      MR. SHEA: Is it possible to find out more

8  about what he thinks?  Does he think the father was

9  wrongly accused?  I mean, what are his feelings about

10  the case?

11      THE COURT: No.  I'm not going to go into

12  what he thinks about that issue.  My issue with him

13  is what can he do in this case.  And he's very clear

14  that he can -- as he said, if the guy's innocent,

15  he's innocent.  It's about this case, the facts of

16  this case.

17      MR. SHEA: But, I mean, it's interwoven.  I

18  mean, sexual assault within a family is about as much

19  of a mind field as one can uncover.

20      THE COURT: Well, this one isn't a family

21  member anyway, is it?

22      MR. SHEA: This one isn't.  But, I mean, in

23  terms of how it affects someone's ability to be fair

24  and impartial.

42

1        THE COURT: Well, he's already answered that

2    he could be.

3        MR. SHEA: Could I have a moment to speak

4    with my client?

5        THE COURT: Go ahead.

6        MR. SHEA: We'll use a peremptory on Mr.

7    Four.

8        THE COURT OFFICER: 1-16.

9        THE CLERK: Mr. Palter.

10        THE JUROR: Palter.

11        THE CLERK: Mr. Palter didn't raise his hand

12    to anything.

13        THE COURT: May I have your form, please,

14    sir?

15        Have you or any family member or close

16    personal friend ever been accused of a sexual

17    assault?

18        THE JUROR: No.  But when I was about 12

19    years old, I was on a trolley and someone actually

20    grabbed my genitals.

21        THE COURT: That was my next question.  So

22    the answer to my question, the first question, was --

23        THE JUROR: No.  I'm sorry.

24        THE COURT: Have you or any family member or

1   close personal friend ever been accused of a sexual

2   assault?

3              THE JUROR: No.

4              THE COURT: Have you or any family member or

5   close personal friend ever been the victim of a

6   sexual assault?

7              . THE JUROR: As I just explained, I don't

8   know if that qualifies, would qualify, you know,

9   because it was just --

10             THE COURT: Would that experience, in and of

11  itself -- would that experience affect your ability

12  to be fair and impartial and decide this case based

13  solely on the evidence presented in court?

14             THE JUROR: It could.  Although, if I can

15  explain, I have two nieces, and that really is what

16  would affect my ability to --

17             THE COURT: All right.  You're excused.

18             THE COURT OFFICER: Step this way, sir.

19             THE CLERK: This juror has formed an

20  opinion, and the length of the case.

21             THE COURT: You have an opinion about the

22  case?

23             THE JUROR: Do I have an opinion about the

24  case?  Well, I'm a mother with kids, and --

44

1          THE COURT: The fact that you're a mother,

2     would that affect your ability to be fair and

3     impartial and decide this case based solely on the

4     evidence presented in court?

5          THE JUROR: Yeah.

6          THE COURT: All right.  You're excused.

7          THE COURT OFFICER: Step this way.

8          THE CLERK: Vikas Agarwal.

9          THE COURT: You answered that you had an

10    opinion about this case?

11         THE JUROR: Yeah.  I'm a third-year medical

12    student, and I just finished my psychiatry rotation.

13    So a lot of kids that were victims of child abuse

14    later in life manifesting with depression, bipolar.

15         THE COURT: Would that affect your ability

16    to be fair and impartial and decide this case based

17    solely on the evidence presented in court?

18         THE JUROR: I think so.

19         THE COURT: All right.  You're excused.

20         THE COURT OFFICER: Step this way, sir.

21         THE CLERK: Thomas Greene.

22         THE JUROR: Yes.

23         THE CLERK: Answered the question employed

24    by police.

1           THE JUROR: I used to work for the Suffolk

2   County DA's office as a student prosecutor.

3           THE COURT: All right.  Would that affect

4   your ability to be fair and impartial and decide this

5   case based solely on the evidence presented here in

6   court?

7           THE JUROR: No.

8           THE COURT: When did you work there?

9           THE JUROR: Back in '95.

10          THE COURT: What did you do?

11          THE JUROR: I was a prosecutor in the BMC,

12   just the Boston Municipal Court.

13          THE COURT: All right.  Have you or any

14   close family member or close personal friend ever

15   been accused of a sexual assault?

16          THE JUROR: No.

17          THE COURT: Have you or any family member or

18   close personal friend ever been the victim of a

19   sexual assault?

20          THE JUROR: No.

21          THE COURT: Is there anything about this

22   case that would make it difficult for you to be fair

23   and impartial and decide this case based solely on

24   the evidence presented here in court?

1     THE JUROR: No.

2     THE COURT: All right.  May I see your form?

3   So you prosecuted as a student?

4     THE JUROR: Right.

5     THE COURT: All right.

6     THE JUROR: My last year in law school.

7     THE COURT: So you could get that job down

8 there at Minz Levin, right?

9     Do you want to step outside for a second.

10     THE COURT: Commonwealth?

11     MR. SHEA: I was just going to ask, he

12 mentioned that his experience in criminal law is

13 extensive.  I assume it's probably the internship

14 with the DA's office.  But I'd be curious if it's

15 more.

16     THE COURT: Bring him back in for a second.

17     THE COURT OFFICER: Step this way, sir.

18     THE COURT: I just need to ask you a quick

19 question.  On the form you said that criminal --

20 extensive.  What is that?

21     THE JUROR: Well, there's a number of -- a

22 couple of things I was involved in personally, but

23 family members, as well, have a significant history

24 with the criminal justice system.

1           When you say -- is this experience as a

2     lawyer or as a defendant?

3           THE JUROR: Family members as a defendant.

4           THE COURT: Your family members as

5     defendants.

6           THE JUROR: Right.  And myself as a

7     defendant at one time.

8           THE COURT: For...?

9           THE JUROR: I was most recently -- I was

10    arrested one time for an armed burglary.  And the

11    case was dismissed.  It was a mistake.  And then I

12    was arrested as a juvenile for minor possession of

13    alcohol and possession of marijuana.  My record is

14    sealed at this point.

15          THE COURT: So, when you say "extensive,"

16    okay, it's not in terms of practicing law.

17          THE JUROR: No.  Not practicing.  I don't

18    have any criminal practicing experience.  I've never

19    been a criminal defense attorney or anything else

20    like that.

21          THE COURT: Okay.  So the only trial work

22    you had as a criminal lawyer was as a student

23    prosecutor?

24          THE JUROR: Exactly.

1            THE COURT: Okay.

2            THE JUROR: Outside of that, I don't do any

3   trial work at all.

4            THE COURT OFFICER: Step this way, please.

5            THE COURT: The bar found him fit.

6            MR. DEAKIN: The Commonwealth would exercise

7   a peremptory challenge.

8            THE COURT OFFICER: Sir, step this way,

9   please.

10           THE CLERK: John Arancio.  He raised his

11   hand regarding the length of the case.

12           THE JUROR: Yes.

13           THE COURT: What's the problem with the

14   length of the case?

15           THE JUROR: April 27th, my wife and I have

16   paid for a vacation to the Caribbean for seven days.

17           THE COURT: We won't be finished by that

18   time.  You're excused.  Can I have your form?  You're

19   excused.

20           THE CLERK: Derek Fowler.  Raised his hand

21   regarding knows a witness, formed an opinion,

22   believes a police officer and length of the case.

23           THE COURT: What happens if you ever go to

24   court?

1      THE JUROR: I hope my peers, you know, do me

2   well.  But I'm a firefighter in Brighton, and I know

3   people who live in Fidelis Way where I believe this

4   case happened.  So I --

5      THE COURT: Why do you believe it happened

6   there?

7      THE JUROR: I'm familiar with the names.

8      THE COURT: All right.  You're excused.

9   Wait a minute.  Can I have your form?

10      THE CLERK: Eileen Floyd.

11      THE JUROR: Yes.

12      THE CLERK: You did not raise your hand to

13   any question.

14      THE COURT: May I have your form?

15      THE JUROR: Yes.

16      THE COURT: Relax, relax, relax.  We're not

17   going to bite you.

18      All right.  I need to ask you a couple of

19   questions here.  One is, have you or any family

20   member or close personal friend ever been accused of

21   a sexual assault?

22      THE JUROR: No.

23      THE COURT: Have you or any family member or

24   close personal friend ever been the victim of a

1       sexual assault?

2               THE JUROR: No.

3               THE COURT: Is there anything else about

4       this case that -- or is there anything about this

5       case that would make it difficult for you to be fair

6       and impartial and decide this case based solely on

7       the evidence presented in court?     .

8               THE JUROR: No.

9               THE COURT: All right.  And you said that

10      you had received training in criminal justice?

11              THE JUROR: Oh, I went to Suffolk

12      University.  I just had one class in law.  And I had

13      just saw the video.  I just put down "video."  I

14      didn't know if that counted.

15              THE COURT: What video?

16              THE JUROR: The recent video --

17              THE COURT: The one that you saw this

18      morning?

19              THE JUROR: Yeah.

20              THE COURT: All right.  And you said that

21      you have contact with children seven to nine, you

22      have nieces and nephews, also substitute teacher at

23      the Boston School Department.

24              Okay.  You want to step out for a second.

1          THE JUROR: Sure.

2          MR. SHEA: I just need a moment to check

3    with my client.

4          THE COURT: A moment.

5          MR. SHEA: I've been pretty quick.

6          (Counsel and defendant confer.)

7          MR. SHEA: We'll go with her.

8          THE COURT: Number 3.

9          THE COURT OFFICER: Take a seat right there,

10   please.

11         THE CLERK: Rebecca Boyer.  She didn't

12   respond to any questions.

13         THE COURT: All right.  May I see your form,

14   please?  I need to ask you a couple of questions.

15         Have you or any family member or close

16   personal friend ever been the victim of a sexual

17   assault?

18         THE JUROR: No.

19         THE COURT: Have you or any family member or

20   close personal friend ever been accused of a sexual

21   assault?

22         THE JUROR: No.

23         THE COURT: And no training in criminal

24   justice.  You have a BA in psychology with course

52

1        work and counseling.

2                Is there anything about this case that

3        would prevent you from being fair and impartial and

4        deciding this case based solely on the evidence

5        presented here in court?

6                THE JUROR:  No.

7                THE COURT:  All right.  So you're a child-

8        care worker at the Home for Little Wanderers?

9                THE JUROR:  Uh-huh.

10               THE COURT:  What do you do in that job?

11               THE JUROR:  I'm a counselor at a group home

12        for adolescent males, and every kid that's in the

13        program is in DSS custody.

14               THE COURT:  Okay.  All right.  Do you want

15        to step out for a second?

16               THE JUROR:  Sure.

17               THE COURT:  Commonwealth?

18               MR. DEAKIN:  Commonwealth's content.

19               THE COURT:  Defendant.

20               MR. SHEA:  I need a moment, but this one

21        will be quicker.

22               (Counsel and defendant confer.)

23               MR. SHEA:  We're content.

24               THE COURT:  So am I.  Now we've got four.

53

1              THE CLERK: Susan Campbell.

2              THE COURT: Did you answer yes to any of the

3  questions I asked?

4              THE JUROR: No.

5              THE COURT: Okay.  Can I have your form,

6  please?

7              Have you or any family member or close

8  personal friend ever been accused of a sexual

9  assault?

10             THE JUROR: No.

11             THE COURT: Have you or any family member or

12  close personal friend ever been the victim of a

13  sexual assault?

14             THE JUROR: No.

15             THE COURT: No training in criminal justice.

16              Is there anything about this case that

17  would make it difficult for you to be fair and

18  impartial and decide this case based solely on the

19  evidence presented here in court?

20             THE JUROR: Being that I have a nine-year-

21  old -- I mean a seven-year-old.

22             THE COURT: You have a seven-year-old.

23             THE JUROR: Daughter, yes.

24             THE COURT: Would that influence --

54

1           THE JUROR: Yes.

2           THE COURT: Pardon me?

3           THE JUROR: On one of the questions being

4     that it wasn't your own child, I put -- I answered

5     no.

6           THE COURT: But that was -- all right.  So

7     you answered no, that you could not be fair and

8     impartial.

9           Okay.  You're excused.

10          THE COURT OFFICER: Step this way, please.

11          MR. DEAKIN: The next one, your Honor, there

12    may be an issue for cause; on 2-14, I think it is.

13          THE COURT OFFICER: 2-14.

14          THE CLERK: Believes a police officer and

15    length of the case.

16          THE COURT: 2-14.  You answered that you

17    would believe or disbelieve a police officer solely

18    because they are a police officer?

19          THE JUROR: What?

20          THE COURT: I asked the question out there,

21    I asked you that some of the witnesses in the case

22    would be police officers --

23          THE JUROR: Uh-huh.

24          THE COURT:  And I asked would you believe

1    or disbelieve a police officer solely because they

2    are a police officer.

3                  THE JUROR: Oh.  Oh, that's what you said?

4                  THE COURT: Yeah.

5                  THE JUROR: Oh.  Well, in some incident -- I

6    don't believe in some incident.

7                  THE COURT: Well, I mean --

8                  THE JUROR: No.  But I don't --

9                  THE COURT: No, no, no.  That's not the

10   question.  The question is, is it just because

11   they're police officers --

12                 THE JUROR: No, no.

13                 THE COURT: Would you believe them or

14   disbelieve them just because they're a police

15   officer?

16                 THE JUROR: No.  No.

17                 THE COURT: All right.  Okay.

18                 And you answered that length of the case

19   was a problem for you.

20                 THE JUROR: It is.

21                 THE COURT: What's the problem?

22                 THE JUROR: My mother-in-law.  Her leg's

23   been amputated.  She don't have one.  And we have to

24   take turns to take care of her, my mother-in-law.

1                  THE COURT: Who's "we"?

2                  THE JUROR: Well, she got daughters and

3  stuff like that.  And, like, we just take turns.

4                  THE COURT: Can I have your form, please?

5                  THE JUROR: Oh, okay.

6                  THE COURT: You take turns.  And --

7                  THE JUROR: And then I have an aunt, so I

8  try to whatever.

9                  THE COURT: Well, you answered that you

10  could not be fair and impartial in this case.

11                  THE JUROR: I never been -- I don't know.

12  If you -- I don't know.

13                  THE COURT: All right.  You're excused.

14                  THE COURT OFFICER: Step this way, please.

15                  2-16.

16                  THE CLERK: Jeffrey Work.  Mr. Work raised

17  his hand on length of the case.

18                  THE COURT: Pardon me?

19                  THE CLERK: Length of the case.

20                  THE COURT: What's the problem with the

21  length of the case?

22                  THE JUROR: My brother is getting married in

23  Virginia on the 4th, the Saturday that follows the

24  possible end of the trial.  And I have to drive to

57

1     Virginia and drive my 75-year-old mother to the

2     ceremony and to the rehearsal.

3            THE COURT: When do you have to be in

4     Virginia?

5            THE JUROR: Thursday.  I told her Wednesday,

6     probably Thursday.

7            THE COURT: Let me have your form.

8            THE JUROR: The questionnaire, or...?

9            THE COURT: Yes.  All right. You're excused.

10           THE JUROR: Thank you, your Honor.

11           THE COURT OFFICER: 3-2.

12           THE CLERK: Ivan Bermejo.

13           THE JUROR: Bermejo.

14           THE CLERK: Mr. Bermejo raised his hand he

15     knows the witnesses, formed an opinion, employed by

16     the police, would believe a police officer.

17           THE JUROR: You're excused.

18           THE CLERK: 3-3.  Jennifer Hall.  Answered

19     the question regarding physical disability and length

20     of the case.

21           THE COURT: What's the problem with the

22     length of the case?

23           THE JUROR: Excuse me?

24           THE COURT: The length of the case?  You

58

1          indicated that you had a problem with the length of

2          the case?

3                    THE JUROR: Oh, yeah.  I expected to be able

4          to do this today, but that length.  I'm in physical

5          therapy, I've got three doctor's appointments next

6          week, and I'm actually in a lot more pain today than

7          I expected to be.

8                    THE COURT: All right.  You're excused.

9                    THE COURT OFFICER: Follow me, please.

10                   THE JUROR: All right.

11                   THE COURT: Leave your form.

12                   THE CLERK: Elaine Pert.  Did not respond to

13         any questions.

14                   THE COURT: All right.  May I have your

15         form, please?

16                   I need to ask you a couple of questions

17         here.

18                   THE JUROR: Sure.

19                   THE COURT: Have you or any family member or

20         close personal friend ever been accused of a sexual

21         assault?

22                   THE JUROR: Friend.

23                   THE COURT: Close friend?

24                   THE JUROR: Yes.

1        THE COURT: Would that affect your ability

2   to be fair and impartial and decide this case based

3   solely on the evidence presented here in court?

4        THE JUROR: No.

5        THE COURT: Have you or any family member or

6   close personal friend ever been the victim of a

7   sexual assault?

8        THE JUROR: No.

9        THE COURT: Okay.  Is there anything about

10  this case that would affect your ability to be fair

11  and impartial and decide this case based solely on

12  the evidence presented in court?

13       THE JUROR: No.

14       THE COURT: All right.  You want to step

15  back outside for a second.

16       THE COURT: Defendant.

17       MR. SHEA: I'm a little confused by the form

18  because, in response to your questions she says no

19  family member, but on the form --

20       THE COURT: She says what?

21       MR. SHEA: When you asked her if any family

22  member had been accused -- had been the victim, I'm

23  sorry -- she said no.  But on the form, she crossed

24  out no and put yes.

60

1                  THE COURT: All right.  Just bring her back

2    in.

3                  I just need to ask you a question.  On your

4    form you said that -- we asked the question, Without

5    mentioning any names, have you or any close family

6    member or very close friend ever been a victim of a

7    sexual assault?

8                  You answered yes.

9                  THE JUROR: Yes.  This was a long time ago.

10                 THE COURT: But when I asked you that here,

11    you said no.

12                 So, let me ask you these two questions

13    again.

14                 THE JUROR: Okay.

15                 THE COURT: Have you or any family member or

16    close personal friend ever been the victim of a

17    sexual assault?

18                 THE JUROR: Yes.

19                 THE COURT: Have you or any close family --

20    any family member or close personal friend ever been

21    accused of a sexual assault?

22                 THE JUROR: No.

23                 THE COURT: All right.  So, it's that

24    someone that you know has been abused.

1          THE JUROR: Right.

2          THE COURT: But you don't know anyone who's

3  ever been accused.

4          THE JUROR: No.

5          THE COURT: Okay.  Would that affect your

6  ability to be fair and impartial and decide this case

7  based --

8          THE JUROR: No.  No.

9          THE COURT: Do you want to step back out for

10  a second.

11          It's the other way around.

12          MR. SHEA: An important distinction.

13          THE COURT: Commonwealth?

14          MR. DEAKIN: Commonwealth's content.

15          MR. SHEA: We're using a peremptory.

16          MR. DEAKIN: That was 3-5?

17          THE CLERK: Yes.

18          Charles Chu.  Mr. Chu didn't respond to any

19  questions.

20          You didn't respond to any of the Court's

21  questions.

22          THE JUROR: I didn't.

23          THE COURT: May I see your form, please?

24          Have you or any family member or close

62

1       personal friend ever been accused of a sexual

2       assault?

3                  THE JUROR: No.

4                  THE COURT: Have you or any family member or

5       close personal friend ever been the victim of a

6       sexual assault?

7                  THE JUROR: No.

8                  THE COURT: All right.  Is there anything

9       about the case that would make it difficult for you

10      to be fair and impartial and decide this case based

11      solely on the evidence presented here in court?

12                 THE JUROR: No.

13                 THE COURT: All right.  You indicate on your

14      form that your job will start --

15                 THE JUROR: April 22nd.   I have a new job

16      in Pennsylvania, next week.

17                 THE COURT: All right.  So you're going to

18      Pennsylvania next week?

19                 THE JUROR: Yeah.

20                 THE COURT: Well, if you're selected for

21      this jury, how are you going to go to Pennsylvania?

22      Are you moving?

23                 THE JUROR: I move out maybe the day after

24      tomorrow.

63

1          THE COURT: All right.  You're excused.

2          THE COURT OFFICER: Step this way, sir.

3          THE CLERK: Leslie Whalen.

4          THE JUROR: Yes, sir.  Mr. Whalen did not

5     respond to any questions.

6          THE COURT: Have you or any family member or

7     close personal friend ever been the victim of a

8     sexual assault?

9          THE JUROR: No, sir.

10          THE COURT: Have you or any family member or

11     close personal friend ever been accused of a sexual

12     assault?

13          THE JUROR: No, sir.

14          THE COURT: Is there anything about this

15     case that would make it difficult for you to be fair

16     -- you said you could not be fair and impartial.

17          THE JUROR: No, I couldn't.

18          THE COURT: Fine.  You're excused.

19          THE COURT OFFICER: This way, sir.

20          THE COURT: May I have your form, please,

21     sir?

22          THE CLERK: Patrick Houlihan.  Length of the

23     case.

24          THE COURT: May I have your form?

64

1          All right.  What's the problem with the

2     length of the case?

3          THE JUROR: My last day; I'm a senior at

4     Boston College.  My last day of classes is on April

5     29th, and my exam week begins the following day.  And

6     they're my last exams before I graduate.  So if I

7     miss any of them -- I don't live in Mass. either, so

8     I wouldn't be around the state to, like, make them up

9     or anything.

10          THE COURT: Pardon me?

11          THE JUROR: I don't live in Massachusetts.

12     So I'm leaving, like, right after I finish exams and

13     graduate.

14          THE COURT: All right.  You're excused.

15          THE COURT OFFICER: Follow me, please, sir.

16          THE CLERK: Sara Burque.

17          THE JUROR: Yes.

18          THE COURT: May I have your form?

19          THE CLERK: Raised her hand, formed an

20     opinion, believes a police officer, length of the

21     case.

22          THE COURT: So you've already formed an

23     opinion?

24          THE JUROR: Yeah.

1          THE COURT: And you would believe a police

2  officer because they are a police officer?

3          THE JUROR: What was that?

4          THE COURT: You would believe a police

5  officer simply because they are a police officer?

6          THE JUROR: Well, yeah, kind of.

7          THE COURT: Kind of.  All right.  You're

8  excused.

9          THE COURT OFFICER: Step this way, please.

10        THE CLERK: Marissa.  Formed an opinion and

11  length of the case.  I can't pronounce your last

12  name.

13        THE JUROR: Iliscupidez.

14        THE CLERK: Okay.

15        THE COURT: He's not even going to try.

16        You've already formed an opinion about this

17  case?

18        THE JUROR: I don't know.  When you guys

19  were, like, it happened July 15th, I was picturing in

20  my head, and I was just, like, oh.

21        THE COURT: So you couldn't be fair and

22  impartial and decide this case based solely on the

23  evidence presented here in court?

24        THE JUROR: I just keep thinking in my head

1        how disgusting.  No offense to the lawyers, but....

2                        THE COURT: You're excused.

3                        THE COURT OFFICER: Follow me, please.

4                        THE JUROR: Sorry.

5                        THE COURT: May I have your form, please.

6                        Tony, as they come in, take the form from

7        them.

8                        THE COURT OFFICER: Okay.

9                        THE CLERK: Raquel Johnson.

10                       THE JUROR: Yes.

11                       THE CLERK: Ms. Johnson raised her hand --

12                       THE COURT: You answered on the form that

13       you could not be fair in this case.

14                       THE JUROR: Yes.

15                       THE COURT: On your form, you answered that

16       -- the question says, "Could you be a fair person in

17       a case where a person is charged with kidnapping and

18       sexually assaulting a child?" and you answered no.

19                       THE JUROR: I was confused on that question.

20                       THE COURT: So, could you be fair?

21                       THE JUROR: What was the -- I'm getting

22       confused on that question.  And they say don't

23       discuss about that, on the second floor.  What does

24       it mean?  If the person do something --

 1                    THE COURT: Well, he's accused of something.

 2                    THE JUROR: Yes.

 3                    THE COURT: Can you be fair and decide it

 4         based solely on the evidence presented in court, or

 5         would something else affect your ability to do that?

 6                    THE JUROR: Yes.  Something, yeah.

 7                    THE COURT: What would affect it?

 8                    THE JUROR: I see a case like this, and

 9         these guys, the guy was Spanish and he don't

10         understand English --

11                    THE COURT: Right.

12                    THE JUROR: They accused him in raping a

13         girl, and they give him five years.  And he going to

14         be deported.  And he was innocent.  Just because he

15         don't understand English, and he was Spanish, they

16         accuse him to do that.

17                    THE COURT: Well, I understand that, but

18         would that affect your ability to be fair in this

19         case?

20                    THE JUROR: Yeah.

21                    THE COURT: All right.  You're excused.

22                    THE COURT OFFICER: This way, ma'am.  Follow

23         me.

24                    THE CLERK: Tracey Wells.  Length of the

1     case --

2               THE COURT: What's the problem with the

3     length of the case, Ms. Wells?  What's the problem

4     with the length of the case?

5               THE JUROR: I have a daughter, sick

6     daughter, who's two years old.  I have to bring her

7     to the hospital.

8               THE COURT: When?

9               THE JUROR: The 26th.  Next week.

10              THE COURT: When's the 26th?

11              THE CLERK: Next Friday or something like

12    that.

13              THE COURT: It's this Friday.  Tomorrow's

14    Friday.  What time on the 26th?

15              THE JUROR: Ten a.m.  Ten in the morning.

16              THE COURT: You can't change that

17    appointment?

18              THE JUROR: No.  It's with a specialist.  I

19    already changed it once.

20              THE COURT: Excused.

21              THE COURT OFFICER: Okay.  Follow me,

22    please.

23              THE COURT: This is 3-16.

24              THE CLERK: Cassandra Celestin.

69

1          THE JUROR: Yes.

2          THE CLERK: Formed an opinion and length of

3     the case.

4          THE COURT: You've already formed an opinion

5     about this case?

6          THE JUROR: Yeah.  Kind of, yeah.

7          THE COURT: Pardon me?

8          THE JUROR: Yeah.

9          THE COURT: What's your opinion?

10         THE JUROR: I don't -- like, everything you

11    mentioned, like, how he, like, raped the girl, it

12    just keeps coming into my head that he did it.

13         THE COURT: I mean, he's accused of it.

14    That doesn't mean he did it.

15         THE JUROR: Yeah, I know that.  But....

16         THE COURT: Pardon me?

17         THE JUROR: I know he hasn't been proven

18    that he did it, but, still, I still formed an

19    opinion.

20         THE COURT:  All right.  You're excused.

21         THE COURT OFFICER: Follow me, please.

22         Your juror questionnaire, please.  Just

23    have a seat right there, please.

24         THE CLERK: Monica Shah.

1        THE JUROR: Yes.

2        THE CLERK: Problem with the length of the

3   case.

4        THE COURT: What's the problem with the

5   length of the case?

6        THE JUROR: Okay.  I'm a master's physical

7   therapy student, and I'm supposed to graduate in

8   three weeks.  So I have finals starting this coming

9   Monday.  And they don't end until May 7th.

10        THE COURT: All right.  You're excused.

11        THE COURT OFFICER: Follow me, please.

12        THE CLERK: 4-3, Joan Gallagher.  Formed an

13   opinion.

14        THE COURT: You've already formed an opinion

15   about --

16        THE JUROR: No.  No, sir.

17        THE CLERK: I have her raising her hand.

18        THE JUROR: No.  I never did, for anything.

19        THE COURT: Pardon me?  So, have you formed

20   an opinion about this case?

21        THE JUROR: No.

22        THE COURT: All right.  Is there -- all

23   right.  Have you or any family member or close

24   personal friend ever been the victim of a sexual

1      assault?

2              THE JUROR: No, sir.

3              THE COURT: Have you or any family member or

4      close personal friend ever been accused of sexual

5      assault?

6              THE JUROR: No, sir.

7              THE COURT: Is there anything about this

8      case that would make it difficult for you to be fair

9      and impartial and decide this case based solely on

10     the evidence presented here in court?

11             THE JUROR: No, sir.

12             THE COURT: All right.  You want to step

13     outside for a second.

14             THE COURT: Defense?

15             MR. SHEA: Would it be possible to inquire

16     about her prior jury service, sometime in '98?

17             THE COURT: No.  Why would I want to know

18     about that?

19             MR. SHEA: Well, it's possible -- in my

20     experience, juries that have found defendant's not

21     guilty have gone, had judges go back and tell them

22     about their lengthy criminal histories.  Not your

23     Honor, but....

24             THE COURT: No.  I'm not going to -- if you

72

 1          want to challenger her, challenger her.  If not,

 2          don't.

 3                    MR. SHEA: We'll challenge her.

 4                    THE COURT: All right.

 5                    THE CLERK: Victoria Dodd.

 6                    THE JUROR: Yes.

 7                    THE CLERK: Ms. Dodd, you didn't respond to

 8          any questions.

 9                    THE JUROR: No.

10                    THE COURT: May I have your form, please?

11                    THE COURT OFFICER: Sorry about that.

12                    THE COURT: Have you or any family member or

13          close personal friend ever been the victim of a

14          sexual assault?

15                    THE JUROR: Yes.

16                    THE COURT: Have you or any family member or

17          close personal friend ever been accused of a sexual

18          assault?

19                    THE JUROR: No.

20                    THE COURT: The close personal friend or

21          family member that's been a victim, is it a family

22          member?  Friend?

23                    THE JUROR: No.  It's I.  I'm the victim.

24                    THE COURT: Oh.  All right.  Would that

73

1          affect your ability to be fair and impartial and

2          decide this case based solely on the evidence

3          presented here in court?

4                    THE JUROR: No.

5                    THE COURT: Fine.  So you teach --

6                    Is there anything about this case that

7          would make it difficult for you to be fair and

8          impartial and decide this case based solely on the

9          evidence presented in court?

10                    THE JUROR: No.

11                    THE COURT: You want to step outside for a

12         second.

13                    THE COURT OFFICER: Please step this way,

14         ma'am.

15                    THE COURT: She had it on her form --

16                    MR. SHEA: Her saying that it doesn't affect

17         her, I have a hard time believing that being the

18         victim of a rape does not affect a person's ability

19         to be fair and impartial at a jury trial.  And it

20         seems wrong for me to have to use up a peremptory on

21         someone who has been a victim of rape.

22                    THE COURT: Well --

23                    MR. SHEA: My belief here, and I don't know

24         the woman, but I mean, as you know, every lawyer or

74

1          law professor is dying to get on the jury.

2                    THE COURT: Are they?

3                    MR. SHEA: Yeah.

4                    THE COURT: Can you go summons them all here

5          today.

6                    Bring her back in for a second.

7                    THE COURT OFFICER: Ma'am, will you step

8          back in, please.

9                    THE COURT: I need to ask you a couple of

10         questions.  You indicated that you were the victim in

11         a rape case --

12                   THE JUROR: Yes.

13                   THE COURT:  -- in the seventies,

14         *Commonwealth v. Clifton Lumly* (phonetic).

15                   THE JUROR: Yes.

16                   THE COURT: Now, are you sure that wouldn't

17         affect your ability to be fair and impartial in this

18         case?

19                   THE JUROR: Yes, I am sure it would not

20         affect my ability to be impartial in this case.

21                   THE COURT: How can you be so sure?

22                   THE JUROR: Because I'm a trained

23         professional and I've had to teach, you know, rape

24         issues in criminal law; I teach constitutional law

1    where the students have a lot of opinions, and I'm

2    just trained to be very neutral and to evaluate

3    things.  I mean, I am capable of doing that because

4    that's very much what law professors do is that

5    piercing neutrality.  I'm not -- although I have

6    practiced law, civil litigation in California, you

7    know, I don't see my role in life to be an advocate.

8            THE COURT: All right.  You want to step

9    out, please.

10           I'm not going to excuse her for cause.

11           THE CLERK: Commonwealth?

12           MR. DEAKIN: For what it's worth, your

13   Honor, I would -- well, Commonwealth would use a

14   peremptory challenge.

15           THE COURT: Excuse her.

16           THE CLERK: 4-5, Katherine Bouteiller.

17   Length of the case.

18           THE COURT: What's the problem with the

19   length of the case?

20           THE JUROR: I have school.  I've already

21   missed a few classes because my grandfather passed

22   away, and I can't miss anymore.  Finals are coming up

23   in June, and I can't see that it would be possible

24   for me to keep up with my workload and miss class.

1          THE COURT: Where do you go to school?

2          THE JUROR: Northeastern.

3          THE COURT: I can't excuse you because of

4     school.  They have to allow you the time to make it

5     up, if you're on jury duty.  If you have any problems

6     with them, let the court officer know and he'll bring

7     it to my attention, and I'll deal with the school.

8          THE JUROR: Okay.

9          THE COURT: Okay.  Now, I need to ask you

10    these questions.  Have you or any family member or

11    close personal friend ever been accused of a sexual

12    assault?

13         THE JUROR: No.

14         THE COURT: Have you or any family member or

15    close personal friend ever been the victim of a

16    sexual assault?

17         THE JUROR: No.

18         THE COURT: Is there anything about this

19    case that would prevent you from being fair and

20    impartial and deciding this case based solely on the

21    evidence presented in court?

22         THE JUROR: No.

23         THE COURT: All right.  You want to step

24    outside for a second.

77

1              MR. DEAKIN: If I may have a moment, your

2        Honor.

3              I would use a peremptory challenge.

4              THE CLERK: 4-7, he raised his hand

5        regarding physical problems and length of the case.

6              THE JUROR: Well, I have ADHD.  Who am I

7        speaking to?

8              THE COURT: Me.

9              THE JUROR: Sorry.  It's nothing physical,

10       really, I just have a very short attention span.

11             THE COURT: That's all right.  Can I have

12       your form, please?

13             THE JUROR: Sure.

14             THE COURT: You indicated you had a problem

15       with the length of the case?

16             THE JUROR: I'm sorry?

17             THE COURT: You have a problem with the

18       length of the case?

19             THE JUROR: Yes.  It's the end of my school

20       year and I have numerous -- basically everything

21       that's coming to a head in the next couple of weeks.

22       And I'd also be leaving on May 3rd, a date which you

23       estimated that the trial is estimated to end.

24             THE COURT: When you say "leaving," where

1        are you going?

2               THE JUROR: I'm going home.  I don't live

3        here.

4               THE COURT: So you don't think you could be

5        fair and impartial in this case?

6               THE JUROR: I'm sorry?

7               THE COURT: You don't think you could be

8        fair and impartial in this case?

9               THE JUROR: I would like to believe that I

10        can, and that I do believe in the law, but in a case

11        like this, it makes me wonder if any preconceived

12        notion or any, I guess, judgment, might bother me or

13        sway me.

14               THE COURT: All right.  You're excused.

15               THE COURT OFFICER: Follow me, sir.

16               THE CLERK: 4-8.  Katie Schmaling.  Didn't

17        raise her hand.  You didn't raise your hand to any

18        questions.

19               THE JUROR: No.

20               THE COURT: May I have your form, please?

21               THE JUROR: But I am a student.  So....

22               THE COURT: We take students.  Business

23        major.  Where?

24               THE JUROR: Northeastern.

1          THE COURT: Would that affect your ability

2    to be fair and impartial and decide this case based

3    solely on the evidence you hear in court?

4          THE JUROR: No.

5          THE COURT: Have you or any family member or

6    close personal friend ever been accused of a sexual

7    assault?

8          THE JUROR: No.

9          THE COURT: Have you or any family member or

10    close personal friend ever been the victim of a

11    sexual assault?

12          THE JUROR: No.

13          THE COURT: Is there anything about this

14    case that would prevent you from being fair and

15    impartial and deciding this case based solely on the

16    evidence presented in court?

17          THE JUROR: No.

18          THE COURT: All right.  So what year are you

19    in?

20          THE JUROR: I'm a freshman.

21          THE COURT: Freshman.  All right.  You can

22    step out for a second.

23          MR. DEAKIN: Commonwealth's content.

24          THE COURT: Defendant.

80

1     MR. SHEA: I need a moment with my client.

2     (Counsel and defendant confer.)

3     MR. SHEA: We'll use a peremptory.

4     THE COURT: Pardon me?

5     MR. SHEA: Strike her.

6     THE COURT: You've got to speak up.  I can't

7 hear you.

8     THE COURT OFFICER: 4-9.

9     THE CLERK: 4-9, Kristin Sullivan.  Ms.

10 Sullivan didn't respond to anything.

11     THE COURT: May I see your form, please?

12     Have you or any family member or close

13 personal friend ever been the victim of a sexual

14 assault?

15     THE JUROR: No.

16     THE COURT: Have you or any family member or

17 close personal friend ever been accused of a sexual

18 assault?

19     THE JUROR: No.

20     THE COURT: Is there anything about this

21 case that would prevent you from being fair and

22 impartial and deciding this case based solely on the

23 evidence presented in court?

24     THE JUROR: No.

1          THE COURT: All right.  Step outside.

2          She has a background of finance.

3          MR. DEAKIN: Commonwealth's content.

4          MR. SHEA: I have to talk to my client.

5          (Counsel and defendant confer.)

6          MR. SHEA: I apologize.

7          THE COURT: Look, if it's going to take this

8    long, we can do it at side bar.  We can't continue

9    like this.

10          MR. SHEA: Well, on this one, as I walked

11   away, he shook his head and I don't know what he

12   meant by that.  So I do need to go back and find out

13   exactly what he meant.

14          THE COURT: Well, why don't we do this: Why

15   don't we just take a break.  Why don't you set back

16   up at the side bar, and we'll do this at side bar.

17          MR. SHEA: Well, Judge, this is the only one

18   that's taken particularly long.

19          THE COURT: They all take a long time.  It's

20   twenty minutes of one, as it is.  We've only got an

21   hour this afternoon.

22          MR. SHEA: I'd ask that we stay in here

23   because I think people have been more forthcoming.

24   I'm willing to -- I'll try and be quick --

1        THE COURT: I can't have you shuttling back

2    and forth and spending, you know, five and ten

3    minutes out there talking to this guy.

4        MR. SHEA: Usually, that hasn't been the

5    case.  On this particular one it took a little time.

6    Over lunch I can go over with my client with some of

7    the forms ahead of time, so that will speed the

8    process up.

9        THE COURT: All right.  Find out what he

10    wants to do on this one, but I'm telling you, after

11    lunch, we're not doing this.

12        MR. SHEA: We'll use a peremptory.

13        MR. DEAKIN: That's number seven.

14        THE CLERK: Number seven.  What happens when

15    you run out, you won't have to go out there anymore.

16        THE CLERK: Katherine Ellis.  She has a

17    problem with the length of the case.

18        THE COURT: What's the number?

19        THE CLERK: 4-10.

20        THE COURT OFFICER: 4-10.

21        THE COURT: What's your problem with the

22    length of the case?

23        THE JUROR: Well, I just am in school.

24        THE COURT: And...?

1          THE JUROR: So, I'd have to miss however

2     much time of school.

3          THE COURT: I can't excuse you because

4     you're in school.

5          THE JUROR: All right.  That's fine, then.

6     That was just my only problem.

7          THE COURT: All right.  Have you or any

8     family member or close personal friend ever been

9     accused of a sexual assault?

10          THE JUROR: Uh-uh.

11          THE COURT: Okay.  Have you or any family

12     member or close personal friend ever been the victim

13     of a sexual assault?

14          THE JUROR: No.

15          THE COURT: What are you studying at

16     Northeastern?

17          THE JUROR: Right now, I'm in human

18     services.  I was in criminal justice, but I just

19     switched.

20          THE COURT: Is there anything about this

21     case that would affect your ability to be fair and

22     impartial and decide this case based solely on the

23     evidence presented in court?

24          THE JUROR: No.

1          THE COURT: You want to step outside for a

2     second.

3          THE COURT OFFICER: Follow me, please.

4          THE CLERK: I have her for forming an

5     opinion.

6          THE COURT: You do?

7          THE CLERK: Yeah.

8          MR. DEAKIN: 4-10 or 4-11?

9          THE COURT OFFICER: 4-10.

10         MR. DEAKIN: This is 4-10.

11         THE COURT OFFICER: This is 4-10.

12         THE COURT: Bring her back in.

13         When we questioned you -- asked the

14    questions outside, you responded that you had formed

15    an opinion about this case?

16         THE JUROR: No.  The first one, I answered.

17    You know how you said two right in a row, one of them

18    -- I don't know.  The only one I raised my hand for

19    was for the school thing.  That was the only thing.

20         THE COURT: So you haven't formed an

21    opinion?

22         THE JUROR: No.

23         THE COURT: All right.

24         THE COURT OFFICER: Please step this way.

1       MR. SHEA: On the form she crossed out "No,"

2   and put "Yes."  I'd ask you to inquire as to....

3       THE COURT: It may have to do with the way

4   you wrote the question.

5       MR. SHEA: That's possible.

6       THE COURT: She's answered the question.

7   Commonwealth.

8       MR. DEAKIN: Commonwealth's content.

9       THE COURT: Defendant.

10      MR. SHEA: I have to go back out there.

11  We'll see how quick I can be.

12          (Counsel and defendant confer.)

13      MR. SHEA: Given the significant, the female

14  makeup of the venire up to now, would the Court

15  consider giving me additional peremptories?

16      THE COURT: No.

17      MR. SHEA: We will be content on this one.

18      THE CLERK: 4-11, Melissa Longo.

19      THE COURT: Did you answer yes to any of my

20  questions outside?

21      THE JUROR: No.

22      THE COURT: All right.  May I have your

23  form, please?

24          Have you or any family member or close

1       personal friend ever been the victim of a sexual

2       assault?

3               THE JUROR: No.

4               THE COURT: Have you or any family member or

5       close personal friend ever been accused of a sexual

6       assault?

7               THE JUROR: No.

8               THE COURT: Is there anything about this

9       case that would affect your ability to be fair and

10      impartial and decide this case based solely on the

11      evidence presented here in court?

12              THE JUROR: No.

13              THE COURT: You want to step outside for a

14      second?

15              Commonwealth.

16              MR. DEAKIN: Commonwealth's content.

17              THE COURT: Defendant.

18              MR. SHEA: We'll be striking her.

19              THE COURT OFFICER: I'm sorry?  What was

20      that?

21              MR. SHEA: We'll be striking her.

22              THE COURT OFFICER: What do you mean?  Do

23      you want her, or you don't want her?

24              MR. SHEA: I don't want her.

1          THE COURT: Challenge.

2          THE COURT OFFICER: 4-12.  Take a seat right

3     there.

4          THE COURT: Do you have your form?

5          THE JUROR: Yes.

6          THE CLERK: She didn't raise her hand to any

7     question.

8          THE COURT: I have to ask you a couple of

9     questions.

10         THE JUROR: Sure.

11         THE COURT: Have you or any family member or

12    close personal friend ever been accused of a sexual

13    assault?

14         THE JUROR: No, sir.

15         THE COURT: Have you or any family member or

16    close personal friend ever been the victim of a

17    sexual assault?

18         THE JUROR: No.

19         THE COURT: Pardon me?

20         THE JUROR: No.  Nothing that I would

21    consider a sexual assault.  I was a very mature-

22    looking child, so....  But it wasn't criminally

23    intended.

24         THE COURT: What do you mean "it wasn't

1     criminally intended"?

2              THE JUROR: Someone mistook me for someone

3     older, and kissed me when I was probably, like, 13,

4     or 12, or something like that.

5              One thing, actually.  I didn't raise my

6     hand when you were asking about the time frame.  And

7     I should actually say I'm eight months pregnant and I

8     have gestational diabetes.  And, so, the baby might

9     come early.  And so I just wanted to say that because

10    I would hate if -- I didn't know if it would be a

11    problem if I had to leave early.  And I do have to

12    eat a couple of times during the day.

13             So I don't know if that's a problem.  I

14    just wanted to --

15             THE COURT: Is there anything about this

16    case that would prevent you from being fair and

17    impartial and deciding this case based solely on the

18    evidence presented in court?

19             THE JUROR: No, sir.

20             THE COURT: All right.  Do you want to step

21    outside for a second.

22             THE JUROR: Certainly.

23             MR. SHEA: The fact that she's eight months'

24    pregnant, going at least --

1          THE COURT: First of all, Commonwealth.

2          MR. DEAKIN: Commonwealth's content.

3          THE COURT: Defendant.

4          MR. DEAKIN: I should not, the

5  Commonwealth's content.  I share some of his concerns

6  about the pregnancy.

7          THE COURT: That's why I'm going to impanel

8  16.

9          MR. DEAKIN: No.  I understand.  I'm content

10  with her.  I don't think there's a for-cause

11  challenge.

12          MR. SHEA: The experts coming the third.

13  Let's say we have closings the same day.  Then the

14  jury really goes out on the sixth.  That puts us

15  almost three weeks out.  She's eight months pregnant

16  and is telling us she might have the child early.

17          I'd ask you to consider letting her go.

18  The other thing is --

19          THE COURT: No.  I'm not going to let her

20  go.  It's up to you.

21          MR. SHEA: Pregnant lady with a Talbot's

22  Kids bag.

23          THE COURT: Do you want to go talk to your

24  client?

1              MR. SHEA: Yes.

2              (Counsel and defendant confer.)

3              MR. SHEA: We'll leave her on and hope for

4      an early birth.

5              THE COURT: Pardon me?

6              MR. SHEA: Leave her on.

7              THE COURT OFFICER: Panel 4, Seat 13.

8              THE CLERK: William Finnerty.

9              THE JUROR: Finnerty.

10             THE CLERK: Thank you.

11             THE COURT OFFICER: Can I get that juror

12     questionnaire, please.

13             THE CLERK: Formed an opinion.

14             THE COURT: You indicated that you already

15     formed an opinion about this case?

16             THE JUROR: I'm sorry?

17             THE COURT: You indicated that you already

18     formed an opinion about this case?

19             THE JUROR: Yes.  Just 'cause it's --

20             THE COURT: All right.  You're excused.

21             THE JUROR:  -- a young child, and recent

22     news.

23             THE COURT OFFICER: Step this way, sir.

24             THE JUROR: Thanks.

1           THE CLERK: 4-14, Andrea Jean.  Juror has

2    formed an opinion.

3           THE COURT: You already formed an opinion

4    about this case?

5           May I have the form, please.

6           THE JUROR: Yeah.  I mean, I just couldn't

7    help but think that -- my immediate feeling is that

8    it was just disgusting, what the case was all about.

9           THE COURT: Well, that's -- that may well be

10    in terms of what the charges are, but can you be fair

11    and impartial and decide the case based solely on the

12    evidence?

13           THE JUROR: Yeah.  I mean, I think I would

14    be capable of that.

15           THE COURT: Well, that's what you're -- I

16    mean, you answered that here.

17           THE JUROR: Yeah.

18           THE COURT: Could you -- the question was,

19    "Under our system of justice, the accused in a

20    criminal case is entitled to a fair trial before an

21    impartial judge and jury.  Could you be a fair person

22    in a case where a person is charged with kidnapping

23    and sexually assaulting a child?"

24           THE JUROR: Yeah.

92

1        THE COURT: I mean, beyond the fact that you

2    think it's disgusting if someone did it, but you have

3    to get to the point of deciding whether or not the

4    charge is true.

5        Can you be fair and impartial during that

6    process?

7        THE JUROR: Yes.

8        THE COURT: Have you or anyone in your

9    family or close personal friends ever been accused of

10   a sexual assault?

11       THE JUROR: No.

12       THE COURT: Have you or anyone in your

13   family or close personal friends ever been the victim

14   of a sexual assault?

15       THE JUROR: No.

16       THE COURT: And you say you have contact

17   with children seven to nine.  You have nieces; is

18   that it?

19       THE JUROR: Yeah.

20       THE COURT: How old are they?

21       THE JUROR: There's one that's nine, one

22   that's ten.

23       THE COURT: Would that affect your ability

24   to be fair and impartial and decide this case based

1    solely on the evidence presented here in court?

2        THE JUROR: I don't think so.

3        THE COURT: All right.  You want to step

4    outside for a second.

5        THE COURT OFFICER: Follow me, please.

6        THE COURT: Commonwealth.

7        MR. DEAKIN: Commonwealth's content.

8        THE COURT: Defendant.

9        MR. SHEA: Well, just that she began to form

10   an opinion makes me uncomfortable.  Her initial

11   reaction.

12       THE COURT: Well, she answered yes to the

13   question formed an opinion because she had a visceral

14   reaction to the charges.  And that, I mean, everybody

15   that's got any sense is going to have a reaction to

16   charges.  And that's the reason why I asked her about

17   the question that you wrote on your questionnaire.

18   Her response to it was that she could be fair.  And

19   that's why I wanted to understand the difference

20   between having a reaction to the charges and whether

21   or not she could be fair in the process of deciding

22   whether or not he's guilty or not.  And she said she

23   could.

24       So that's up to you.

1          MR. SHEA: I'll have to consult with my

2     client.

3          (Counsel and defendant confer.)

4          MR. SHEA: We'll challenge.

5          THE COURT: What we're going to do is we're

6     going to break at this time.

7          THE COURT OFFICER: Okay.

8          THE COURT: Let her go, then come back, and

9     we'll figure out how we're going to do this.

10         We're going to take a break until 1:30.

11         THE COURT OFFICER: All right.

12                    (Recess)

13         THE COURT: Have you gone over these with

14    your client, in terms of the questionnaires?

15         MR. SHEA: I have.

16         THE COURT: Has he told you what's

17    acceptable to him?

18         MR. SHEA: We've worked some things out.  I

19    pointed out some things we need to work on.  I've

20    told him also that the two chairs outside the door,

21    the people who are coming into the room so he can

22    look at them and get a feel for them.

23         THE COURT: All right.  Let's go.

24         Do you have the form?

1          THE CLERK: Length of the case.

2          THE COURT: What's the problem with the

3    length of the case for you?

4          THE JUROR: I'm a student, and my finals are

5    coming up, and, like, my last week of classes.

6          THE COURT: Your what?

7          THE JUROR: My last week of classes.  And I

8    already missed three weeks of classes this semester.

9    So I can't afford to --

10         THE COURT: All right.  You're excused.

11         THE COURT OFFICER: Follow me, please.

12         MR. DEAKIN: Judge, the next person, No. 5-

13    1, listed his town of residence as Chestnut Hill.

14    I'm not sure --

15         THE CLERK: That's still Boston.  We go

16    through this all the time.

17         MR. DEAKIN: We go all the way to Chestnut

18    Hill?

19         THE CLERK: Yes.

20         MR. DEAKIN: Oh.  Okay.

21         THE CLERK: Length of the case.  Mr. Steven

22    Ferraro.

23         THE COURT: What's the problem in terms of

24    the length of the case, Mr. Ferraro?

1      THE JUROR: I'm a student, undergraduate,

2   Boston College.  And I have exams, final exams,

3   coming up on April 26th and April 30th.

4      THE COURT: All right.  Good luck.

5      THE CLERK: Ms. Dorothy Arinella.  Did not

6   respond to any questions.

7      THE COURT: All right.  Have you or any

8   family member or close personal friend been accused

9   of a sexual assault?

10      THE JUROR: Not accused.

11      THE COURT: Is there something else?

12      THE JUROR: I've been physically abused --

13      THE COURT: Okay.  Hang on a second.  I'll

14   get to that.

15      THE JUROR: I'm sorry.

16      THE COURT: So no one's been accused?

17      THE JUROR: No.

18      THE COURT: Have you or any close -- have

19   you or any family member or close personal friend

20   ever been the victim of a sexual assault?

21      THE JUROR: Yes.

22      THE COURT: And that was...?

23      THE JUROR: My girlfriend.  She moved to

24   Virginia.

1          THE COURT: Were you also abused?

2          THE JUROR: I was abused about seven years

3     ago.

4          THE COURT: Would that affect your ability

5     to be fair and impartial and decide this case based

6     solely on the evidence presented here in court?

7          THE JUROR: Repeat that again, please.

8          THE COURT: Would that experience, would

9     that affect your ability to be fair and impartial and

10    decide this case based solely on the evidence

11    presented in court?

12         THE JUROR: I would have to say no.

13         THE COURT: You could not be fair and

14    impartial?

15         THE JUROR: I know.  You're trying to --

16         THE COURT: I'm just trying to figure it

17    out.  Whether or not it would affect your ability to

18    be fair and impartial.

19         THE JUROR: I could be fair.

20         THE COURT: Okay.  All right.  Now, is there

21    anything about this case that would prevent you from

22    being fair and impartial in deciding the issues in

23    this case?

24         THE JUROR: From my own experience --

1        THE COURT: Yes.

2        THE JUROR: That's hard to answer.  Because,

3  like I said, I have been physically abused.  I know

4  my girlfriend was, you know, abused, so, just by

5  being abused, I wouldn't want someone else to do it.

6        THE COURT: All right.  I understand that.

7  But --

8        THE JUROR: For me to be fair and partial --

9        THE COURT: Impartial.  Impartial.

10        THE JUROR: Impartial.  What's the word

11  impartial mean?

12        THE COURT: It means that you're not taking

13  any sides, you'll listen objectively to the evidence,

14  and decide the case --

15        THE JUROR: Yes.  I would be --

16        THE COURT:  -- based solely on what the

17  evidence says and not on some personal experience

18  that you had someplace else or anything else outside

19  the evidence that's presented in court.

20        THE JUROR: I could be, as you said,

21  partial --

22        THE COURT: Impartial.

23        THE JUROR: Impartial.

24        THE COURT: All right.  You want to step out

1    for a second.

2              MR. SHEA: I think she, in good faith, is

3    wrestling with this.  But --

4              THE COURT: She's wrestling with the

5    definitions of partial and impartial.

6              MR. SHEA: But she's also wrestling, as she

7    was saying, she wasn't initially sure, given the

8    history of her and her girlfriend, that she could be.

9    And the fear I have is that at some point, once

10   they're sitting on the jury, if something within the

11   testimony ques her or makes her feel uncomfortable,

12   it's too late.

13             THE COURT: I mean, I'm not going to excuse

14   her.  I asked her several ways to try to see what she

15   would say, and her point was to try to make it clear

16   to me, based upon the language I was using, that she

17   could be impartial and look at it objectively.

18             MR. SHEA: Could we ask her if she has any

19   concerns that she -- that in hearing the case that

20   she could --

21             THE COURT: Let me see her.

22             THE COURT OFFICER: Ma'am, would you step

23   this way, please.  Just have a seat back there again,

24   please.

1          THE COURT: I just want to ask you this

2     question.  Do you have any concerns that in hearing

3     the case that you might not be able to be fair?

4     Knowing what the case is about.

5          THE JUROR: I could be fair, if that's what

6     you're asking me.  Yes.

7          THE COURT: Okay.  All right.

8          THE COURT OFFICER: Step this way, please.

9          MR. DEAKIN: Commonwealth's content.

10         THE COURT: All right.  Defendant.

11         MR. SHEA: We'll use a peremptory.

12         MR. DEAKIN: One moment before the next

13    one's brought in.  I wanted to -- I'm not sure if I

14    have a *Soares*, a fully-formed *Soares* objection, or

15    whether I just want to draw the Court's attention to

16    this.  But defense counsel has used ten peremptory

17    challenges.  By my count, the first three were for

18    males.  The remaining seven have been for females,

19    all but one of whom were Caucasian females.

20         I'm concerned that there is an emerging

21    pattern, seven challenges in a row to females, of

22    striking only females.

23         I'm not sure whether this rises to the

24    level of a *Soares* pattern, given the three male

1    challenges, to start with.  I wanted to at least make

2    a note on the record of the pattern that I'm

3    concerned is emerging.

4              THE COURT: All right.

5              MR. SHEA: And I'll answer it --

6              THE COURT: You've made your note on the

7    record.

8              Call the next one.

9              THE COURT OFFICER: Sure.  5-3.  Take a seat

10   right there, please.

11             THE CLERK: Ms. Portia Reece.

12             THE COURT: Portia.

13             THE CLERK: Did not respond to any

14   questions.

15             THE COURT: Do you have that form with you?

16             Have you or any family member or close

17   personal friend ever been the victim of a sexual

18   assault?

19             THE JUROR: Yes, sir.

20             THE COURT: Close personal friend or family

21   member?

22             THE JUROR: Close friend.

23             THE COURT: And how close?

24             THE JUROR: Myself.

102

```
1                    THE COURT: Pardon me?

2                    THE JUROR: Myself.

3                    THE COURT: Would that affect your ability

4          to be fair and impartial and decide this case based

5          solely on the evidence presented in court?

6                    THE JUROR: Don't think so.

7                    THE COURT: Have you or any family member or

8          close personal friend ever been accused of a sexual

9          assault?

10                   THE JUROR: No.

11                   THE COURT: Is there anything about this

12         case that would prevent you from being fair and

13         impartial and deciding this case based solely on the

14         evidence presented here in court?

15                   THE JUROR: No.

16                   THE COURT: You say that you were the person

17         that was sexually assaulted.  Were charges ever

18         brought?

19                   THE JUROR: No.

20                   THE COURT: Did it involve a family member?

21                   THE JUROR: Excuse me?

22                   THE COURT: Did it involve a family member?

23                   THE JUROR: Do I have to answer that?

24                   THE COURT: Pardon me?
```

103

1          THE JUROR: Do I need to answer that?

2          THE COURT: Do you have to?  No, you don't

3     have to.  I just -- were you over the age of 18 when

4     it happened?

5          THE JUROR: No.

6          THE COURT: You were under.  All right.  You

7     want to step out for a second.

8          THE COURT OFFICER: Follow me, please,

9     ma'am.

10         MR. DEAKIN: I'd ask you to inquire of her.

11    She said here that she was arrested for defending

12    herself using a dangerous weapon, a knife.

13         THE COURT: I'm not going to keep her.

14    Anyone who's going to tell me that they don't want to

15    reveal who the sexual assaultee was is harboring

16    something back there, and I'm not going to put her on

17    the jury.  Unless the defendant wants her?

18         MR. SHEA: No.

19         THE COURT: All right.

20         THE COURT OFFICER: Have a seat right there,

21    sir.

22         THE CLERK: Scott Giarla.

23         THE JUROR: Giarla.

24         THE COURT: Do you have a form?

104

1           THE JUROR: Yeah.

2           THE COURT: Did you answer yes to --

3           THE CLERK: Did not respond to any

4    questions.

5           THE COURT: All right.  Have you or any

6    family member or close personal friend ever been

7    accused of a sexual assault?

8           THE JUROR: No.

9           THE COURT: Have you or any family member

10   ever -- or close personal friend ever been the victim

11   of a sexual assault?

12          THE JUROR: Yes.

13          THE COURT: You, close family member?

14          THE JUROR: Close family member.

15          THE COURT: Sister, brother?

16          THE JUROR: Girlfriend that I'm currently

17   living with.

18          THE COURT: All right.  Would that affect

19   your ability to be fair and impartial and decide this

20   case based solely on the evidence presented here in

21   court?  The fact that your girlfriend had been the

22   victim of a sexual assault.

23          THE JUROR: That's a tough one.  It would

24   affect how I would want the outcome, if considered

1  guilty, but I think I could be fair as to whether or

2  not the person was guilty.  Once determined guilty, I

3  would want a firm, harsh punishment.

4          THE COURT: Well, that's sentencing.  And

5  you don't -- the jury doesn't have any role in that.

6          THE JUROR: Right.  But I think I could be

7  fair in determining guilt.

8          THE COURT: Or innocence.

9          THE JUROR: Or innocence.  Or maybe not.

10          THE COURT: Or maybe not what?

11          THE JUROR: Well, you said -- "Could you be

12  a fair person in a case where a person's charged with

13  kidnapping and sexually assaulting a child?"  You

14  say, "Yes," but then you put in parenthesis

15  "probably."

16          THE JUROR: Referring to what you just

17  noticed.  My past history of her having been

18  assaulted.

19          THE COURT: You're excused.

20          THE COURT OFFICER: Follow me, sir.

21          THE COURT: Is this 5-5 or 5-4?

22          THE CLERK: 5-5, Diane Scott.  Ms. Scott

23  didn't respond to anything.

24          THE COURT: Do you have a form?

1          THE COURT OFFICER: Juror questionnaire,

2     please.

3          THE JUROR: Uh-huh.

4          THE COURT: Have you or any close family

5     member or -- have you or any family member or close

6     personal friend been the victim of a sexual assault?

7          .          THE JUROR: No.

8          THE COURT: Have you or any family member or

9     close personal friend ever been accused of a sexual

10    assault?

11         THE JUROR: Never.

12         THE COURT: All right.  Is there anything

13    about this case that would prevent you from being

14    fair and impartial and deciding this case based

15    solely on the evidence presented here in court?

16         THE JUROR: No.

17         THE COURT: Now, on this questionnaire,

18    there was one question, "Do you have any contact with

19    children ages seven to nine years?"  You left that

20    blank.

21         THE JUROR: No.

22         THE COURT: Okay.  All right.  You want to

23    step out for a second.

24         THE JUROR: Sure.

107

1            MR. DEAKIN: Commonwealth's content.

2            MR. SHEA: We're content.

3            THE COURT: Put her in the room.  How many

4       is that?

5            THE CLERK: Seven.

6            MR. SHEA: So the record is clear, five

7       white women.

8            THE COURT OFFICER: 5-7.  Can I get your

9       juror questionnaire.

10           THE COURT: Did you answer yes to any

11      questions?

12           THE JUROR: What?

13           THE COURT: Did she respond --

14           THE CLERK: No.

15           THE COURT: Have you or any family member or

16      close personal friend ever been accused of a sexual

17      assault?

18           THE JUROR: Accused of, not that I know of.

19           THE COURT: Have you or any family member or

20      close personal friend ever been the victim of a

21      sexual assault?

22           THE JUROR: Yes.

23           THE COURT: A close family member --

24           THE JUROR: A family member.

1          THE COURT: Family member.

2          THE JUROR: Uh-huh.

3          THE COURT: Brother, sister?

4          THE JUROR: Sister and myself.

5          THE COURT: And yourself?

6          THE JUROR: Yes.

7          THE COURT: Would that affect your ability

8     to be -- would that affect your ability to sit in

9     this case and be fair and impartial and decide this

10    case based solely on the evidence presented here in

11    court?

12         THE JUROR: Not really.

13         THE COURT: Whey you say "not really," why

14    do you think not really?

15         THE JUROR: It wouldn't affect me, being

16    that it happened to me in the past.

17         THE COURT: When you say happened in the

18    past, how long ago?

19         THE JUROR: When I was about five.  So,

20    like, 18 years ago, or something.

21         THE COURT: Were charges ever brought in the

22    case?

23         THE JUROR: No.

24         THE COURT: And this case involves a man

1    with a girl of about nine or ten.  This case.  He's

2    accused of sexually assaulting and kidnapping.

3    Sexually assaulting her.

4              But would any of your experiences or

5    feelings --

6              THE JUROR: It would probably kind of bother

7    me.

8              THE COURT: It would bother you.

9              THE JUROR: It would bother me.  Like, just

10   to know that he did that to a young girl.

11             THE COURT: Well, that's the point.

12             THE JUROR: For example, if I was to look at

13   the case, or just listen to the evidence and just

14   look at it like the odds and evens, the pros and cons

15   of what he did and what the other person has to say

16   about what happened to her and stuff like that.

17             THE COURT: Well, the Commonwealth, he, has

18   to prove that it happened.

19             THE JUROR: Yes.

20             THE COURT: Would your experience, your past

21   experience, affect your ability to decide whether or

22   not that's proven or not proven?

23             THE JUROR: It probably would.

24             THE COURT: Okay.  You're excused.

1          THE COURT OFFICER: Follow me, ma'am.

2          MR. DEAKIN: The next fellow said that his

3     brother was convicted of molestation.  I'd ask the

4     Court to inquire whether, in his view, that was a

5     just conviction or if he was unjustly convicted, and

6     whether that would affect his ability to be

7     impartial.

8          THE COURT OFFICER: 5-8.  Have a seat, sir.

9          THE CLERK: Charles Coughlin.

10          THE COURT: May I have your form, please,

11     sir?

12          THE CLERK: Didn't respond to any questions.

13          THE COURT: All right.  Have you or -- I

14     guess so.

15          Have you or any family member or close

16     personal friend ever been accused of a sexual

17     assault?

18          THE JUROR: My brother was convicted of a

19     sexual molestation case.

20          THE COURT: Would that have any bearing or

21     any impact upon your ability to sit in this case and

22     be fair and impartial?

23          THE JUROR: I don't think so.

24          THE COURT: All right.  Have you or any

1    family member or close personal friend been the

2    victim of a sexual assault?

3                THE JUROR: No.

4                THE COURT: When was your brother convicted?

5                THE JUROR: I can't hear you.

6                THE COURT: When was your brother convicted?

7                THE JUROR: Oh, 1994 or 5.

8                THE COURT: Did you attend the trial?

9                THE JUROR: Please?

10               THE COURT: Did you attend the trial?

11               THE JUROR: Yes.

12               THE COURT: And how did you feel about that?

13               THE JUROR: Well, I thought he was innocent.

14   I mean, if you want to know.

15               THE COURT: You thought he was innocent.

16   But, I mean, you accepted the jury's verdict?

17               THE JUROR: You have to.

18               THE COURT: All right.  You want to step out

19   for a second.

20               THE COURT OFFICER: Follow me, sir.  Stand

21   right there for me, please.

22               THE COURT: Commonwealth.

23               MR. DEAKIN: I'd ask that he be struck for

24   cause, your Honor.  He's relatively recently seen a

1   person that he believed to be innocent convicted.  I

2   think it would be awfully difficult for him to look

3   at it objectively.  It's an identity case.  I mean,

4   that's how I anticipate the defense coming in.

5            THE COURT: Well, I have a bigger problem

6   with his being able to hear.

7            . MR. DEAKIN: He's also deaf as a post.

8            THE COURT: I'm sitting here talking to him

9   and he can't --

10            MR. DEAKIN: And the victim in this case

11   speaks very quietly.  I think it's going to be hard

12   to hear her.

13            MR. SHEA: I'd ask that he be retained

14   because, I mean --

15            THE COURT: Call him back in for a second.

16   I'm concerned about his hearing.

17            THE COURT OFFICER: Sir, could you step back

18   in here for a second.  Have a seat right there,

19   please.

20            THE COURT: You said you had trouble hearing

21   me.

22            THE JUROR: Yes.  A little bit.

23            THE COURT: A little bit?

24            THE JUROR: Yeah.  I can hear you now.

1    THE COURT: Okay.  Would that fact that your

2    brother was convicted of a sexual assault affect your

3    ability to be fair and impartial in this case and

4    decide this case based on --

5    THE JUROR: Is this a sexual assault case?

6    THE COURT: Yes, it is.

7    THE JUROR: Well, I'd prefer not to.

8    THE COURT: All right.  You're excused.

9    THE COURT OFFICER: Follow me, please, sir.

10   Step this way, please.

11   5-9.  Could I have that jury questionnaire

12   I gave you earlier.

13   THE CLERK: Did not respond to any

14   questions.

15   THE COURT: Have you or any family member

16   been -- you or any family member or close personal

17   friend been accused of a sexual assault?

18   THE JUROR: Not that I know of.

19   THE COURT: Have you or any family member or

20   close personal friend ever been the victim of a

21   sexual assault?

22   THE JUROR: Not that I know of.

23   THE COURT: Is there anything about this

24   case that would prevent you from being fair and

114

1        impartial in deciding this case based solely on the

2        evidence that's presented in court?

3              THE JUROR: No.

4              THE COURT: All right.  Do you want to step

5        out for a second.

6              THE COURT OFFICER: This way, please.

7              THE COURT: Commonwealth.

8              MR. DEAKIN: Content.

9              THE COURT: Defendant.

10             MR. SHEA: I need a moment with my client.

11          (Counsel and defendant confer.)

12             MR. SHEA: We're going to go with her.

13             THE CLERK: Grace Magalhaes.

14             THE JUROR: Yes.

15             THE CLERK: She did not respond to any

16        questions.

17             THE COURT: All right.  You're a paralegal

18        for Fish and Richardson?

19             THE JUROR: Yes.

20             THE COURT: Oh, intellectual property law.

21        So you're not doing any criminal law over there?

22             THE JUROR: No.

23             THE COURT: Have you or any family member or

24        close personal friend ever been accused of a sexual

1    assault?

2                    THE JUROR: No.

3                    THE COURT: Have you or any family member or

4    close personal friend ever been the victim of a

5    sexual assault?

6                    THE JUROR: No.

7                    THE COURT: Is there anything about the

8    facts of this case that would prevent you from being

9    fair and impartial and deciding this case based

10   solely on the evidence presented in court?

11                   THE JUROR: I did respond to a question,

12   actually.

13                   THE COURT: Which one was that?

14                   THE JUROR: "Did you form an opinion?"

15                   THE COURT: You did.  What's your juror

16   number?

17                   THE CLERK: 5-11.

18                   THE JUROR: Because I kept my card up and I

19   was, like, dismissed, like this.  The reason why I

20   had it kept up was because I didn't hear my number

21   being called.  I believe it may have been 3-11 which

22   was called, instead of 5-11.

23                   THE COURT: All right.  Well, in any case,

24   you formed an opinion about this?

116

1        THE JUROR: I did.  After I had filled out

2    the form, the last question was about a child, a

3    sexual assault or kidnapping.  And I said that -- I

4    think I marked it "yes."

5        THE COURT: That you could be fair.

6        THE JUROR: Yeah.  And then when I came into

7    the room and when you spoke about the crime and I saw

8    the accused, my blood started to boil.  I changed my

9    mind right there and then.

10       THE COURT: You're excused.

11       THE CLERK: Michael Jura.

12       THE COURT: Have a seat.  Join us.  Stay

13   awhile.

14       THE CLERK: He believes a police officer,

15   and the length of the case.

16       THE COURT: So you would believe or

17   disbelieve a police officer solely because they are a

18   police officer?

19       THE JUROR: Not solely, but I'd be more

20   inclined.

21       THE COURT: All right.  You're excused.

22       THE COURT OFFICER: Follow me, please.

23       THE COURT OFFICER: 5-14.

24       THE CLERK: Caron Costanza.

1              THE COURT: You've formed an opinion about

2       this case?

3              THE JUROR: Yes.

4              THE COURT: Okay.  You're excused.

5              THE COURT OFFICER: This way, please.

6              THE COURT: May I have your form?

7              THE CLERK: Karen Murphy.  Responded to no

8       questions.

9              THE COURT: Have you or any family member or

10      close personal friend ever been accused of a sexual

11      assault?

12             THE JUROR: Accused, no.

13             THE COURT: Have you or any family member or

14      close personal friend ever been the victim of a

15      sexual assault?

16             THE JUROR: Yes.

17             THE COURT: Close family member, personal

18      friend, you?

19             THE JUROR: Personal friend.

20             THE COURT: Is that a real close friend?

21             THE JUROR: She's close, yeah.

22             THE COURT: Was it recent?

23             THE JUROR: No.

24             THE COURT: Would the fact that your close

1 friend has been the victim of a sexual assault affect

2 your ability to be fair and impartial and decide this

3 case based solely on the evidence presented in court?

4   THE JUROR: No.

5   THE COURT: How old is your nephew?

6   THE JUROR: Seven.

7   THE COURT: So is there anything about this

8 case that would affect your ability to be fair and

9 impartial?

10   THE JUROR: I was married to a correction

11 officer.  I don't think -- I personally don't think

12 that has anything to do with it.  But I just wanted

13 to share that.  I'm divorced now.

14   THE COURT: Well, would that affect your

15 ability to --

16   THE JUROR: No.

17   THE COURT: Would that affect your ability

18 to be fair and impartial and decide this case --

19   THE JUROR: No.

20   THE COURT: All right.  You want to step

21 outside for a second.

22   THE COURT OFFICER: Follow me.

23   THE COURT: Commonwealth.

24   MR. DEAKIN: Commonwealth's content.

1                    THE COURT: Defendant.

2                    MR. SHEA: I need a moment.

3                    (Counsel and defendant confer.)

4                    MR. SHEA: We'll exercise a peremptory.

5          We'll strike her.

6                    THE COURT OFFICER: 5-16.

7                    THE CLERK: Wendy Robinson.  Ms. Robinson

8          didn't respond to any of the questions.

9                    THE COURT: May I have your questionnaire,

10         please.

11                   Have you or any family member or close

12         personal friend ever been accused of a sexual

13         assault?

14                   THE JUROR: No.

15                   THE COURT: Have you or any family member or

16         close person friend ever been the victim of a sexual

17         assault?

18                   THE JUROR: No.

19                   THE COURT: Is there anything about this

20         case, the facts of this case that would prevent you

21         from being fair and impartial and deciding this case

22         based solely on the evidence presented here in court?

23                   THE JUROR: No.

24                   THE COURT: All right.  Could you step

120

1    outside for a second?

2              THE JUROR: Uh-huh.

3              MR. DEAKIN: The Commonwealth's content.

4              THE COURT: Defendant.

5              MR. SHEA: I just need a second.

6         (Counsel and defendant confer.)

7              MR. SHEA: We're content.

8              THE COURT OFFICER: 6-1.  Could I have your

9    juror questionnaire, please.

10             THE CLERK: This is Robert Lamothe.  Length

11   of the case, and formed an opinion.

12             THE COURT: You formed an opinion already?

13             THE JUROR: Just -- I'm a Methodist and it's

14   just -- just being in there -- it's the first time

15   I've been around here and I've kind of, like, already

16   gotten an opinion, being in there.  And just what I

17   see in church and what my reverend preaches, it's --

18   I don't know.  I'm kind of confused about --

19             THE COURT: So what's being a Methodist have

20   to do with whether or not you can be fair and

21   impartial?

22             THE JUROR: I guess this being my first time

23   I really didn't know.  I'm kind of overwhelmed by it.

24             THE COURT: Okay.  Well, why don't we back

1      up for a second.  We'll take it a step at a time.

2                  Have you or any family member or close

3      personal friend --

4                  THE CLERK: He has a problem with the length

5      of the case, too.

6                  THE COURT: What's your problem with the

7      length of the case?

8                  THE JUROR: The what?

9                  THE COURT: What's the problem with the

10     length of the case?

11                 THE JUROR: Oh.  I have midterms next week

12     for school.

13                 THE COURT: Midterms.  What school do you go

14     to?

15                 THE JUROR: Northeastern.

16                 THE COURT: Well, they have to let you make

17     them up.  I can't excuse you because of that.

18                 Have you or any family member or close

19     personal friend ever been accused of a sexual

20     assault?

21                 THE JUROR: No.

22                 THE COURT: Have you or any family member or

23     close personal friend ever been the victim of a

24     sexual assault?

1        THE JUROR: No.

2        THE COURT: Is there anything about this

3   case, the nature of the charges, that would prevent

4   you from being fair and impartial and deciding this

5   case based solely on the evidence presented in court?

6        THE JUROR: No.

7        THE COURT: So, when you spoke about being a

8   Methodist, and what you've heard your minister

9   preach, what was that?

10        THE JUROR: That was -- it's -- I'm just

11   from a small town and when things come up in the

12   news, like a sexual assault case or something like

13   that, it just seems like he likes to bring that in.

14   And he'll be very forward and pound it in, and --

15        THE COURT: Well, I mean, of course, no one

16   agrees with sexual assault.

17        THE JUROR: Yes.

18        THE COURT: But the issue here is whether or

19   not your disagreement with the idea of a sexual

20   assault would interfere with your ability to be fair

21   and impartial in deciding whether or not a sexual

22   assault actually occurred.

23        THE JUROR: It wouldn't make me feel unfair,

24   impartial.

1          THE COURT: It wouldn't make you...?

2          THE JUROR: I would be impartial.

3          THE COURT: All right.  Fine.  All right.

4     You want to step outside for a second.

5          THE COURT OFFICER: Stand right there,

6     please.

7          MR. DEAKIN: Judge, I'd ask you to strike

8     him for cause.  He's waivered a lot on the issue of

9     impartiality.

10          MR. SHEA: I'll join in that.

11          THE COURT: He was confused.

12          MR. DEAKIN: I know he was.

13          THE COURT: He was nervous about being here.

14     I mean, he admitted that.  When we finally got down

15     to it, he understood that, you know, you've got to

16     make a decision, and things that happen outside don't

17     have any impact on the case.

18          I'm not going to excuse him for cause.  I

19     mean, I can ask him again, but it seems to me that he

20     understands what the drill is.

21          MR. DEAKIN: The Commonwealth would exercise

22     a peremptory challenge.

23          I have that as my fourth.

24          THE CLERK: That's right.  So you've got

124

1          plenty more.

2                    THE COURT OFFICER: 6-3.

3                    THE CLERK: Sridhar Rao.

4                    THE COURT: Could I get the jury

5          questionnaire, please?

6                    THE CLERK: He knows a witness in the case.

7                    THE COURT: You know a witness?

8                    THE JUROR: I believe I know at least one of

9          the Children's Hospital physicians.

10                   THE COURT: Which one?

11                   THE JUROR: I'm a physician there also.  Dr.

12         Alice Newton.  And Dr. Schainker, I'd have to see

13         her, but I think I know her also.

14                   THE COURT: All right.  Have a good day.

15                   THE JUROR: Thank you.

16                   THE CLERK: Vin Ly.  Mr. Ly responded to the

17         length of the case.

18                   THE COURT: What's the problem with the

19         length of the case?

20                   THE JUROR: It's about --

21                   THE COURT: I can't hear you.

22                   THE JUROR: It's about -- I don't know.

23                   THE COURT: Well, you raised your hand and

24         said you had a problem with how long the case was

1       going to last.

2              THE JUROR: No.

3              THE COURT: You didn't.

4              MR. SHEA: There's a language problem.

5              THE COURT: Where do you go to school?

6              THE JUROR: Wellesley.

7              THE COURT:  Wellesley High School,

8       Wellesley...?

9              THE JUROR: College.

10            THE COURT: You go to Wellesley College.

11      They let guys in there?

12           Have you or any close personal friend --

13      have you or any family member or close personal

14      friend ever been accused of a sexual assault?

15           THE JUROR: No.

16           THE COURT: Have you or any family member or

17      close personal friend ever been the victim of a

18      sexual assault?

19           THE JUROR: No.

20           THE COURT: Is there anything about the

21      nature of the charges in this case that would affect

22      your ability to be fair and impartial --

23           THE JUROR: No.

24           THE COURT: -- and decide this case based

126

1          solely on the evidence presented in court?

2                    THE JUROR: No.

3                    THE COURT: I asked a question about

4          schedule out there.  I told you that this case was

5          going to last about seven to nine days.

6                    THE JUROR: Uh-huh.

7                    THE COURT: Do you have a problem with that?

8                    THE JUROR: Yeah.

9                    THE COURT: And what's the problem with

10         that?

11                   THE JUROR: Because I still have -- I go to

12         school right now.  Until March 3rd.  I can't be here.

13                   THE COURT: Until when?

14                   THE JUROR: You said around March 3rd.

15                   THE COURT: May 3rd.

16                   THE JUROR: May 3rd.

17                   THE COURT: Right.

18                   THE JUROR: And I still in school until,

19         like, May 15th, I get out of school.

20                   THE COURT: So when are exams?

21                   THE JUROR: During that week.

22                   THE COURT: You're excused.

23                   THE CLERK: Adele Davis.

24                   THE JUROR: Adele.

1       THE CLERK: Ms. Davis has formed an opinion,

2   has a physical problem.

3       THE COURT: You've formed an opinion about

4   this case already, ma'am?

5       THE JUROR: Yeah.  I'm sorry.  When I heard

6   you read the paper, I already jumped to conclusions

7   and formed my own opinion.

8       THE COURT: All right.  You're excused.

9       THE JUROR: Do I leave this?

10      THE COURT: Leave the form, but you can take

11  the number.

12      THE COURT OFFICER: Panel 6, Seat 8.

13      THE CLERK: Julie Goldman.

14      THE JUROR: Yes.

15      THE CLERK: Ms. Goldman raised her hand to a

16  physical problem.

17      THE JUROR: I have chronic headaches, stress

18  headaches.  I take medicine to try to control them.

19  I sometimes go for weeks with no problems, but I

20  wanted to be honest that sometimes I get a very

21  severe headache out of nowhere.

22      THE COURT: And what brings --

23      THE JUROR: Stress.

24      THE COURT: Do you feel stressed being here?

1          THE JUROR: No.  I just wanted to be honest

2     that I do get headaches that I have medication for.

3          THE COURT: Okay.  Has anyone -- have you or

4     any family member or close personal friend ever been

5     accused of a sexual assault?

6          THE JUROR: No.

7          THE COURT: Have you or any family member or

8     close personal friend been the victim of a sexual

9     assault?

10          THE JUROR: Not that I'm aware of.

11          THE COURT: Is there anything about this

12     case or about the nature of the charges that would

13     affect your ability to be fair and impartial and

14     decide this case based solely on the evidence

15     presented in court?

16          THE JUROR: No.

17          THE COURT: All right.  May I have your

18     form?

19          THE JUROR: Sure.

20          THE COURT: And would you step outside for a

21     second.

22          THE JUROR: Right out here?

23          THE COURT: Yes.  Thank you.

24          THE COURT OFFICER: Stand right there,

129

1    please.

2           Ma'am, could you come back in for a second,

3    please?

4           THE COURT: Just for one second, ma'am.

5    Don't worry.

6           I just wanted to ask you this question: The

7    question was, "Do you have any knowledge regarding

8    media coverage of this case?"

9           You say, "I can't really answer until I

10   know what case this is."

11          THE JUROR: At the time when we filled out

12   the forms, I --

13          THE COURT: That's why I'm going to tell you

14   that it's about a rape, an alleged rape, that took

15   place or supposed to have taken place out in Brighton

16   a couple of years ago.

17          THE JUROR: Right.  Once I came in and I

18   heard the charges, I said, I realized that, no, I had

19   no knowledge of this case and I've never read

20   anything about it.

21          THE COURT: Okay.  Thanks a lot.

22          THE JUROR: Sure.

23          MR. DEAKIN: Commonwealth's content.

24          THE COURT: All right.

130

1          THE CLERK: Defendant.

2          MR. SHEA: Any chance you could ask about

3     her prior service as a juror?  Even if she was

4     impaneled or not.

5          THE COURT: And what's that going to do?

6          MR. SHEA: Well, I'm always curious about

7     what kind of experience they've had as a juror.

8          THE COURT: Well, I'm not going to ask her

9     that.

10         MR. SHEA: Well, could we ask if was

11    impaneled and if it was a criminal matter?

12         THE COURT: Bring her back in one second.

13    I'll ask her if she was impaneled.

14         THE COURT OFFICER: Ma'am, please.

15         THE COURT: When you said that you'd done

16    jury duty before, back in February of '99 --

17         THE JUROR: I couldn't really remember the

18    date.

19         THE COURT: Well, I'm just saying -- were

20    you impaneled on a jury?

21         THE JUROR: No.

22         THE COURT: Okay.

23         THE JUROR: I just sat around.

24         THE COURT: Okay.

131

1              MR. SHEA: All right.  We'll take her.

2              And this next guy, I see works for Bank

3      North.  I don't think --

4              THE CLERK: Already formed an opinion and

5      believes a police officer and length of the case.

6              THE COURT OFFICER: Paul, 6-9?

7              THE CLERK: 6-9.

8              THE COURT OFFICER: Okay.

9              THE COURT: May I have your form?

10             THE CLERK: Timothy Steiner.  Mr. Steiner

11     has formed an opinion, believes a police officer, and

12     the length of the case.

13             THE COURT: You've already formed an opinion

14     about this case?

15             THE JUROR: I have.

16             THE COURT: What's that?

17             THE JUROR: Well, when I read it in the

18     paper, you know --

19             THE COURT: You read about this case?

20             THE JUROR: Uh-huh.

21             THE COURT: Fine.  You're excused.

22             THE COURT OFFICER: Follow me, sir.

23             Have a seat right there.

24             THE CLERK: Eddie Ware.  Mr. Ware has a

1      problem with the length of the case.

2                   THE COURT: What's the problem with the

3      length of the case?

4                   THE JUROR: Can you repeat that, your Honor?

5                   THE COURT: I said, what's the problem with

6      the length of -- the schedule?  You said you had a

7      scheduling problem.

8                   THE JUROR: I work two nights a week, five

9      days a week, and I go to school four days.  Three

10     evenings and Fridays 12:30 to 2.  That's my only

11     schedule --

12                  THE COURT: Well, I can't excuse you because

13     of work or school.

14                  THE JUROR: Okay.

15                  THE COURT: All right.

16                  THE JUROR: It's no problem.  I just wanted

17     to make sure I told you.

18                  THE COURT: Have you or any family member or

19     close personal friend ever been accused of a sexual.

20     assault?

21                  THE JUROR: No.

22                  THE COURT: Have you or any family member or

23     close personal friend ever been the victim of a

24     sexual assault?

1        THE JUROR: Yes.

2        THE COURT: Family member, friend, you?

3        THE JUROR: Family member.  Also me.

4        THE COURT: Pardon me?

5        THE JUROR: Also me.

6        THE COURT: Also you.  The fact that you

7 have a family member and you have been the victim of

8 sexual assault, would that affect your ability to be

9 fair and impartial and decide this case based solely

10 on the evidence presented in this court?

11        THE JUROR: No.  Because I don't harbor any

12 resentment or hate toward the individual.

13        THE COURT: Is there anything about this

14 case that would prevent you from being fair and

15 impartial and deciding this case based solely on the

16 evidence?

17        THE JUROR: I have to say no, because I

18 don't know anything.

19        THE COURT: Okay.  Want to step outside for

20 a minute.

21        THE COURT OFFICER: Follow me, sir.

22        MR. SHEA: Can we ask him what the Advocate

23 is?

24        THE COURT OFFICER: Step this way, sir, for

134

1    a second.

2              THE COURT: Sir, I need to ask you this

3    question.  You say your employer is the Advocates.

4    What is that?

5              THE JUROR: We work with mental retardation

6    and mental health individuals.  We help them become

7    independent again, to live out on their own, take

8    their medication, find jobs.

9              THE COURT: Okay.  Thanks a lot.

10             THE COURT OFFICER: This way, please.

11             MR. SHEA: I need to talk to my client.

12             MR. DEAKIN: I'm going to exercise a

13   peremptory challenge.

14             THE COURT: Pardon me?

15             MR. DEAKIN: I'm going to exercise a

16   peremptory challenge.

17             THE COURT OFFICER: All right, sir.  You're

18   all set.

19             MR. SHEA: I would, just for the record,

20   note that I believe that's the only African American

21   male that we've had.

22             THE COURT OFFICER: 6-11.

23             THE CLERK: Ms. Karen Fennell.

24             THE COURT OFFICER: May I have your juror

1    questionnaire, please, ma'am?

2           THE CLERK: No affirmative answers.

3           THE COURT: Have you or any family member or

4    close personal friend ever been accused of a sexual

5    assault?

6           THE JUROR: No.

7           THE COURT: Have you or any family member or

8    close personal friend ever been the victim of a

9    sexual assault?

10          THE JUROR: No.

11          THE COURT: Is there anything about this

12    case and the nature of the charges that would prevent

13    you from being fair and impartial and deciding this

14    case based solely on the evidence presented in court?

15          THE JUROR: No.

16          THE COURT: Fine.  You say you have a sister

17    who's a police officer in Cambridge?

18          THE JUROR: That's correct.

19          THE COURT: Would that affect -- would that

20    have any impact on your ability to be fair and

21    impartial and decide this case based solely on the

22    evidence presented in court?

23          THE JUROR: No.

24          THE COURT: All right.  You want to step

1       outside for a minute?

2                    THE JUROR: Sure.

3                    MR. DEAKIN: For the record, I don't believe

4       it's correct that that's the African American --

5                    THE COURT: We're not there, yet.  We're on

6       this person.

7                    MR. DEAKIN: Commonwealth's content.

8                    THE COURT: Defendant.

9                    MR. SHEA: I'll need a moment with my

10      client.

11                   THE COURT: Her sister's a cop.  She

12      understands police.

13                   (Counsel and defendant confer.)

14                   MR. SHEA: Is there any chance you'd strike

15      her for cause, given the fact that her sister's a

16      cop?

17                   THE COURT: No.

18                   MR. SHEA: All right.  We'll use a

19      peremptory.

20                   MR. DEAKIN: Your Honor, for the record, I

21      just want to note that I don't believe it's correct

22      that the two jurors ago was the only African American

23      male we have.  I remember one individual was a

24      firefighter --

1          THE COURT: But he knew everybody.

2          MR. DEAKIN: That's right.  But he's not the

3     only African American male in the venire.

4          THE COURT OFFICER: 6-13.

5          THE CLERK: James Higgins.

6          THE COURT OFFICER: Have a seat.

7          THE COURT: Which number is this?

8          THE COURT OFFICER: 6-13.

9          THE CLERK: Mr. Higgins has a problem with

10    the length of the case.  6-13.

11         THE JUROR: Yes.  Basically, I have two

12    jobs.  I work as a private chef each night of the

13    week, and also have a catering business.  So we've

14    got parties to do, and, pretty much, we are the only

15    two people to do them.

16         THE COURT: I can't excuse you because of

17    employment.

18         THE JUROR: The only thing really I can do

19    is stay up all night to finish it.

20         THE COURT: I can't excuse you because of

21    employment.  That's part of the -- I mean, that comes

22    out as part of the jury information book.  Employment

23    is not an excuse.  Everybody has to do jury duty.

24    Judges, doctors, lawyers, everybody.

1          Have you or anyone in your family or close

2     personal friend been accused of a sexual assault?

3          THE JUROR: No.

4          THE COURT: Have you or anyone in your

5     family or close personal friend ever been the victim

6     of a sexual assault?

7          THE JUROR: No.

8          THE COURT: Is there anything about the

9     nature of these charges in this case that would

10    prevent you from being fair and impartial and

11    deciding this case based solely on the evidence

12    presented in court?

13         THE JUROR: No.

14         THE COURT: Could you step outside for a

15    second?

16         MR. DEAKIN: Content.

17         THE COURT: Defendant.

18         MR. SHEA: I've got to go talk to my client.

19    I hate to be adding a male to the jury.

20         (Counsel and defendant confer.)

21         MR. SHEA: We're content.

22         THE COURT: All right.

23         THE COURT OFFICER: Okay, sir.  Follow me,

24    please.

1          THE CLERK: Phyllis Raines.  Did not respond

2     to any questions.

3          THE COURT: Do you have a form?

4          THE JUROR: Yes.

5          THE COURT: Have you or any family or close

6     personal friend ever been accused of a sexual

7     assault?

8          THE JUROR: No.

9          THE COURT: Have you or any family member or

10    close personal friend ever been the victim of a

11    sexual assault?

12         THE JUROR: No.

13         THE COURT: Is there anything about this

14    case, the nature of the charges involved in this case

15    that would affect your ability -- or prevent you from

16    being fair and impartial and deciding this case based

17    solely on the evidence presented in court?

18         THE JUROR: Only because it's --

19         THE COURT: I can't hear you.

20         THE JUROR: Only because it's, like, a kid,

21    and I have children.  And I don't know if I would

22    feel -- I feel really sincere about children.

23         THE COURT: Well, everybody does.  But, I

24    mean, would that prevent you from being fair and

1      impartial and deciding this case, the issue of

2      whether or not he is guilty or not guilty?

3              THE JUROR: No.  I would be fair.

4              THE COURT: All right.  You want to step

5      outside for a second.

6              THE COURT OFFICER: Please step this way.

7              THE COURT: Wait a minute, wait a minute.

8      You said your husband is a Boston school police

9      officer?

10             THE JUROR: Yes.

11             THE COURT: Would that affect your ability

12     to be fair and impartial about this case and decide

13     this case based solely on the evidence presented in

14     court?

15             THE JUROR: No.

16             THE COURT: Okay.

17             MR. DEAKIN: Commonwealth's content.

18             THE COURT: Defendant.

19             MR. SHEA: I'm concerned that she has a

20     child exactly the age of the alleged victim here.

21     The victim is going to point at him in court, so I

22     have questions of whether she thinks a child is more

23     -- if she can find that a child, you know, the same

24     age as her child is not telling the truth.  That's my

1       concern.

2                   THE COURT: That's an issue of credibility

3       that she has to decide at trial.

4                   MR. SHEA: I'll need a moment.

5                   THE COURT: Sure.

6                   (Counsel and defendant confer.)

7                   MR. SHEA: We'll exercise a challenge.

8                   MR. DEAKIN: That's No. 13.

9                   THE CLERK: This is 12.

10                  MR. SHEA: I have 12.

11                  THE COURT: I'm going with the clerk anyway.

12                  THE CLERK: Mr. Kumar.

13                  THE JUROR: Yes.

14                  THE CLERK: Mr. Kumar, you responded about

15      the length of the case.

16                  THE COURT: What's the problem with the

17      length of the case?

18                  THE JUROR: Sorry?

19                  THE COURT: You said you had a problem with

20      the schedule?

21                  THE JUROR: Yeah.  I'm taking a vacation

22      next week, so we have plans to go away.  So that's

23      why.

24                  THE COURT: Well, when you say you're

142

1    planning to go away, where are you planning on going?

2         THE JUROR: To New York. My wife is from

3    New York so we are going to New York for a week.

4         THE COURT: And you bought plane tickets or

5    something?

6         THE JUROR: No. We are driving.

7         THE COURT: I'll tell you what, you go with

8    this court officer and you go back to the jury pool,

9    you make arrangements to come down and serve on a

10   jury on another day. And do it at a time that you're

11   not planning a vacation.

12        THE JUROR: Okay.

13        THE COURT OFFICER: I'm going to have to

14   reschedule him tomorrow, because Ellen in the jury

15   pool just left for the day. So I'm going to have to

16   give him his jury number and she's going to have to

17   send him a letter to have him rescheduled.

18        7-7. Have a seat, please.

19        THE CLERK: Andrea Roderick.

20        THE JUROR: Yes.

21        THE CLERK: Ms. Roderick did not respond to

22   any questions.

23        THE COURT: May I have your form, please?

24        THE JUROR: I gave it to you.

1          THE COURT: Have you or any family member or

2    close personal friend ever been accused of a sexual

3    assault?

4          THE JUROR: No.

5          THE COURT: Have you or any family member or

6    close personal friend ever been the victim of a

7    sexual assault?

8          THE JUROR: No.

9          THE COURT: Is there anything about the

10   nature of these charges in this case that would

11   prevent you from being fair and impartial and

12   deciding this case based solely on the evidence

13   presented in court?

14         THE JUROR: No.

15         THE COURT: All right.  You want to step

16   outside for a second.

17         THE COURT OFFICER: Can you stand right

18   there for one second, please.

19         THE COURT: Commonwealth.

20         MR. DEAKIN: Commonwealth's content.

21   Actually, I think I'm content.  Yes.  Commonwealth's

22   content.

23         THE COURT: Defendant.

24         MR. SHEA:  I need a moment.

1          (Counsel and defendant confer.)

2              MR. SHEA: She stays.

3              THE COURT OFFICER: 7-9.

4              THE COURT: Have you or any close -- have

5      you or any family member or close personal friend

6      ever been accused of a sexual assault?

7              THE JUROR: No.

8              THE COURT: Have you or any family member or

9      close personal friend ever been the victim of a

10      sexual assault?

11              THE JUROR: No.

12              THE COURT: You said you have a paralegal

13      certificate.  You're a legal secretary at Foley Hoag.

14              Have you ever worked for a criminal

15      attorney, criminal defense attorney, prosecutor?

16              THE JUROR: In New York.

17              THE COURT: In New York.  How long did you

18      do that?

19              THE JUROR: Well, it wasn't -- he was, like,

20      a sole practitioner, so he did a lot of things.  But

21      he did do criminal work.

22              THE COURT: So he did some criminal work.

23              THE JUROR: Yes.

24              THE COURT: All right.  You indicate that

145

1      your former roommate accused you of assault and a

2      judge dismissed the case.

3             Would the fact that you've been accused of

4      assault in the past affect your ability to be fair

5      and impartial and decide this case based solely on

6      the evidence presented in court?

7             THE JUROR: I'm sorry.  Could you repeat

8      that?

9             THE COURT: Would your experience, in terms

10     of being accused of assault, affect your ability to

11     be fair and impartial and decide this case based

12     solely on the evidence presented in court?

13            THE JUROR: No, I don't think so.  I don't

14     think it's a problem.

15            THE COURT: Pardon me?

16            THE JUROR: I don't think it's a problem.

17            THE COURT: All right.  You want to step

18     outside for a second?

19            THE JUROR: Sure.

20            MR. DEAKIN: Commonwealth's content.

21            THE COURT: Defendant.

22            MR. SHEA: I believe I'm going to be

23     content.  I'll just check.

24           (Counsel and defendant confer.)

1          MR. SHEA: Content.

2          THE CLERK: Kurt Griffin.  Mr. Griffin

3    didn't raise his hand.

4          THE COURT: Have you or any family member or

5    close personal friend ever been accused of a sexual

6    assault?

7          THE JUROR: No.

8          THE COURT: Have you or any family member or

9    a close personal friend ever been the victim of a

10   sexual assault?

11         THE JUROR: No.

12         THE COURT: Is there anything about the

13   nature of these charges that would affect your

14   ability or prevent you from being fair and impartial

15   and deciding this case based solely on the evidence

16   presented in court?

17         THE JUROR: No.

18         THE COURT: All right.  You want to step

19   outside for a second.

20         THE COURT OFFICER: This way, sir.

21         MR. DEAKIN: Commonwealth would exercise a

22   peremptory challenge.

23         THE COURT: All right.

24         THE COURT OFFICER: 7-12.  Have a seat right

147

1   there, sir.

2         THE CLERK: Vincent Tuzzo.   Problem with the

3   length of the case and employed by police, formed an

4   opinion, and knows a witness.

5         THE COURT: Well, have a good day.

6         THE JUROR: Thank you.

7         THE COURT OFFICER: 7-16.   Have a seat,

8   please.

9         THE CLERK: Carla Chaves.   I don't have Ms.

10  Chaves as raising her hand.

11        THE COURT: Pardon me?

12        THE CLERK: I don't have her as raising her

13  hand to any questions.

14        THE COURT: Have you or any family member of

15  close personal friend ever been accused of a sexual

16  assault?

17        THE JUROR: No.

18        THE COURT: Have you or any family member or

19  close personal friend ever been the victim of a

20  sexual assault?

21        THE JUROR: No.

22        THE COURT: Is there anything about the

23  nature of these charges that would affect your

24  ability to be fair and impartial or prevent you from

1       being impartial in deciding this case based solely on

2       the evidence presented in court?

3                    THE JUROR: No.

4                    THE COURT: And you say -- how many children

5       do you have?

6                    THE JUROR: Two.

7                    THE COURT: And they're six and ten?

8                    THE JUROR: Uh-huh.

9                    THE COURT: Boys, girls?

10                   THE JUROR: Yeah.

11                   THE COURT: Pardon me?

12                   THE JUROR: Boy and a girl.

13                   THE COURT: Boy and a girl.  This case

14      involves a young girl.  Would the fact that you have

15      a young daughter affect your ability to be fair and

16      impartial and decide this case based solely on the

17      evidence presented in court?

18                   THE JUROR: No.

19                   THE COURT: All right.  You want to step out

20      for a second.

21                   THE COURT OFFICER: Just stand right there,

22      please.

23                   MR. DEAKIN: Commonwealth's content.

24                   MR. SHEA: Yes.  We'll take her.

1          THE COURT: All right.

2          THE CLERK: We're doing very good.

3     Fourteen.

4          THE COURT: What number is that?

5          THE CLERK: Fourteen.

6          THE COURT OFFICER: 8-1.

7          THE CLERK: Margaret Moynihan.  Ms. Moynihan

8     did not raise her hand to any question.

9          THE COURT: All right.  I want to ask you,

10    have you or any family member or close personal

11    friend ever been accused of a sexual assault?

12         THE JUROR: Pardon me?

13         THE COURT: You have to answer verbally.

14         THE JUROR: Oh, I'm sorry.  No.

15         THE COURT: Have you or any family member or

16    close personal friend ever been the victim of a

17    sexual assault?

18         THE JUROR: No.

19         THE COURT: You indicate -- is there

20    anything about the nature of these charges that would

21    prevent you from being fair and impartial and

22    deciding this case based solely on the evidence

23    presented in court?

24         THE JUROR: No.  When I heard it, I was a

1          little -- it gets you mad for what he did.  First he

2          kidnapped her, and raped her, and then drugged her.

3          I don't think I could, you know --

4                    THE COURT: Okay.  You're excused.

5                    THE JUROR: It's just, you know....

6                    THE COURT OFFICER: Follow me, ma'am.

7                    THE CLERK: Mary Dunn-Todd.

8                    THE JUROR: Dunn-Todd.

9                    THE CLERK:  Did not respond to any of the

10         Court's questions.

11                   THE COURT: So you couldn't be fair and

12         impartial in this case?

13                   THE JUROR: Well, I thought I wouldn't be

14         able to if the guy, stereotypically, looked, you

15         know, like, creepy, but he doesn't.  I saw him.  I

16         don't know.  I could probably be more fair and

17         impartial than I thought, you know.

18                   THE COURT: So, it depends upon what does

19         someone look like that's done something wrong?

20                   THE JUROR: Not that somebody's done

21         something wrong, but, you know, creepy looking.

22         Because it's, like, a kidnapping case, you know what

23         I mean?

24                   THE COURT: Because you answered here that

1      you could not be fair and impartial for -- it says,

2      "Could you be a fair person in a case where a

3      person's charged with kidnapping and sexually

4      assaulting a child?"  And you said, "No."

5              THE JUROR: Well, sometimes people's

6      demeanor makes them seem like they would be more apt

7      to be, like, a kidnapping or an abusive type person,

8      you know.  I don't know if that makes any sense.

9              THE COURT: Well, so are you telling me now

10     that he doesn't look like he could have done it at

11     all?

12             THE JUROR: No.  But he doesn't look either

13     way, you know.

14             THE COURT: Let me ask you this: Have you or

15     any family member or close personal friend ever been

16     accused of a sexual assault?

17             THE JUROR: Yes.

18             THE COURT: Family member?  Close personal

19     friend?

20             THE JUROR: Family member.

21             THE COURT: Close family member?

22             THE JUROR: Yes.

23             THE COURT: Brother?  Sister?

24             THE JUROR: My brother.  Yes.

1          THE COURT: Would the fact that your

2    brother's been accused of a sexual assault, would

3    that affect your ability to be fair and impartial and

4    decide this case based solely on the evidence

5    presented here in court?

6          THE JUROR: No.

7          THE COURT: Have you or any family member or

8    close personal friend ever been the victim of a

9    sexual assault?

10         THE JUROR: Yes.

11         THE COURT: Family member?

12         THE JUROR: Myself.  Yeah.

13         THE COURT: Your brother?

14         THE JUROR: Yeah.  See, but I don't believe

15    that they can't be rehabilitated either, even if they

16    are guilty.  'Cause he's, you know, a totally changed

17    person now.

18         THE COURT: Would that experience, with all

19    of that experience in your background, would that

20    affect your ability to be fair and impartial and

21    decide this case based solely on the evidence that's

22    presented in court?

23         THE JUROR: No. I wouldn't let my personal

24    history get in the way of it, no.

1          THE COURT: All right.  You want to step

2    outside for a second.

3          THE COURT OFFICER: Follow me, ma'am.

4          THE COURT: Commonwealth.

5          MR. DEAKIN: Commonwealth's content.

6          THE COURT: Pardon me?

7          MR. DEAKIN: Commonwealth's content.

8          THE COURT: Defendant.

9          MR. SHEA: No.  She's gone.

10         THE COURT: Pardon me?

11         MR. SHEA: She's gone.

12         THE COURT OFFICER: I'm sorry?

13         MR. SHEA: She's gone.

14         THE COURT OFFICER: 5-8.  Excuse me.  Excuse

15   me.  8-5.

16         THE CLERK: Robert Hoppe.  He's formed an

17   opinion.

18         THE COURT: You've already formed an opinion

19   about this case?

20         THE JUROR: Yes, I have.

21         THE COURT: All right.  You're excused.

22         THE COURT OFFICER: Follow me, sir.

23         THE COURT: May I have that form?

24         MR. DEAKIN: I have defense as having

1    exercised 14 peremptory challenges, which, I think

2    the Court Reporter also has 14.

3                THE. SHEA: I have 13.

4                THE CLERK: There have been 19 challenges.

5                THE COURT REPORTER: Fourteen peremptories

6    for the defendant.

7                MR. SHEA: Fourteen.

8                THE COURT REPORTER: That's what I have.

9                THE COURT: May I have your form, sir?

10               THE CLERK: Your name is Nerva Rigueur?

11               THE JUROR: That's correct.

12               THE CLERK: And you did not respond to any

13   questions.

14               THE COURT: Have you or any family member or

15   close personal friend ever been accused of a sexual

16   assault?

17               THE JUROR: No.

18               THE COURT: Have you or any family member or

19   close personal friend ever been the victim of a

20   sexual assault?

21               THE JUROR: No.

22               THE COURT: Is there anything about the

23   nature of these charges that would prevent you from

24   being fair and impartial and deciding this case based

1          solely on the evidence presented here in court?

2                    THE JUROR: No.

3                    THE COURT: Pardon me?

4                    THE JUROR: No.

5                    THE COURT: You have a niece who is nine?

6                    THE JUROR: Correct.

7                    THE COURT: And this case involves a young

8          girl.  Would that affect your ability to be fair and

9          impartial and decide this case based solely on the

10         evidence in court?  That you have a niece who is

11         about that same age.

12                   THE JUROR: Yeah.  It's a possibility, yes.

13                   THE COURT: Well, all right.  You're

14         excused.

15                   THE COURT OFFICER: Follow me, sir.

16                   THE JUROR: Thank you.

17                   THE COURT OFFICER: Have a seat, sir.

18                   THE CLERK: This is Juanito Valido.  He has

19         a problem with the language.

20                   THE COURT: Do you understand English, sir?

21                   THE JUROR: Not too much.

22                   THE COURT: Not too much.

23                   THE JUROR: No.

24                   THE COURT: Where did you go to school?

1      Where did you attend school?

2              THE JUROR: In my country.

3              THE COURT: All right.  You're excused.

4              THE COURT OFFICER: Follow me, sir.

5              THE COURT: You're excused.

6              THE COURT OFFICER: 8-8.

7              THE CLERK: James Hornick.

8              THE JUROR: Yes.

9              THE CLERK: Mr. Hornick did not respond to

10     any questions.

11             THE COURT: May I have your form, please?

12             Have you or any family member or close

13     personal friend ever been accused of a sexual

14     assault?

15             THE JUROR: No, sir.

16             THE COURT: Have you or any family member or

17     close personal friend ever been the victim of a

18     sexual assault?

19             THE JUROR: No, sir.

20             THE COURT: You're U. S. Coast Guard

21     Maritime Law Enforcement?  That's along the coast and

22     the harbors?

23             THE JUROR: Yes, sir.

24             THE COURT: Boating?

157

1                THE JUROR: Fisheries.

2                THE COURT: Is there anything about the

3        nature of these charges that would prevent you from

4        being fair and impartial and deciding this case based

5        on the evidence presented here in court?

6                THE JUROR: No, sir.

7                THE COURT: All right.  You want to step

8        outside for a second.

9                MR. SHEA: On this fellow, I'd ask if you

10       could inquire -- he has kids 12 and 14.  The alleged

11       victim is --

12               THE COURT: All right.  Bring him in.

13               THE COURT OFFICER: Sir, would you step in

14       here one second, please.  Just have a seat again,

15       please.

16               THE COURT: You indicated on your form that

17       you have children that are 12 and 14 years old.

18       Boys?  Girls?

19               THE JUROR: My daughter's 14.

20               THE COURT: Daughter, okay.  Now, this case

21       involves a young girl.  Would the fact that you have

22       young daughters who are about the same age affect

23       your ability to be fair and impartial and decide this

24       case based solely on the evidence presented in court?

1          THE JUROR: No.

2          THE COURT: All right.

3          THE COURT OFFICER: Step this way, sir.

4    Stand right there, please.

5          MR. DEAKIN: Commonwealth's content.

6          MR. SHEA: I need a moment.

7          (Counsel and defendant confer.)

8          MR. SHEA: We will exercise a peremptory.

9          THE COURT: That's 15.

10          THE COURT OFFICER: Does he remain?

11          THE COURT: He's gone.

12          THE COURT OFFICER: Oh, he's gone.

13          THE CLERK: Jenny Essien.

14          THE JUROR: Yes.

15          THE COURT OFFICER: Can I get the juror

16    questionnaire I gave you earlier, please?

17          THE CLERK: Ms. Essien didn't respond to any

18    questions.

19          THE COURT: Have you or any family member or

20    close personal friend ever been accused of a sexual

21    assault?

22          THE JUROR: No.

23          THE COURT:  Have you or any family member

24    or close personal friend ever been the victim of a

159

1     sexual assault?

2                 THE JUROR: No.

3                 THE COURT: Is there anything about the

4     nature of the charges in this case that would prevent

5     you from being fair and impartial and deciding this

6     case based solely on the evidence presented in court?

7                 THE JUROR: Nothing.

8                 THE COURT: Okay.  You have children ten

9     through 19.  Do you have boys?  Girls?

10                THE JUROR: Girls.  Four girls and one boy.

11                THE COURT: Okay.  Now, you have children --

12    this involves a young girl who is about the age of

13    your youngest children.  Would that affect your

14    ability to be fair and impartial and decide this case

15    based solely on the evidence presented in court?

16                THE JUROR: No.

17                THE COURT OFFICER: Step this way, ma'am.

18                MR. DEAKIN: Commonwealth's content.

19                MR. SHEA: Okay.

20                THE COURT OFFICER: She remains.

21                MR. DEAKIN: One more to go, right?

22                THE COURT REPORTER: One more to go.

23                THE COURT OFFICER: Have a seat, sir.

24                THE CLERK: 8-11.  Mr. Fitzpatrick formed an

1     opinion and is employed by the police.

2            THE COURT: You've formed an opinion about

3     this case already?

4            THE JUROR: Actually, I was trying to get

5     his attention.   I'm sorry about that.

6            THE COURT OFFICER: You were trying to get

7     my attention?

8            THE JUROR: No, the other guy.

9            THE COURT OFFICER: Oh, okay.

10           THE JUROR: He was on that side.   I was

11    trying to get his attention to ask you, one of the

12    Suffolk County officer's name that you had mentioned,

13    my ex-wife and my sister actually work for him, and

14    we have a lot of functions, cook-outs, things like

15    that.

16           THE COURT: So you know the person?

17           THE JUROR: I couldn't hear the name, so I

18    wasn't really sure.   That's why I was trying to....

19           THE COURT: Could you get my list.

20           THE JUROR: I apologize.

21           MR. DEAKIN: There's two actually.   There

22    are two names that are on the list from Suffolk.

23           THE JUROR: I wasn't sure about the last

24    name, but the first name kind of --

1    THE COURT: Joseph Reid, R-e-i-d; Deputy

2    Joseph Reid from Suffolk County Sheriff's Office.

3    And William Grout, G-r-o-u-t, from Suffolk County

4    Sheriff's Office.

5    THE JUROR: There was a Joseph.  I don't

6    know the last name so I really couldn't be sure.  The

7    ex-wife was at the Nashua Street, and my sister's

8    down at South Bay.  So....

9    THE COURT: So do you know these people real

10   well?  The person that you're talking about?

11   THE JUROR: No, no.

12   THE COURT: Would that affect your ability

13   to be fair and impartial and decided this case based

14   solely on the evidence presented in court?

15   THE JUROR: No.

16   THE COURT: Now, have you or any family

17   member or close personal friend ever been accused of

18   a sexual assault?

19   THE JUROR: No.

20   THE COURT: Have you or any family member or

21   close personal friend ever been the victim of a

22   sexual assault?

23   THE JUROR: No.

24   THE COURT: Now, the fact that you have a

1    sister and ex-wife who work for Suffolk County

2    Sheriff's Department, would that affect your ability

3    to be fair and impartial and decide this case based

4    solely on the evidence presented here in court?

5              THE JUROR: No, sir.

6              THE COURT: All right.  Step outside for a

7    second.  Actually, hang on a second.

8              You have -- your own children are ten and

9    15 years old.  They're kind of close in age to the

10   age of the alleged victim in this case.  Would that

11   affect your ability to be fair and impartial and

12   decide this case based solely on the evidence?

13             THE JUROR: No.  I would listen to it all.

14             THE COURT: Okay.

15        (Counsel and defendant confer.)

16             MR. SHEA: Can I ask for one more minute

17   with my client?

18             THE COURT: One more minute?

19             MR. SHEA: Yes.  We're almost there.

20             THE COURT: All you've got to do is tell us

21   whether we're going to have this guy or not.

22             MR. SHEA: Right.  But we're discussing

23   whether to have this guy, and we have some difference

24   of opinions.  So I'd like to --

1         THE COURT: Well, it's his call.

2         MR. SHEA: I know.

3         THE COURT: If he doesn't want him....

4         MR. SHEA: I'm working on it.

5    (Counsel and defendant confer.)

6         MR. SHEA: All right.  I'd ask you to

7    consider for cause, given that he has worked -- he

8    has a sister and ex-wife working in the Suffolk

9    County Sheriff, and two of the witnesses on this case

10   are going to be from the Suffolk County Sheriff's

11   Department --

12        THE COURT: Not for cause.

13        MR. SHEA: All right.  He's our last

14   peremptory.

15        THE COURT OFFICER: He's what?

16        THE COURT: He uses his last peremptory.

17        MR. SHEA: We'll use the last peremptory.

18        MR. DEAKIN: Just note for the record that

19   he is an African American male -- because there was a

20   concern about that earlier -- that the defense just

21   struck.

22        THE COURT OFFICER: 8-12.  Have a seat,

23   ma'am.

24        THE CLERK: Mercedes Santana.

1           THE JUROR: Yes.

2           THE CLERK: Ms. Santana didn't respond to

3     any questions.

4           THE COURT: May I have your form, ma'am.

5           Have you or any family member or close

6     personal friend ever been accused of a sexual

7     assault?

8           THE CLERK: Oh, wait a minute.  It looks

9     like she responded to a language -- did you respond

10    to a language --

11          THE JUROR: No.  I speak English and

12    everything, but it's difficult, like, when they use

13    that big words, I get kind of confused.

14          THE COURT: What's a big word?

15          THE JUROR: The way they say things.  I

16    could take it different way.  Like the last question,

17    like, I wasn't sure if I should answer yes or no.  So

18    -- 'cause I couldn't understand exactly what they

19    mean.

20          THE COURT: In terms of -- okay.  Well,

21    we'll get to that in a second.

22          Have you or any family member or close

23    personal friend ever been accused of a sexual

24    assault?

1            THE JUROR: No.

2            THE COURT: Have you or any family member or

3      close personal friend ever been the victim of a

4      sexual assault?

5            THE JUROR: The victim of what?

6            THE COURT: Victim of a sexual assault?

7            THE JUROR: No.

8            THE COURT: You have -- you say you have

9      children ten and 13 years old.

10            THE JUROR: Those are my children.

11            THE COURT: All right.  Now, this case

12      involves a girl who's about that age; not exactly,

13      but around that age.  Would that affect your ability

14      to be fair and impartial and decide the case based

15      solely on the evidence presented in court?  That you

16      have children about the same age as the alleged

17      victim in this case.  Would that influence your

18      decision at all?

19            THE JUROR: I think so.  Maybe.  I don't

20      know.

21            THE COURT: All right.  You're excused.

22            THE COURT OFFICER: Step this way, ma'am.

23            8-14.  Have a seat right there, please.

24            THE CLERK: Dean Hogencamp.

1       THE COURT: You've already formed an opinion

2    on this?

3       THE JUROR: Well, I just have an opinion,

4    just because I had friends in school that had used

5    drugs, or the date-rape drugs, and that's what's

6    bothering me.  That's all.

7       THE COURT: Well --

8       THE JUROR: I wouldn't say I've formed an

9    opinion about the person, just about the drug, in

10   general.

11      THE COURT: I guess what I'm trying to

12   figure out is when you say you have an opinion, do

13   you have an opinion about the guilt or innocence of

14   this person --

15      THE JUROR: Not about this person, no.

16      THE COURT:  -- that's been charged with

17   this crime, based upon your prior experience or your

18   friends' experiences with drugs or whatever.

19      THE JUROR: No.

20      THE COURT: So, have you or any family

21   member or close personal friend ever been accused of

22   a sexual assault?

23      THE JUROR: No.

24      THE COURT: Have you or any family member or

1   close personal friend ever been the victim of a

2   sexual assault?

3           THE JUROR: No.

4           THE COURT: Is there anything about the

5   nature of these charges, the fact that the person is

6   charged with kidnapping and rape of a child, that

7   would -- would the very nature of the charges affect

8   your ability to be fair and impartial -- and the use

9   of drugs?  Would that affect your ability to be fair

10  and impartial and decide this case based solely on

11  the evidence presented in court?

12          THE JUROR: No.

13          THE COURT: All right.  You said you had a

14  forensic science course?

15          THE JUROR: Just in college.  Forensic

16  science.

17          THE COURT: When was that?

18          THE JUROR: '99. It was '99 or 2000.  I

19  graduated in 2000.

20          THE COURT: And what did you graduate in?

21          THE JUROR: Accounting.

22          THE COURT: You're in banking now.

23          THE JUROR: Yeah.

24          THE COURT: So that was just one of those --

1       THE JUROR: It was just a course, you know.

2  To fill the credit -- I'm not a criminologist.

3       THE COURT: All right.  You want to step

4  outside for a second.

5       THE JUROR: Sure.

6       THE COURT OFFICER: Follow me, sir.

7       THE COURT: Commonwealth.

8       MR. DEAKIN: Commonwealth would exercise a

9  peremptory challenge.

10       I have that as No. 7.

11       THE CLERK: Yes.

12       THE COURT OFFICER: Have a seat, please.

13       THE COURT: May I have your form, please?

14       THE CLERK: Heather Whitehead.  Ms.

15  Whitehead didn't respond to any questions.

16       THE COURT: Have you or any family member

17  ever been -- or close personal friend ever been

18  accused of a sexual assault?

19       THE JUROR: No.

20       THE COURT: Have you or any family member or

21  closer personal friend ever been the victim of a

22  sexual assault?

23       THE JUROR: No.

24       THE COURT: Is there anything about the

1      nature of these charges -- kidnapping and rape and

2      the use of drugs to rape -- the very nature of the

3      charges, would that affect your ability to be fair

4      and impartial and decide this case based solely on

5      the evidence presented in court?

6                    THE JUROR: I don't think so.

7                    THE COURT: Okay.  You say you have two

8      cousins who are between seven and nine years old.

9                    THE JUROR: Yes.

10                    THE COURT: Now, this involves a young girl

11     who was about that age.  Would the fact that you have

12     cousins that are about that age affect your ability

13     to be fair and impartial and decide this case based

14     solely on the evidence presented in court?

15                    THE JUROR: I don't think so.

16                    THE COURT: All right.  You want to step

17     outside for a second.

18                    THE COURT OFFICER: Remain right there,

19     please.

20                    MR. SHEA: Judge, the problems I have are

21     with the "I don't think so."  Because we need to know

22     that she's going to be fair and impartial, and that

23     it's not a problem.  And the "I don't think so,"

24     means that it's open.

1          THE COURT: Bring her back in.

2          THE COURT OFFICER: Ma'am, do you want to

3  step back in for a second.

4          THE COURT:  When you say "I don't think

5  so," what does that mean?  Can you be fair and

6  impartial and decide this case based solely on the

7  evidence presented in court?

8          THE JUROR: Yeah.

9          THE COURT: Or is there something in the

10  background that might affect, you know, or interfere

11  with your ability to do that?

12          THE JUROR: No.

13          THE COURT: Okay.  All right.  You want to

14  step out for a second.

15          Commonwealth.

16          MR. DEAKIN: Commonwealth's content.

17          THE COURT: Defendant.

18          THE CLERK: He's exhausted --

19          MR. SHEA: I don't have -- if I had a

20  peremptory, I'd use it, but I don't.

21          THE COURT: Number 16.

22               (Recess)

23          THE COURT OFFICER: This court is open.

24  Please be seated.

1       THE COURT: I just wanted to thank all of

2  you for being here to do jury duty today.  We've

3  selected our jury.  And the rest of you are free to

4  go at this time.  Thank you for being here.  And we

5  appreciate your time.

6       THE COURT OFFICER: Please rise and step

7  out.

8         (Whereupon, venire exits.)

9          (Jurors enter.)

10      THE COURT: Ladies and gentlemen, this is

11  the jury.  And as I've told you during the

12  instructions this morning, we're going to begin the

13  evidence in this case on Tuesday morning.  So you're

14  free to go today and tomorrow and Monday.  But be

15  back here Tuesday morning at 9 a.m.

16      Now, one of the first things that you're

17  going to do on Tuesday is to take a view.  That means

18  we're going to put you on a bus and we're going to

19  take you out to see some places.  So pay attention to

20  what the weather is like when you wake up on Tuesday

21  morning, and dress accordingly.  If it's overcast or

22  it's cool, I don't want you out there in just shirt

23  sleeves and nothing on and stuff like that.  Okay.

24      So, Mr. Simms is going to take your phone

172

1      numbers and things, and we're going to give you a

2      call on Monday afternoon and remind you to be here on

3      Tuesday morning.

4              THE JUROR: At nine o'clock?

5              THE COURT: At nine o'clock on Tuesday

6      morning.

7              THE COURT OFFICER: I'll talk to you.

8              THE COURT: Mr. Simms will talk to you again

9      outside.  And I'll see you Tuesday morning at 9 a.m.

10     Have a good weekend.

11             THE COURT OFFICER: Jurors, please rise and

12     follow me.

13             THE COURT: I'll see you folks tomorrow

14     morning.

15             MR. DEAKIN: Judge, I wonder if it would be

16     at all possible to begin tomorrow morning at 9:30

17     rather than 9:00?

18             THE COURT: It's probably going to be later.

19     Hang on a second.  I just remembered I have a

20     sentencing tomorrow morning.

21             Make it ten.

22             MR. DEAKIN: Thank you.

23

24             (Whereupon, the Court adjourned.)

173

CERTIFICATE

I, Maryann McDonald, Official Court Reporter, do hereby certify that the foregoing record, pages 1 to 172 inclusive, is a true and accurate transcript of my system tapes, to the best of my knowledge, skill and ability.


_____

Maryann McDonald, Notary Public


My commission expires:  April 1, 2005


The foregoing certification does not apply to any reproduction of the same by any means unless under the direct control and/or direction of the certifying Reporter.