**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| | ) | |
| **OWEN MCCANTS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 21-cv-10386-DJC** |
| | ) | |
| | ) | |
| **NELSON ALVES,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                      **October 25, 2022**

**I.      Introduction**

Petitioner Owen McCants ("Petitioner" or "McCants") has filed a petition for a writ of *habeas corpus* (the "Petition") pursuant to 28 U.S.C. § 2254 alleging ineffective assistance of counsel in violation of the Sixth Amendment.  D. 1.  For the reasons set forth below, the Court DENIES the Petition.  D. 1.

**II.     Standard of Review**

**A.      For a Section 2254 Petition**

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a petitioner raises a claim that was adjudicated on the merits in state court, federal *habeas* courts may not grant relief unless the state court's adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court

1

proceeding."  28 U.S.C. § 2254(d).  As "the purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction," this standard is "difficult to meet."  Greene v. Fisher, 565 U.S. 34, 38 (2011) (quoting Harrington v. Richter, 562 U.S. 86, 102–03 (2011)) (internal quotation marks omitted).

A state court decision is "contrary to" clearly established federal law if it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at an opposite result.  Williams v. Taylor, 529 U.S. 362, 405 (2000) (O'Connor, J., concurring) (citing Green v. French, 143 F.3d 865, 869–70 (4th Cir. 1998)).  A state court decision involves "an unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case."  Id. at 407.  This standard requires more than clear error.  White, 572 U.S. at 419 (quoting Lockyer v. Andrade, 538 U.S. 63, 75–76 (2003)).  Thus, *habeas* relief is not warranted unless a state prisoner "show[s] that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Harrington, 562 U.S. at 103.

As to § 2254(d)(2), the petitioner must show that the state court's decision was based upon "objectively unreasonable" factual determinations, which are "presumed to be correct" unless rebutted by "clear and convincing evidence."  Miller-El v. Cockrell, 537 U.S. 322, 340 (2003); 28 U.S.C. § 2254(e)(1).  In other words, "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively

unreasonable in light of the evidence presented in the state-court proceeding." Miller-El, 537 U.S. at 340 (citing 28 U.S.C. § 2254(d)(2)).

### B.     Ineffective Assistance of Counsel on *Habeas* Review

A petitioner establishes ineffective assistance of counsel if they show (1) "that counsel's performance was deficient;" and (2) "that the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984).    Deficient performance constitutes performance that falls "below an objective standard of reasonableness under the circumstances." Yeboah-Sefah v. Ficco, 556 F.3d 53, 70 (1st Cir. 2009) (quoting Sleeper v. Spencer, 510 F.3d 32, 38 (1st Cir. 2007)) (internal quotation marks omitted).  To demonstrate prejudice, a petitioner must show "that, but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different." Id. (quoting Sleeper, 510 F.3d at 39) (internal quotation marks omitted).  "Judicial scrutiny of counsel's performance must be highly deferential," and the petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

For purposes of *habeas* review, "[t]he Strickland standard qualifies as clearly established federal law." Janosky v. St. Amand, 594 F.3d 39, 47 (1st Cir. 2010) (citing, *inter alia*, Ouber v. Guarino, 293 F.3d 19, 26 (1st Cir. 2002)).  Where a state court adjudicated a petitioner's Strickland claims on the merits, the petitioner must not only satisfy the deferential Strickland standard, but also the deferential § 2254 standard.  Yeboah-Sefah, 556 F.3d at 70.  As "[t]he standards created by Strickland and § 2254(d) are both highly deferential, . . . when the two apply in tandem, review is doubly so."[1] Harrington, 562 U.S. at 105 (internal citations and quotation marks omitted).  A

---

[1] Although Massachusetts' ineffective assistance of counsel standard does not employ "identical phraseology" as the Strickland standard, the two are "functional[ly] equivalent" for *habeas* purposes.  Ouber, 293 F.3d at 32.

federal *habeas* court therefore considers "whether the state court applied <u>Strickland</u> to the facts of petitioner's case in an objectively unreasonable manner." <u>Yeboah-Sefah</u>, 556 F.3d at 71 (citing <u>Malone v. Clarke</u>, 536 F.3d 54, 63 (1st Cir. 2008)).

### C.    The Exhaustion Requirement

In addition to the aforementioned requirements, petitioners are required to exhaust all state remedies before a federal court can grant *habeas* relief.  28 U.S.C. § 2254(b)(1)(A).  A petitioner demonstrates exhaustion when they have "fairly and recognizably presented" their claims to the state's highest court.  <u>Coningford v. Rhode Island</u>, 640 F.3d 478, 482 (1st Cir. 2011) (quoting <u>Adelson v. DiPaola</u>, 131 F.3d 259, 262 (1st Cir. 1997)).

Furthermore, pursuant to the procedural default doctrine, a federal *habeas* court has no authority to review a question of federal law decided by a state court if the decision of that court rests upon an independent and adequate state procedural ground.  <u>Coleman v. Thompson</u>, 501 U.S. 722, 729–30 (1991).  "Procedural default of federal claims in state court is an independent and adequate state-law ground barring habeas relief, so long as the state regularly follows the rule and has not waived it by relying on some other ground."  <u>Jewett v. Brady</u>, 634 F.3d 67, 76 (1st Cir. 2011) (internal citations omitted).  That all grounds not raised on appeal are deemed waived is one such state procedural requirement.  <u>Evicci v. Comm'r of Corrs.</u>, 226 F.3d 26, 27 (1st Cir. 2000). If a petitioner is procedurally barred from bringing a claim in state court, the federal *habeas* court may not entertain the claim, "unless the petitioner can demonstrate cause for the default and prejudice stemming therefrom, or, alternatively, unless the petitioner can show that a refusal to consider the merits of the constitutional claim will work a miscarriage of justice."  <u>Barbosa v. Mitchell</u>, 812 F.3d 62, 67 (1st Cir. 2016) (quoting <u>Burks v. Dubois</u>, 55 F.3d 712, 716 (1st Cir. 1995)) (internal quotation marks omitted).

### III.    Factual and Procedural Background

The following facts are primarily drawn from the Suffolk Superior Court's 2011 decision on McCants' first motion for a new trial, and the Massachusetts Appeals Court's 2013 and 2020 decisions on his two motions for a new trial.[2]

### A.    Commission of the Crime

On July 13, 2000, an eleven-year-old girl (hereinafter, "victim") was staying at the apartment of Polly Taylor ("Taylor"), whom the victim would refer to as "Nana."[3]  S.A. 834.  At some point before 11:00 p.m., Taylor left the apartment to care for her aunt, Christine Isaac ("Isaac"), in the apartment across the hall.  Id.  Shortly after Taylor's departure, the victim saw a man with a stocking mask over his face inside the apartment.  Id.  The masked man asked the victim, "Where is your Nana?"  Id.  The victim replied that Taylor—whom only a few people knew as "Nana"—was in the apartment next door.  Id.  The masked man told the victim "to go get your Nana."  Id.  While the victim was knocking on Isaac's door, the masked man grabbed the victim from behind.  Id.  Before the masked man could silence the victim by covering her mouth, the victim called out for Taylor.  Id.  Taylor heard the victim and subsequently called the police.  Id.

The masked man then dragged the victim down four flights of stairs and out of the building, and waited behind an adjacent building for people in the area to leave.  Id.  At this time, the masked man removed his mask.  Id.  The victim tried to escape, and in the struggle, the man cut the victim's

---

[2] These materials are all contained in Supplemental Answer, Part One and Supplemental Answer, Part Two, filed by Respondent, D. 38; D. 39, which will  be cited as "S.A. [page number]." Additionally, Respondent filed transcripts of each day of McCants' jury trial, as exhibits to Supplemental Answer, Part Two.  Referenced transcripts will be cited as "S.A. [exhibit number] [trial day] at [page number]."

[3] This name sometimes is spelled as "Nanna" in the record.

ear with a knife he was carrying.  Id.  After the struggle, the man covered the victim's eyes and mouth with duct tape before bringing her to a vehicle.  Id.  While in the vehicle, the victim noticed out of the corner of her eye that the vehicle was either dark blue or green with a gray interior.  Id.  As the man drove, he told the victim to remove her underwear and pass them to him.  Id.  Once she complied with his request, the man stopped the vehicle, removed the duct tape covering the victim's mouth, and gave her a brown liquid to drink that she believed was alcohol, something to smoke which she believed was marijuana, and a white or yellow substance to snort.  Id. at 834–35.

After returning to the vehicle and driving a short distance, the man again stopped and forced the victim to exit the vehicle.  Id. at 835.  The man told the victim to remove her shirt, place it on the ground, and lie on it.  Id.  He then put his fingers in the victim's vagina and pressed his penis against her vagina.  Id.  The man then got up and told the victim to put her shirt back on.  Id.  The man left, but told her before he left to wait, as he would return to bring her home.  Id.  After waiting for the man to return, the victim left on her own and returned to Taylor's apartment building around 2:00 a.m. on July 14, 2000.  Id.  Upon her return, the victim reunited with her mother and told the police officers who had arrived in response to Taylor's call that her assailant was a light-skinned African American man wearing blue pants, a green shirt, a stocking mask, and a wool cap.  Id.

Outside of the apartment building, sixteen-year-old Michelle Williams, McCants' niece, asked Boston Police Sergeant Harry Byrne to speak with McCants.  Id.  McCants' niece led the police to the apartment and, once inside, McCants motioned for the officers to come into his bedroom.  Id.  While in the room, the officers observed several items, including a damp shirt, a mirror with a white powdery substance, a bottle of brown liquid that appeared to be alcohol, brown liquid in a brandy snifter, and a sharp-edged tool.  Id.  McCants voluntarily left with the police and

was arrested later that morning.  Id.  The next day, police officers executed a search warrant in McCants' bedroom and recovered—among other things—a shirt with a condom in the pocket, a small plastic bag of marijuana, a half-filled bottle of rum, and a roll of duct tape.  Id.  DNA testing on the shirt revealed blood, which matched the victim's.  Id. at 836.

While in criminal custody, McCants sent a letter to Taylor.  In the letter, McCants mentioned his substance abuse problems and custodial status, pled with Taylor to forgive him, asked for understanding from the victim and the victim's mother, requested that Taylor not cooperate with law enforcement's investigation, and instructed that the letter not be shared with anyone else.  Id.  Taylor mentioned the letter to the victim's mother, who then called Sergeant Detective John McDonough.  Id.  On August 8, 2000, Detective McDonough went to Taylor's apartment, and she gave him the letter, which was admitted into evidence over the objections of McCants' trial counsel.  Id.

## B.    State Court Proceedings

 On May 6, 2002, a jury convicted McCants of kidnapping, rape of a child by force, drugging a person for sexual intercourse, assault of a child with intent to rape, and assault and battery by means of a dangerous weapon.  Commonwealth v. McCants, No. 18-P-1256, 2020 WL 2847872, at *1 (Mass. App. Ct. June 2, 2020).  McCants appealed his conviction, which was affirmed on appeal, Commonwealth v. McCants, No. 04-P-1438, 2006 WL 539419 (Mass. App. Ct. Mar. 6, 2006), and further appellate review was denied, Commonwealth v. McCants, 447 Mass. 1102 (2006).  He then filed two motions for a new trial.

On July 31, 2006, McCants filed his first motion for a new trial based upon (1) newly discovered evidence in the form of an affidavit from his sister, Ruby Williams ("Williams"), who stated that Taylor told her "What else could I do?" when Williams asked whether it was wise to

give McCants' letter to Detective McDonough; (2) an alleged denial of his right to reasonable search and seizure regarding the police's acquisition of the letter; (3) an alleged denial of his right to effective assistance of counsel for failing to challenge the admissibility of the letter; and (4) an alleged denial of his right to a fair trial by the prosecutor's use of perjured testimony throughout the trial and by his erroneous characterization of the contents of the letter in his opening statement. Commonwealth v. McCants, No. 10-P-1946, 2013 WL 1904897, at *1 (Mass. App. Ct. May 9, 2013). The trial court denied the motion and this denial was affirmed on appeal. Id. Further appellate review was also denied. Commonwealth v. McCants, 466 Mass. 1104 (2013).

On December 9, 2013, McCants filed a second motion for a new trial, which was denied on August 16, 2018. The judge ruled that McCants' claims were barred by direct estoppel and waiver. McCants, 2020 WL 2847872, at *1. McCants appealed that decision, but only addressed certain claims in his appellate brief, including that (1) the victim's identification of McCants should not have been admitted at trial; (2) his bedroom was illegally searched; (3) his letter should not have been admitted at trial; and (4) the evidence of the victim's DNA did not support his convictions. Id. The Massachusetts Appeals Court affirmed the denial, similarly finding that McCants' claims were barred by direct estoppel and waiver. Id. at *1–2. The Supreme Judicial Court subsequently declined further review. Commonwealth v. McCants, 486 Mass. 1112 (2021).

### C.   This Petition

In the Petition, McCants raises four[4] grounds for relief based upon ineffective assistance of counsel, namely that "counsel's ineffective assistance allowed the complainant's influenced –

---

[4] In McCants' original Petition, he asserted five grounds of ineffective assistance of counsel. D. 1 at 5–13. After Respondent claimed McCants' first ground (Ground One) was unexhausted, McCants moved to amend the Petition to omit that claim, which the Court allowed. D. 18; D. 26; D. 28.

thus tainted – identification to be proffered as, unassailable, overwhelming proof of the defendant's alleged guilt" (Ground Two), D. 1-2 at 28; "counsel's ineffective assistance deprived the defendant's misidentification defense of jurors hearing and weighing alibi, and other relevant, witnesses' corroborating evidence attesting to innocence" (Ground Three), id. at 31; counsel failed to challenge "law enforcement officials' unauthorized, thus unlawful, entry into residence and, subsequent, warrantless search of defendant's bedroom" (Ground Four), id. at 32; and counsel did not adequately seek "to suppress defendant's controversially seized and reportedly sealed mailed letter" (Ground Five), id. at 34.[5]

## IV. Discussion

### A. Ground Two Does Not Establish Ineffective Assistance of Counsel

#### 1. Standard of Review

As an initial matter, this Court must decide whether the state court decided McCants claim on the merits, which affects the standard of review. While this Court's review would normally be doubly deferential where a state court has previously adjudicated a petitioner's Strickland claim on the merits, Harrington, 562 U.S. at 105, this Court's review is de novo if the state court did not decide such claim on the merits, Clements v. Clarke, 592 F.3d 45, 52 (1st Cir. 2010). Nevertheless, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington, 562 U.S. at 99. A

---

[5] The Court ALLOWS McCants' motion to file a supplemental memorandum, D. 42, *nunc pro tunc* and has considered that supplemental memorandum, D. 43, along the other filings of the parties in the resolution of the Petition.

petitioner can overcome this presumption if "there is reason to think some other explanation for the state's court decision is more likely." Id. at 99–100.

Here, McCants raised this ineffective assistance of counsel claim to the Massachusetts Appeals Court in his *pro se* Moffett brief,[6] S.A. 178–91,[7] but the court did not specifically address it, McCants, 2006 WL 539419, at *1–6. If a "federal claim was not adjudicated on the merits, a *de novo* standard applies." Hanson v. Gerry, No. 13-cv-448-JD, 2014 WL 2866094, at *3 (D.N.H. June 24, 2014) (citing Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001). However, "[w]hen a federal claim has been presented to a state court and the court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington, 562 U.S. at 99; see Johnson v. Williams, 568 U.S. 289, 293 (2013); Montanez, 2014 WL 949602 at *3 (noting that "the First Circuit has not yet explicitly determined the effect of [Harrington v.] Richter and Johnson on Fortini") (citing Jewett v. Brady, 634 F.3d 67, 75 n.5 (1st Cir. 2011)).

---

[6] A Moffett brief "is derived from Commonwealth v. Moffett, . . . in which the [Supreme Judicial Court] set forth guidelines to appointed counsel in a criminal case who, the court said, should not be permitted to withdraw solely on the ground that the appeal is frivolous or otherwise lacking in merit." Care & Prot. of Valerie, 403 Mass. 317, 318 (1988) (quoting Commonwealth v. Moffett, 383 Mass. 201, 207 (1981)) (internal quotation marks omitted). At the same time, recognizing that counsel has an obligation not to advance groundless contentions, the Supreme Judicial Court stated that "[i]f there is nothing to support a contention which the defendant, despite counsel's attempts to dissuade him, insists on pursuing, [the court] think[s] it preferable that counsel present the contention succinctly in the brief in a way that will do the least harm to the defendant's cause." Moffett, 383 Mass. at 208. These briefs can either be submitted by the defendant's attorney or *pro se* by the defendant themself. See Asadoorian v. Ficco, No. Civ.A. 02-11534-DPW, 2004 WL 1932753, at *2 n.6 (D. Mass. Aug. 23, 2004). In the case at bar, counsel submitted a brief in support of McCants' appeal and McCants himself submitted a *pro se* Moffett brief. S.A. 37, 156.

[7] McCants also raised this claim to the Supreme Judicial Court in his 2006 ALOFAR. S.A. 458–59.

As such, this Court will presume that the Massachusetts Appeals Court decided this ineffective assistance of counsel claim on the merits and will determine whether that presumption has been rebutted.  See, e.g., Montanez v. Mitchell, No. 12-11882-FDS, 2014 WL 949602, at *2–3 (D. Mass. Mar. 10, 2014).  Throughout McCants' *pro se* Moffett brief, he alleged several deficiencies in counsel's performance regarding the victim's identification. S.A. 178–91.  He also cited to both Commonwealth v. Saferian and Strickland v. Washington, the state and federal standards for ineffective assistance of counsel claims, in relation to this claim.  S.A. 201.  In Respondent's opposition, they concede that McCants "also argued that counsel was ineffective with respect to both identifications in his *Moffett* brief."  D. 36 at 15 (italics in original). Notwithstanding, the Massachusetts Appeals Court did not address this claim in its decision. Indeed, the decision contains a section addressing the victim's identification, but only in relation to the trial court's decision to deny the motion to suppress without an evidentiary hearing or *voir dire*.  McCants, 2006 WL 539419, at *2–3.  The court makes no mention of McCants' ineffective assistance of counsel claim in relation to the victim's identification.  In his *pro se* Moffett brief, McCants pressed other ineffective assistance of counsel claims, S.A. 191–202, which were explicitly addressed in the court's decision in another section of the decision regarding the police's authority to enter McCants' apartment, McCants, 2006 WL 539419, at *5.  The Massachusetts Appeals Court did not "acknowledge in any other way that it had considered and rejected the claim, such as by making a reference to a line of state cases that fully incorporated the federal constitutional right or squarely addressing overlapping state and federal claims."  Montanez, 2014 WL 949602, at *3 (citing cases); see Pina v. Maloney, 565 F.3d 48, 54 (1st Cir. 2009) (choosing to "by-pass the threshold question of whether there has been a state court merits adjudication" where the state court "comment[ed] briefly on the merits" of petitioner's claim).  For these reasons,

the Court concludes that McCants has rebutted the presumption of a decision on the merits and is entitled to *de novo* review.

## 2. *Ground Two Fails on the Merits Even with De Novo Review*

McCants argues that his right to effective assistance of counsel was violated when his trial counsel failed to raise certain facts in challenging the victim's identification.  D. 1-2 at 28.  In support of his argument, McCants points to defense counsel's omission of "crucial facts" in counsel's affidavit in support of McCants' pre-trial motion to suppress the victim's identification. Id.  The omitted facts include that (1) the victim originally identified McCants in response to her mother's question, "Was it Sonny?"[8]; (2) the victim stated to healthcare providers that her assailant was a "stranger" and twice said "no" when asked if she knew her assailant; (3) the victim's mother identified McCants as the assailant in front of the victim; (4) the victim stated during an interview at the District Attorney's office that "the cops and stuff said it was Sonny."  D. 34 at 7–9.

McCants' arguments fall flat because these facts would not have resulted in suppression under federal law, and thus fail Strickland's deficient performance prong.  Under federal law, "the Due Process Clause does not require a preliminary judicial inquiry into the reliability of an eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances arranged by law enforcement."  Perry v. New Hampshire, 565 U.S. 228, 248 (2012). The first three sets of facts identified above all relate to identifications that were not arranged by law enforcement and would not have been a basis for suppression.  As such, counsel was not deficient by omitting facts that are irrelevant under federal law.  Acha v. United States, 910 F.2d 28, 32 (1st Cir. 1990) (explaining that failing to pursue "meritless claims" does not constitute ineffective assistance of counsel).

---

[8] "Sonny" was a nickname for McCants.  S.A. 171.

Even assuming *arguendo* that it was deficient for trial counsel not to seek to suppress the identification as unduly suggestive given the victim's interview at the District Attorney's office, McCants' claim still does not establish prejudice, which requires "but for the ineffective assistance, the outcome of the case would have been different." Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006). Here, challenge of the victim's identification of her assailant was at the crux of the defense at trial. Defense counsel's cross-examination of the victim revolved—almost entirely—around the veracity of her identification, including questioning, among other things, how many times she had seen McCants prior to the attack, why she did not immediately disclose it was him after reuniting with her mother, why she told the District Attorney that she had not previously seen her assailant, why she said the police had told her McCants was her assailant, whether a family friend had also told her it was McCants, and whether the first time she identified McCants as her assailant was after seeing him on television escorted by police. S.A. Ex. 7 (Day 5) at 52–83. During closing arguments, trial counsel highlighted the suggestive circumstances surrounding the victim's identification, including that "both alleged ID's are with the mother," "the officer admits [the ID after seeing McCants escorted by police on television] is a highly suggestive identification," the victim had "been told by the police it's Sonny," and "[w]hat is the danger here, ladies and gentlemen, is that implanted memory, false identification. That is very dangerous and very dangerous with children." S.A. Ex. 13 (Day 10) at 105–07. Furthermore, the prosecution presented other substantial, inculpatory evidence at trial against McCants, including McCants' letter, one of McCants' shirts that was stained with the victim's blood, witness statements that McCants was driving a dark green Grand Am, a vehicle identified near and at the location of the attack, and the victim's testimony that the assailant asked her, "Where's your Nana?"—a term with which strangers would not be familiar. In light of this evidence, which the Massachusetts Appeals

Court described as "overwhelming," this Court cannot conclude that McCants has established the requisite showing of prejudice.  McCants, 2006 WL 539419, at *6.

To the extent that McCants argues that trial counsel rendered ineffective assistance of counsel for failing to move for suppression under Massachusetts law,[9] that argument also fails Strickland's prejudice prong for the reasons discussed above.

Accordingly, Ground Two of the Petition fails.

### B.   Ground Three Is Waived and Procedurally Defaulted

As to Ground Three, McCants argues that "[d]efense counsel's ineffective assistance deprived the defendant's misidentification defense of jurors hearing and weighing alibi, and other relevant, witnesses' corroborating evidence attesting to innocence."  D. 1-2 at 31.  He cites two facts in support of his claim, namely (1) Williams' testimony that McCants was with her on the night of the crime until 8:30 p.m. and then again from around 11:00 p.m. until the police arrived; and (2) a March 29, 2002 police report by Detective McDonough, in which he describes an interview with Denise Wilson ("Wilson"), who stated she saw McCants on the night of the crime outside the apartment from which the victim was taken between 11:45 p.m. and 1:00 a.m..  Id.

While McCants asserted in the Petition that Williams' testimony provided him an alibi for the night of the crime, he did not go on to address this issue in his memorandum to this Court. Respondent contends this failure amounts to a waiver of the claim.  D. 36 at 19 n.6.  McCants' only retort is that he did, in fact, address the issue by incorporating by reference his 2013

---

[9] While federal law requires the identification to have resulted from improper police activity, the Supreme Judicial Court has ruled that an unreliable identification arising from especially suggestive circumstances can still be excluded absent police conduct under Massachusetts law.  Commonwealth v. Crayton, 470 Mass. 228, 235 (2014) (noting that "[o]ur reliance on common-law principles of fairness to suppress an identification made under 'especially suggestive circumstances' even where the circumstances did not result from improper police activity is also in contrast with the United States Supreme Court jurisprudence" (citing cases)).

ALOFAR, in which he allegedly raised the claim.  D. 43 at 9 n.3.  That is incorrect.  In his 2013 ALOFAR, he refers to Williams' testimony only in a section detailing alleged prosecutorial misconduct.  S.A. 1165.  He makes no argumentation regarding ineffective assistance of counsel or its requirements, a conclusion which is only buttressed by the fact that in the very same ALOFAR McCants makes ineffective assistance of counsel claims, but does not refer to Williams' testimony in that section.  Id. at 1173–81.  McCants has therefore waived this claim.  The First Circuit has repeatedly held that "issues adverted to in a perfunctory fashion, unaccompanied by some effort at developed argumentation, are deemed waived."  Watson v. Trans Union LLC, 223 F. App'x 5, 6 (1st Cir. 2007) (quoting United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)) (internal quotation marks omitted).  While "[o]ur judicial system zealously guards the attempts of pro se litigants on their own behalf," Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997), *pro se* litigants are still subjected to this requirement.  United States v. Nishnianidze, 342 F.3d 6, 18 (1st Cir. 2003); see, e.g., Perez v. Medeiros, No. 18-cv-10158-IT, 2020 WL 7130020, at *2 (D. Mass. Dec. 4, 2020) (concluding that all claims but "a portion of the fifth ground" waived, where *habeas* petitioner only briefed that portion); Miller v. Marchilli, No. 17-cv-10469-DJC, 2019 WL 145559, at *6 (D. Mass. Jan. 9, 2019) (ruling that petitioner waived claim raised in his petition but not addressed in his memorandum).  Likewise, this claim is also waived.

Conversely, McCants briefed the matter regarding Detective McDonough's police report.  Nevertheless, his arguments are unavailing because the claim is procedurally defaulted.  As McCants admits in the Petition, he raised this ineffective assistance claim for the first time in his 2018 amended motion for a new trial.[10]  D. 1 at 9.  Yet, he did not raise this claim on appeal of the

---

[10] In his supplemental memorandum to this Court, McCants claims that he actually raised the issue for the first time in his appeal to the Massachusetts Appeals Court of the denial of his first motion for a new trial.  D. 43 at 8.  The only reference, however, to Wilson's statement is in

denial of that motion to the Massachusetts Appeals Court.  S.A. 1704–26.  In its 2020 order affirming the denial of the motion, the Massachusetts Appeals Court explained that while McCants included several arguments in his amended motion below, the court "only [addressed] those argued in his appellate brief."  McCants, 2020 WL 2847872, at *1 n.3.  As a result, the court did not address McCants' ineffective assistance claim based on Detective McDonough's police report, see id., and it is deemed to be waived.   That is consistent with the Massachusetts rule that issues not raised in an appellate brief are waived.  Auto Flat Car Crushers, Inc. v. Hanover Ins. Co., 469 Mass. 813, 833 n.22 (2014) (citing sources).  As this waiver was an independent and adequate state-law ground for the court's denial of McCants' ineffective assistance claim, the claim is procedurally defaulted.  Logan v. Gelb, 790 F.3d 65, 72 (1st Cir. 2015) (noting that "Massachusetts regularly enforces the rule that a claim not raised is waived." (quoting Gunter v. Maloney, 291 F.3d 74, 79 (1st Cir. 2002)) (internal quotation marks omitted)).

To overcome this procedural default, McCants has the burden of demonstrating cause for the default and prejudice, or a miscarriage of justice.  He has not carried his burden in relation to either.  To establish cause, a petitioner must show "an objective factor, external to the defense, that thwarted (or at least substantially obstructed) the efforts of the defendant or his counsel to obey the state's procedural rule."  Burks, 55 F.3d at 717 (citing cases).  Here, McCants raised this ineffective assistance claim in his *pro se* amended motion for a new trial.  There is no reason as to why he could not have similarly raised this argument on his *pro se* appeal.  This is especially true,

---

a section describing, in McCants' view, the prosecution's embellishment of the evidence against him.  S.A. 1024–32.  McCants made no reference to ineffective assistance of counsel, Saferian, Strickland, or any other indication that he believed his counsel was ineffective on this basis.  See Coningford, 640 F.3d at 482 (concluding that a *habeas* petitioner failed to present his claim to the state supreme court, where he "argu[ed] generally" and "cited no specific constitutional provision, tendered no substantive federal claim, and relied on no federal constitutional precedent").

where McCants had experience raising ineffective assistance claims *pro se*, such as in his *pro se* Moffett brief.  S.A. 178–202.  Cause is therefore not established.

To establish prejudice, a petitioner must show "not merely that the errors . . . created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  Costa v. Hall, 673 F.3d 16, 26 (1st Cir. 2012) (emphasis in original) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)) (internal quotation marks omitted).  While Wilson's statement does not necessarily align with the prosecution's timeline of events, McCants' defense counsel raised several other timing discrepancies between the witnesses in his closing argument, which were all seemingly rejected by the jury.  S.A. Ex. 13 (Day 10) at 88–90.  There is no reason to believe adding Wilson's statement to the mix would have changed the result.  Accordingly, McCants also cannot establish prejudice.

McCants similarly fails to establish a miscarriage of justice.  "It is clear that for habeas purposes the federal 'fundamental miscarriage of justice' standard means that petitioner must establish actual innocence."  Simpson v. Matesanz, 175 F.3d 200, 210 (1st Cir. 1999).  McCants' burden in connection with a claim of innocence "is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt – or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt."  House v. Bell, 547 U.S. 518, 538 (2006).  This exception "applies only in extraordinary circumstances."  Janosky, 594 F.3d at 46 (citing cases).  He must present "reliable evidence," such as "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence" to mount a successful innocence claim.  House, 547 U.S. at 537 (quoting Schlup, 513 U.S. at 324) (internal quotation marks omitted).  In the instant case, McCants has not

presented sufficient facts in support of a claim of actual innocence or that any reasonable juror would have reasonable doubt.  As described above, defense counsel emphasized many timing discrepancies throughout the trial, which did not sway the jury, so the inclusion of Wilson's statement does not appear to be the type of evidence that would have led "any reasonable juror [to] have reasonable doubt."  Id. at 538.   More fundamentally, Wilson's statement is not the exculpatory evidence that he appears to contend that it is.  Defense counsel had good reason not to include it because it paints a significantly negative picture of McCants on the night of the attack as "pacing on the fringes of the crowd that had gathered to search for [the victim]," "trying to blend in with the crowd," and "acting paranoid."  S.A. 1049.  Indeed, trial counsel filed a motion in limine to exclude the portion of Wilson's testimony about her beliefs about how McCants was acting.  S.A. 1045.  As with Ground Two, Ground Three does not support the granting of *habeas* relief.

## C.    Ground Four Is Unexhausted

As to Ground Four, McCants argues that the "jurors were allowed to weigh evidence derived from law enforcement officials' unauthorized, thus unlawful, entry into residence and, subsequent, warrantless search of defendant's bedroom – that was posited as overwhelming proof of guilt – resulted from ineffective assistance of defense counsel."  D. 1-2 at 32.  In support, he references the following facts:  (1) McCants' niece, who the police said gave them permission to enter McCants' apartment, stated in a 2009 affidavit that she never gave the police permission to enter; and (2) the police engaged in illegal "exploratory searches" of McCants' bedroom, which resulted in them finding a shirt and roll of duct tape that implicated him in the crime.  Id. at 32–33.

Both claims are unexhausted as they were not presented to the Massachusetts Appeals Court. On direct appeal, McCants raised several ineffective assistance of counsel claims in his *pro se* <u>Moffett</u> brief. S.A. 178–202. There, he even raised ineffective assistance claims with regards to the police's entry, but only to claim that counsel should have called his niece to testify and challenged the voluntariness of his niece's consent and her status as a third-party resident with authority to provide consent to enter the apartment. S.A. 191–202. He made no mention of an affidavit from his niece denying consent to the officers or that the officers engaged in illegal searches once inside the apartment. Indeed, McCants' niece provided an earlier affidavit in 2001, but it is only addressed in his *pro se* <u>Moffett</u> brief as proof that she was not a third-party resident, not to prove consent was not in fact given. S.A. 200. There is no reason to believe these arguments could not have been presented on direct appeal. Based on the arguments McCants made in his *pro se* <u>Moffett</u> brief regarding the police's entry, he was on notice that his niece's purported consent to enter was central to the police's authority to be lawfully or unlawfully in the apartment. Similarly, McCants alleges that the police must have "[r]ummag[ed]" through his belongings to find the aforementioned shirt and roll of duct tape. D. 34 at 23. However, these facts were readily available to McCants at the time of his direct appeal, and he thus could have presented his ineffective assistance claim at that time.

Furthermore, McCants never presented these ineffective assistance claims to the Supreme Judicial Court in his 2006, 2013, or 2020 ALOFARs. S.A. 449–65, 511–26, 1148–81, 2139–48. Even in his 2013 ALOFAR, McCants included the affidavit from his niece, but did not press the ineffective assistance of counsel claim. S.A. 1222. McCants' failure to present these claims to the Supreme Judicial Court similarly dooms Ground Four because "[i]n Massachusetts, the

[Supreme Judicial Court] is the highest court in the state system.  Thus, exhaustion requires presentation of the claim in question to that court."  Janosky, 594 F.3d at 50.

### D.    Ground Five Is Procedurally Defaulted

As to Ground Five, McCants alleges "[d]efense counsel's deficient efforts to suppress defendant's controversially seized and reportedly sealed mailed letter, ensuring jurors' critique of its problematic unredacted contents – subject to conjecture, being misconstrued and, conceivably, evoking prejudicial emotions – constitutes ineffective assistance."  D.1-2 at 34.  Specifically, he contends that counsel was ineffective for failing to challenge the admissibility of the letter and its portions detailing his custodial status and prior alcohol and drug use.  D. 34 at 24–32.

The doctrine of procedural default bars McCants' claim, because the Massachusetts Appeals Court found in its 2013 decision affirming the denial of his motion for a new trial that he "could have . . . raised [it] on direct appeal."  McCants, 2013 WL 1904897, at *1.  As such, the court deemed this claim waived, id., pursuant to a rule "regularly enforce[d]" in Massachusetts state courts, Gunter, 291 F.3d at 79 (citing cases).

McCants also cannot meet his burden of demonstrating cause for the default and prejudice.  On direct appeal, he both challenged the letter's admission and made several ineffective assistance of counsel claims, S.A. 51–61, 178–202, undermining any suggestion that he could not have presented the claim.  McCants, therefore, fails to demonstrate cause for the default.

Additionally, McCants cannot satisfy the fundamental miscarriage of justice exception.  As previously mentioned, this exception requires a showing of "actual innocence."  Simpson, 175 F.3d at 210.  No such showing has been made here.  Indeed, even the Massachusetts Appeals Court agreed that "there is no risk that a miscarriage of justice occurred."  McCants, 2013 WL 1904897, at *1.  Consequently, *habeas* relief cannot be granted upon this ground.

**V.      Conclusion and Certificate of Appealability**

For the foregoing reasons, the Court DENIES the Petition, D. 1.  McCants may receive a certificate of appealability only if he "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A certificate of appealability is appropriate when "reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong."  Miller-El, 537 U.S. at 338 (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)) (internal quotation marks omitted).  Based upon the analysis of the record and the applicable law in this Memorandum and Order, the Court does not, at this juncture, conclude that reasonable jurists would find its conclusion, denying the Petition both on procedural and substantive grounds, debatable or wrong.  The Court, therefore, is not inclined to issue a certificate of appealability, but will give Petitioner until December 2, 2022 to file a memorandum, if he seeks to address the issue of whether a certificate of appealability is warranted as to any of the grounds in the Petition.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

21